UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| ALOSTAR BANK OF COMMERCE,<br><br>    Plaintiff,<br><br>v.<br><br>GLS FLORIDA PROPERTY 2, LLC; JASON R. FLOM; HERBERT L. GRAHAM; GLENN W. JOHNSON, III; ELLIOT H. LEVINE; PETER MCKENNA; JAMES C. STROUD; DWIGHT P. WILES; ELIZABETH YATES; and ROGER S. AARON, EARLE YAFFA, and RONALD J. WEISS, as Executors of the Estate of Joseph Flom;<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 5:11-cv-00406-RS-GRJ |

**ALOSTAR BANK OF COMMERCE'S FIRST INTERROGATORIES TO
DEFENDANTS WILES, STROUD, AND GRAHAM
RELATING TO JURISDICTIONAL DISCOVERY**

Plaintiff AloStar Bank of Commerce ("AloStar") hereby serves these First Interrogatories upon Defendants Dwight P. Wiles ("Wiles"), James C. Stroud ("Stroud"), and Herbert L. Graham ("Graham") pursuant to the Court's Order of May 11, 2012 allowing jurisdictional discovery, for a response to AloStar's counsel of record at such time as provided by law in accordance with the following definitions and instructions.

**GENERAL INSTRUCTIONS AND DEFINITIONS**

1.      As used herein, the terms "Defendant," "Defendants," "You," and "Your" refer to Wiles, Stroud, or Graham, whether individually, collectively, or in any combination, including any immediate family members of, or entities, trusts, or other estate planning devices settled,

managed, or controlled by Wiles, Stroud, or Graham. The phrase "Other Defendants" refers to one or more other parties defending this action, to the exclusion of Wiles, Stroud, and Graham.

  2. "Document" or "documents" means any writing or other correspondence or tangible thing, whether signed or unsigned, in draft or final form, an original or a copy, in the custody or control of or known to You or Your counsel. This definition includes, but is not limited to, the following items, whether printed, recorded, microfilmed, electronically, optically or magnetically stored, or reproduced by any process, or written or produced by hand: checks, billing statements, customer service records, credit information, appointment books, proposals, agreements, estimates, contracts, purchase orders, letters, telegrams, telexes, intraoffice or interoffice communications, memoranda, reports, business records, instructions, specifications, notes, notebooks, lists, personnel records, scrapbooks, diaries, drafts, work papers, calendars, plans, diagrams, pictures, photographs, photocopies, promotional material, charts, graphs, exhibits, displays, descriptions, drafts, minutes of meetings and/or conferences and/or telephone and/or other conversations or communications, recordings, press releases, published or unpublished or pending speeches or articles, publications, transcripts of telephone conversations, telephone logs, telephone bills, messenger and/or courier logs, messenger and/or courier receipts, records of the transmittal or receipt of correspondence and/or documents and/or other tangible materials, records reflecting charges to clients or others for the transmittal or receipt of correspondence and/or documents and/or other tangible materials, ledgers, financial statements, microfilm, tape or disk (disc) recordings, e-mails and all attachments, including from any personal email accounts**,** written or electronically or magnetically stored calculations, computer printouts or any other tangible thing that stores, contains or preserves facts and/or opinions and/or information, or which in any way refers to, relates or reflects the fact or substance of any

communication or other transmittal of fact and/or opinions and/or information, in any way whatsoever.  This definition also includes, but is not limited to, electronically stored data from which information can be obtained either directly or by translation through detection devices or readers, and any such document is to be produced in a reasonably legible and usable form.  This definition includes the original item (or copy thereof if the original is not available) and all copies which differ in any respect from the original, including copies containing any notation, underlining, marking, or information not on the original.

      3.      As used herein, "Plaintiff" means AloStar.

      4.      As used herein, the terms "GLS Florida Property 2, LLC" ("GLS") as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

      5.      As used herein, "possession," "custody," or "control" includes the joint or several possession, custody or control not only by Defendant, but also the joint or several possession, custody or control by each or any other person acting or purporting to act on behalf of Defendant whether as employee, attorney, investigator, agent, sponsor, spokesman, or otherwise;

      6.      As used herein, the term "communication" includes, without limitation, communications by whatever means transmitted (i.e., whether oral, written, electronic, or other methods used), as well as any note, memorandum or other record thereof.

      7.      As used herein, "identify" when referring to a person means to state the person's full name, business and residence addresses and telephone numbers, and the relation or affiliation such person had or has to Defendant or Plaintiff.

      8.      As used herein, "identify" when referring to a document means to specifically describe the document in detail so that the document can readily be obtained by using the

description. In identifying a document that was, but no longer is, in Defendant's possession, custody, or control, describe the contents of the document; state the date it ceased to be in Defendant's possession, custody, or control; and identify the current custodian of the document.

9. As used herein, "date" shall mean the exact day, month and year, if ascertainable, or, if not, the best approximation (including relationship to other events).

10. As used herein, "person" is defined as any natural person or any business, legal or governmental entity or association.

11. As used herein, "concerning" means relating to, referring to, describing, evidencing or constituting.

12. As used herein, "Original Note" means the December 23, 2005 Promissory Note executed by GLS in favor of the Bank of Bonifay.

13. As used herein, "Operative Note" means the Renewal Promissory Note, dated January 10, 2010 and executed by GLS.

14. As used herein, "Amended Note" means any and every note, renewal, or amendment executed subsequent to the Original Note but prior to the Operative Note.

15. As used herein, "Property" means any portion of that real estate located in Bay County, Florida that GLS mortgaged to the Bank of Bonifay.

16. As used herein, the terms "all" and "each" shall be construed as all and each.

17. As used herein, the terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

18. The use of the singular form of any word includes the plural and vice versa.

19.     In answering these Interrogatories, Plaintiff should furnish such information as is known or is available to it regardless of whether this information is obtained directly by, or known to, its attorneys or other agents or representatives.

### INTERROGATORIES

1.     Describe Your affiliation, interest in, ownership of, membership, contractual relationship, e.g., guaranties, and full relationship with GLS, FL Florida Property 3, LLC, and any other entity now or ever incorporated in, operating in, doing any business in, or deriving any revenue from in the State of Florida.  For GLS, describe any changes in the preceding data occurring from the time of executing the Original Note to present.

2.     Identify any individual that has ever been a member or owner of GLS or FL Florida Property 3, LLC, the percentage of ownership or extent of that interest to include historical changes over time, and their state of residence and domicile.

3.     Describe the method of calculating the amount of each of Your limited guarantees concerning the Original Note, Operative Note, and Amended Note.

4.     Describe all policies or procedures by which GLS, directly or indirectly, accesses funds from all debt instruments to which it is a signatory, specifically whether You may be required or asked to approve or guarantee the obligation resulting from that action.

5.     Describe and identify all real and personal property in the State of Florida owned by You or an entity in which You have an interest.  For all such real or personal property, state the value, amount paid to acquire an interest in said property, and whether You have executed any guarantees concerning that property or other entities.

6.      Identify all persons who have been signatories on each bank account maintained in the name of GLS or FL Florida Property 3, LLC, separately identifying all persons with

-5-

authority to direct that any payment from any such bank account be made on behalf of GLS. For each bank account, state the address where the account was opened, the bank where the account is held, and the address where statements and other notices concerning the account are received. If You have ever issued paychecks or provided compensation from You or Your corporate bank accounts to GLS or another entity operating a business in Florida, please identify all such transactions.

7. Describe each contact or visit that You or any individual acting at Your request or on Your behalf made to the Property or the State of Florida for any purpose concerning the Property or GLS, the purpose of the visit, and the duration of the visit. Identify each person and describe Your instructions to that person and any information You obtained during or subsequent to each visit to the Property.

8. For every visit to the State of Florida and each of Your "visits to the State of Florida [that] have been either for the purpose of vacationing or in [Your] capacity and [Your] scope as an officer or member of a company" (Doc. 38, Attachs. 1-3 ¶ 6) in the previous ten years and without a date restriction if made concerning GLS, describe the visit, including the purpose of the visit, and the duration of the visit, and the company, if any, associated with the visit.

9. Describe any and all communications You or any individual acting at Your request or on Your behalf had with the Bank of Bonifay and any subsequent holders of the Original Note, Operative Note, and Amended Note.

10. State whether You signed one or more limited guaranties concerning the Original Note, Operative Note, and Amended Note, the date, time, and location in which it was signed,

the method it was used to return it to the bank or its agent, the address or phone number to which it was sent, and the location of performance under the limited guaranties.

      11.     State whether any limited guaranty concerning GLS or the Property, whether original or amended, You executed was a condition precedent to and induced the making of the Original Note, Operative Note, or Amended Note.

      12.     State the amount of Your investment in GLS and any other entity now or ever incorporated in, operating in, doing any business in, or deriving any revenue from the State of Florida, including those entities with which You have any contractual relationship, e.g., guaranties, and the estimated present value of all such investments. If You provided any consideration to GLS or a third party concerning GLS's acquisition of the Property, state the amount of the consideration and the value given.

      13.     State whether You or any entity in which You have an interest, to include GLS, presently operate or have ever operated a business in the State of Florida. For each such business, state the businesses' name, nature, duration, revenues, profits, and the amount of distributions You have received.

      14.     Describe the purpose of the loan proceeds obtained from the Original Note, the intended use of the Property, and the profit either You or GLS expected to realize. Specifically, state whether these loan proceeds were used, at least in part, to acquire the Property or provide capital or funds for the purpose of operating a business. For any such business, state the type and nature of business, the purpose of such business, and, specifically, whether it included real estate investment, holding, or development.

      15.     Describe the negotiations, discussions, communications, and other activity concerning the Original Note, limited guaranties You executed, the Property, or mortgage of the

Property that occurred prior to the execution of those documents, identifying each individual involved.  Specifically, state whether acquisition of the Property by GLS was conditioned or made possible by execution of the Original Note, limited guaranties You executed, or mortgage of the Property.

16. Describe and identify the "Marina Di Massa" development project or its equivalent under a different name, including its estimated costs of construction, Your or GLS's intended method of financing construction, marketing studies or efforts, and the professionals engaged to render and create plans for this development.  For each individual identified, state whether You have communicated with individual and describe each such communication.

17. Describe Your involvement with GLS and the "Marina Di Massa" development project or its equivalent under a different name, including Your role in the permitting or regulatory approval process and whether You have ever signed, submitted, prepared, or reviewed any document or paid any fee in connection with such process.

18. Describe Your or GLS's relationship with Ronnie Gilley Properties, LLC, Ronnie Gilley, Gateway Ventures, LLC, Harold and Nancy Dickens, and any other prior owners of the Property.

19. State whether You or GLS were aware that Ronnie Gilley Properties, LLC or Ronnie Gilley acquired the Property on the same day GLS purchased it from Ronnie Gilley Properties, LLC.

20. State whether You or GLS are aware that GLS paid more than twice what Ronnie Gilley Properties, LLC or Ronnie Gilley paid to acquire the Property, the date You first became aware of that fact, and whether You disclosed it to the Bank of Bonifay or any subsequent holder of the Original Note, Operative Note, or Amended Note.  If You or GLS were not aware of this

fact, state the amount You believed Ronnie Gilley Properties, LLC or Ronnie Gilley paid to acquire its interest in the Property prior to conveying it to GLS.

21. State any facts, not otherwise set forth in Your responses to the interrogatories above, that would indicate that Your involvement with the Property, GLS, and the State of Florida is not limited to the execution of Your limited guaranty.

22. Identify any documents which referenced or attempted to reference in response to these interrogatories, but You have not or will not produce in response to Plaintiff's First Request for Production of Documents to Defendants Wiles, Stroud, and Graham Relating to Jurisdictional Discovery served contemporaneously with these interrogatories, and further state with particularity for each such document the factual basis for any asserted privilege or objection which You contends relieves the obligation to produce such document.

23. Have You ever owned or held any property, bank accounts, or assets in the State of Florida, paid taxes in the State of Florida, or owned companies doing business in the State of Florida. If so, describe with specificity.

24. Have You ever entered into any contracts of any kind with persons or entities residing in or doing business in the State of Florida? If so, describe with specificity.

25. Identify any payments or contributions sent or made by You or on Your behalf to entities, agencies, legislators, lobbyists, legislative campaigns, elected officials, election campaigns, political action committees, political parties, or other persons in the State of Florida.

-10-

Dated this 21st day of May 2012.

                By:  s/ Yancey F. Langston
                     Yancey F. Langston
                     Florida Bar No. 827134
                     MOORE, HILL & WESTMORELAND, P.A.
                     220 West Garden Street (32502)
                     SunTrust Tower, 9th Floor
                     Post Office Box 13290
                     Pensacola, FL 32591-3290
                     Telephone:  (850) 434-3541
                     Facsimile:  (850) 435-7899
                     Email:  ylangston@mhw-law.com
                     *Attorneys for Plaintiff*
                     *AloStar Bank of Commerce*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| **ALOSTAR BANK OF COMMERCE,**<br><br>　　**Plaintiff,**<br><br>v.<br><br>**GLS FLORIDA PROPERTY 2, LLC; JASON R. FLOM; HERBERT L. GRAHAM; GLENN W. JOHNSON, III; ELLIOT H. LEVINE; PETER MCKENNA; JAMES C. STROUD; DWIGHT P. WILES; ELIZABETH YATES; and ROGER S. AARON, EARLE YAFFA, and RONALD J. WEISS, as Executors of the Estate of Joseph Flom;**<br><br>　　**Defendants.** | **CIVIL ACTION FILE<br>NO. 5:11-cv-00406-RS-GRJ** |

**CERTIFICATE OF SERVICE**

　　I HEREBY CERTIFY that on May 21, 2012, I served a true and exact copy of the foregoing *First Interrogatories to Defendants Wiles, Stroud, and Graham Relating To Jurisdictional Discovery* via e-mail transmission, to the following counsel of record:

Ralph Schofield
Lawrence Keefe
A. Benjamin Gordon
KEEFE ANCHORS GORDON & MOYLE P.A.
2113 Lewis Turner Blvd., Ste. 100
Fort Walton Beach, FL 32547
rschofield@kagmlaw.com


　　　　　　　　　　　　　　　　　　　　s/ Yancey F. Langston
　　　　　　　　　　　　　　　　　　　　Yancey F. Langston