IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ALOSTAR BANK OF COMMERCE,

            Plaintiff,

                                                   Civil Action No. 5:11 CV406

v.

GLS FLORIDA PROPERTY 2, LLC;
JASON R. FLOM;  HERBERT L. GRAHAM;
GLENN W. JOHNSON, III;  ELLIOT H.
LEVINE;  PETER MCKENNA; JAMES C.
STROUD; DWIGHT P. WILES; ELIZABETH
YATES; and ROGER S. AARON, EARLE           JURY TRIAL DEMANDED
YAFFA, AND RONALD J. WEISS, as
Executors of the Estate of Joseph Flom

            Defendants.
_____/

## STROUD'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

     Defendant James C. Stroud answers the complaint of plaintiff as follows:

     1.     Defendant is without information sufficient to form a belief as to the truth of paragraph 1 of the Complaint.

     2.     Defendant is without information sufficient to form a belief as to the truth of paragraph 2 of the Complaint.

     3.     Defendant is without information sufficient to form a belief as to the truth of paragraph 3 of the Complaint.

     4.     Defendant is without information sufficient to form a belief as to the truth of paragraph 4 of the Complaint.

     5.     Defendant is without information sufficient to form a belief as to the truth of paragraph 5 of the Complaint.

6.      Defendant is without information sufficient to form a belief as to the truth of paragraph 6 of the Complaint.

7.      Defendant is without information sufficient to form a belief as to the truth of paragraph 7 of the Complaint.

8.      Admitted.

9.      Defendant is without information sufficient to form a belief as to the truth of paragraph 9 of the Complaint.

10.     Defendant is without information sufficient to form a belief as to the truth of paragraph 10 of the Complaint.

11.     Defendant is without information sufficient to form a belief as to the truth of paragraph 11 of the Complaint.

## I.      JURISDICTION AND VENUE

12.     Defendant is without information sufficient to form a belief as to the truth of paragraph 12 of the Complaint.

13.     Defendant is without information sufficient to form a belief as to the truth of paragraph 13 of the Complaint.

14.     Defendant hereby consents to personal jurisdiction. Defendant is without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 14 of the Complaint.

15.     Defendant is without information sufficient to form a belief as to the truth of paragraph 15 of the Complaint.

## II.     FACTS

16.     Defendant is without information sufficient to form a belief as to the truth of paragraph 16 of the Complaint.

17.     Defendant is without information sufficient to form a belief as to the truth of paragraph 17 of the Complaint.

18.     Defendant is without information sufficient to form a belief as to the truth of paragraph 18 of the Complaint.

19.     Defendant is without information sufficient to form a belief as to the truth of paragraph 19 of the Complaint.

20.     Defendant is without information sufficient to form a belief as to the truth of paragraph 20 of the Complaint.

21.     Defendant is without information sufficient to form a belief as to the truth of paragraph 21 of the Complaint.

22.     Defendant is without information sufficient to form a belief as to the truth of paragraph 22 of the Complaint.

23.     Defendant admits that he entered into a Limited Guaranty Agreement with Bonifay Bank and subsequent owners of the Indebtedness and Loan Agreement. Otherwise, Defendant is without information sufficient to form a belief as to the truth of paragraph 23 of the Complaint.

24.     Defendant is without information sufficient to form a belief as to the truth of paragraph 24 of the Complaint.

25.     Defendant admits that he executed an Amended and Restated Limited Guaranty in connection with the Indebtedness on or about September 19, 2006. Otherwise, Defendant is

without information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 25 of the Complaint.

26.     Defendant admits that the Amended and Restated Limited Guaranty executed by him on or about September 19, 2006 defined "Lender" as Bonifay and "its successors and assigns."   Otherwise, Defendant is without information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 26 of the Complaint.

27.     Defendant is without information sufficient to form a belief as to the truth of paragraph 27 of the Complaint.

28.     Defendant is without information sufficient to form a belief as to the truth of paragraph 28 of the Complaint.

29.     Defendant admits that the Amended and Restated Limited Guaranty executed by him on or about September 19, 2006 contains such language in numbered paragraph 1.01. Defendant is without information sufficient to form a belief as to the truth of paragraph 29 of the Complaint as it relates to any other Limited Guaranties.

30.     Defendant admits that the Amended and Restated Limited Guaranty executed by him on or about September 19, 2006 contains such language in numbered paragraph 3.01. Defendant is without information sufficient to form a belief as to the truth of paragraph 30 of the Complaint as it relates to any other Limited Guaranties.

31.     Defendant admits that the Amended and Restated Limited Guaranty executed by him on or about September 19, 2006 contains such language in numbered paragraph 5.01. Defendant is without information sufficient to form a belief as to the truth of paragraph 31 of the Complaint as it relates to any other Limited Guaranties.

32.     Defendant admits that the Amended and Restated Limited Guaranty executed by him on or about September 19, 2006 contains such language in numbered paragraph 3.01. Defendant is without information sufficient to form a belief as to the truth of paragraph 32 of the Complaint as it relates to any other Limited Guaranties.

33.     Defendant is without information sufficient to form a belief as to the truth of paragraph 33 of the Complaint.

34.     Defendant is without information sufficient to form a belief as to the truth of paragraph 34 of the Complaint.

35.     Defendant is without information sufficient to form a belief as to the truth of paragraph 35 of the Complaint.

36.     Defendant is without information sufficient to form a belief as to the truth of paragraph 36 of the Complaint.

37.     Defendant is without information sufficient to form a belief as to the truth of paragraph 37 of the Complaint.

38.     Defendant is without information sufficient to form a belief as to the truth of paragraph 38 of the Complaint.

39.     Defendant is without information sufficient to form a belief as to the truth of paragraph 39 of the Complaint.

40.     Defendant is without information sufficient to form a belief as to the truth of paragraph 40 of the Complaint.

41.     Defendant is without information sufficient to form a belief as to the truth of paragraph 41 of the Complaint.

42.     Defendant admits that the Amended and Restated Limited Guaranty executed by him on or about September 19, 2006 contains such language in numbered paragraph 4.01. Defendant is without information sufficient to form a belief as to the truth of paragraph 42 of the Complaint as it relates to any other Limited Guaranties.

43.     Defendant is without information sufficient to form a belief as to the truth of paragraph 43 of the Complaint.

44.     Defendant is without information sufficient to form a belief as to the truth of paragraph 44 of the Complaint.

45.     Defendant is without information sufficient to form a belief as to the truth of paragraph 45 of the Complaint.

46.     Defendant is without information sufficient to form a belief as to the truth of paragraph 46 of the Complaint.

47.     Defendant is without information sufficient to form a belief as to the truth of paragraph 47 of the Complaint.

48.     Defendant is without information sufficient to form a belief as to the truth of paragraph 48 of the Complaint.

49.     Defendant is without information sufficient to form a belief as to the truth of paragraph 49 of the Complaint.

50.     Defendant is without information sufficient to form a belief as to the truth of paragraph 50 of the Complaint.

51.     Defendant is without information sufficient to form a belief as to the truth of paragraph 51 of the Complaint.

52.     Defendant is without information sufficient to form a belief as to the truth of paragraph 52 of the Complaint.

53.     Defendant is without information sufficient to form a belief as to the truth of paragraph 53 of the Complaint

54.     Defendant is without information sufficient to form a belief as to the truth of paragraph 54 of the Complaint.

55.     Defendant is without information sufficient to form a belief as to the truth of paragraph 55 of the Complaint.

56.     Defendant admits that the Amended and Restated Limited Guaranty executed by him on or about September 19, 2006 contains such language in numbered paragraph 3.01. Defendant is without information sufficient to form a belief as to the truth of paragraph 42 of the Complaint as it relates to any other Limited Guaranties.

57.     Defendant is without information sufficient to form a belief as to the truth of paragraph 57 of the Complaint.

58.     Defendant is without information sufficient to form a belief as to the truth of paragraph 58 of the Complaint.

59.     Defendant is without information sufficient to form a belief as to the truth of paragraph 59 of the Complaint.

60.     Defendant is without information sufficient to form a belief as to the truth of paragraph 60 of the Complaint.

61.     Defendant is without information sufficient to form a belief as to the truth of paragraph 61 of the Complaint.

### III.     CAUSES OF ACTION

62.     No additional response is necessary to paragraph 62 of the Complaint.

63.     Defendant is without information sufficient to form a belief as to the truth of paragraph 63 of the Complaint.

64.     Defendant is without information sufficient to form a belief as to the truth of paragraph 64 of the Complaint.

65.     Defendant is without information sufficient to form a belief as to the truth of paragraph 65 of the Complaint.

66.     Defendant is without information sufficient to form a belief as to the truth of paragraph 66 of the Complaint.

67.     Defendant is without information sufficient to form a belief as to the truth of paragraph 67 of the Complaint.

67.     Defendant is without information sufficient to form a belief as to the truth of paragraph 67 of the Complaint

68.     Defendant is without information sufficient to form a belief as to the truth of paragraph 68 of the Complaint.

69.     Defendant is without information sufficient to form a belief as to the truth of paragraph 69 of the Complaint.

70.     No additional response is necessary to paragraph 70 of the Complaint.

71.     Defendant is without information sufficient to form a belief as to the truth of paragraph 71 of the Complaint.

72.     Defendant is without information sufficient to form a belief as to the truth of paragraph 72 of the Complaint.

73.     Defendant is without information sufficient to form a belief as to the truth of paragraph 73 of the Complaint.

74.     Defendant is without information sufficient to form a belief as to the truth of paragraph 74 of the Complaint.

75.     Defendant is without information sufficient to form a belief as to the truth of paragraph 75 of the Complaint.

76.     Defendant is without information sufficient to form a belief as to the truth of paragraph 76 of the Complaint.

77.     Defendant denies that the Amended and Restated Limited Guaranty executed by him on or about September 19, 2006 so provides. Defendant is without information sufficient to form a belief as to the truth of paragraph 77 of the Complaint as it relates to any other Limited Guaranties.

78.     Defendant denies that he is liable to the Plaintiff for any amount on any theory.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to set forth a cause of action upon which relief can be granted against the Defendant as a matter of law and should be dismissed.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff is barred from any recovery against the Defendant by waiver and estoppel.

### THIRD AFFIRMATIVE DEFENSE

Defendant has been discharged and released from his guaranty obligations due to Plaintiff's actions.

## COUNTERCLAIM

**Background Facts**

1.      Defendant is an investor in and a member of Defendant GLS Florida Property 2, LLC ("GLS").

2.      GLS was formed in 2005 for the purpose of purchasing approximately 7.5 acres of real estate (the "Holiday Lodge Property") located in Bay County, Florida, with the intention of developing thereon a mixed use residential/commercial project (the "Marina Di Massa Project").

3.      Defendant is also an investor in and a member of Nashyork, LLC ("Nashyork").

4.      Nashyork was formed in 2005 for the purpose of purchasing approximately 14 acres of real estate (the "Highway 98 Property") located in Bay County, Florida, with the intention of developing thereon a mixed use residential/commercial project (the "La Borgata Project").

5.      The primary promoter and driving force behind both GLS and Nashyork was an individual named Ronnie Gilley ("Gilley"), an Alabama resident who for many years engaged in a variety of businesses, including real estate development, through a variety of companies, including Ronnie Gilley Properties, LLC. ("RGP"), which was and is based in Enterprise, Alabama. Gilley was recently sentenced to a federal prison term after pleading guilty to charges of bribery and other crimes.

6.      Gilley solicited Defendant to invest in several real estate projects, including GLS and Nashyork. Defendant placed a great deal of trust and confidence in Gilley, and Gilley accepted such trust, as and as such Gilley owed a fiduciary duty to Defendant.

7.      On information and belief, Gilley utilized Gary Smith ("Smith"), a Nashville accountant and attorney, and Elliot Levine ("Levine"), a New York accountant, to organize GLS and Nashyork and to solicit their respective clients as potential investors in GLS and Nashyork.

8.      On information and belief, "GLS" stands for "Gilley, Levine and Smith."

9.      Of the ten individuals who directly or indirectly invested in GLS, eight also directly or indirectly invested in Nashyork.

10.     Smith was Defendant's long time accountant and business manager, and as such was a person in whom Defendant placed a great deal of trust and confidence, granting Smith authority to manage all of Defendant's personal financial affairs. As a result, Smith owed fiduciary duties to Defendant.

11.     In 2005 and thereafter until his death in 2008, Smith was a partner with Dwight Wiles ("Wiles") in the accounting and business management firm of Smith Wiles & Co., PC with principal offices at 900 Division Street, Nashville, Tennessee. Smith reviewed the Nashyork and GLS investments at the request of Defendant and recommended to Defendant that he invest in both entities.

12.     On information and belief, since its inception GLS has been managed solely by Levine, either directly or through his position as managing member of FL Florida Property 3, LLC. As a result, Levine owed fiduciary duties to Defendant as a member of GLS.

13.     On information and belief, from its inception until Mr. Smith's death in 2008, Nashyork was managed solely by Smith, either directly or through his position as sole member of CRT, LLC. On information and belief, since 2008 Nashyork has been managed by Levine and/or Wiles. As a result, Levine and Wiles also owed fiduciary duties to Defendant as a member of Nashyork.

14.     Defendant has never been involved in the management of either GLS or Nashyork.

15.     Unbeknownst to Defendant until just recently, in June 2005 Gilley executed a Purchase & Sale Agreement on behalf of RGP to purchase the Holiday Lodge Property from Gateway Ventures, Inc. for a purchase price of $12,000,000. Further unbeknownst to Defendant until recently, in August 2005 Gilley, Levine and Smith caused GLS to enter a Purchase & Sale Agreement with RGP to purchase the *exact same property* for the grossly inflated sum of $27,000,000. On information and belief, none of the other investors in GLS, other than Smith and Levine, knew about the earlier contract or the $12,000,000 purchase price stated therein.

16.     Also unbeknownst to Defendant until just recently, the identical scheme was employed by Gilley and Smith with respect to Nashyork, with Gilley causing RGP to contract in March 2005 to purchase the Highway 98 Property for $12,600,000 and then shortly thereafter causing Nashyork to contract to purchase *the exact same property* for the grossly inflated sum of $20,000,000. In the latter transaction, also unbeknownst to Defendant until recently, Gilley used a straw man named Ralph Lynn, Jr. ("Lynn"), a Tennessee resident who had previously done business with Gilley, to disguise Gilley's own involvement in the purchase of the Highway 98 Property. On information and belief, none of the other investors in GLS, other than Smith and Levine, knew about the earlier contract or the $12,600,000 purchase price stated therein, or about the true nature of Lynn's involvement and his relationship to Gilley.

17.     In December 2005, Gilley, Levine and Smith caused GLS to purchase the Bayfront Property from RGP purportedly for $25,000,000. On information and belief, at or about the same time, RGP purchased the same property from Gateway Ventures for $12,000,000.

18.     On information and belief, 100% of the funds used to facilitate such purchases (other than any earnest money or other deposits paid prior to closing) came from the proceeds of an $18,750,000 loan (the "GLS Loan") from the Bank of Bonifay ("Bonifay") to GLS, which loan had been obtained and/or facilitated by Gilley, RGP, Levine and/or Smith on behalf of GLS and which was secured in part by the personal guarantees of the investors in GLS, including the Defendant, which guarantees were required by Bonifay as a condition to the GLS Loan.

19.     On information and belief, all or most of the proceeds of the GLS Loan in excess of the amount required to purchase the Holiday Lodge Property from Gateway Ventures (and pay the closing costs for both transactions) were retained by Gilley, RGP, Levine and/or Smith, without the knowledge or consent of any of other the investors in GLS, including the Defendant. On information and belief, the difference between the alleged purchase price of $25,000,000 and the loan proceeds of $18,750,000 was never funded or paid to RGP by GLS or any other person or entity. On information and belief, Gilley, Smith and Levine caused a promissory note for such difference to be issued by GLS to RGP, even though RGP had never advanced funds or provided anything of value to GLS in consideration for such promissory note.

20.     On or about September 7, 2005, David R. Lewis ("Lewis"), a real estate appraiser in Lynn Haven, Florida, delivered an "as though vacant" appraisal (the "Lewis Appraisal") of the Holiday Lodge Property to Garry W. Cannon ("Cannon"), a vice president and commercial loan officer of SunSouth Community Bank ("SunSouth Community") in Destin, Florida. Despite the fact that the Lewis Appraisal specifically disclosed the June 2005 contract on the Bayfront Property, including the names of the parties to such contract and the purchase price of $12,000,000, the Lewis Appraisal valued the Holiday Lodge Property at $25,000,000, an amount reflecting an amazing appreciation in excess of 100% over a mere three month period.

21.     As of the date of the Lewis Appraisal, SunSouth Community was a division of Bonifay, and Cannon was also a vice president and commercial loan officer of Bonifay.

22.     On information and belief, SunSouth Community and Bonifay were both at the time under the majority ownership and/or control of Guy F. Medley and Michael A. Medley (the "Medleys"), who currently serve as directors and Chairman and Vice Chairman / Chief Executive Officer, respectively, of SunSouth Bank ("SunSouth"), headquartered in Dothan, Alabama. Dothan is approximately 30 miles from Enterprise, Alabama, where Gilley resided and where RGP was and is headquartered. According to its website, SunSouth has an office in Enterprise Alabama.

23.     On information and belief, Gilley and/or RGP have a history of engaging in real estate and other loan transactions with banking entities under common control, including, Bonifay, SunSouth Community and SunSouth (the "Dothan Banks"). Included in this history is a $28,500,000 loan by SunSouth to Nashyork in September 2005 made pursuant to the terms of a commitment letter from SunSouth addressed to Gilley in his capacity as President of RGP, even though Gilley had no legal ownership interest in or management position with Nashyork at that time or any other time.

24.     The relationship between Gilley and the Dothan Banks was such that in November 2005 Cannon, the Bonifay vice president and commercial loan officer, advised Gilley and Smith in an email that Bonifay was prepared to close on a request to fund the purchase of the Highway 98 Property for Nashyork. On information and belief, when Gilley and Smith found another bank to finance that transaction, Bonifay simply switched to funding the purchase of the Holiday Lodge Property for GLS. Gilley described his relationship with the Dothan Banks as it

14

relates to the Nashyork and GLS real estate projects as follows: "They were speculating right along with us."

25.     As a result of its unique relationship with Gilley and GLS, and its receipt of greater economic benefit from the Bonifay Loan than from typical loan transactions, Bonifay had a fiduciary duty to both GLS and Defendant.

26.     On information and belief, at the time GLS entered into the GLS Loan Bonifay knew that the Bayfront Property was worth substantially less than the purported purchase price of $25,000,000 "paid" by GLS (which price was "justified" by the Lewis Appraisal) and that the GLS investors (other than Smith and Levine), including Defendant, were not aware of that fact. On information and belief, Bonifay did not disclose this information to Defendant or the other passive investors because it knew the GLS Loan would provide significant benefits to Bonifay and its affiliated companies as well as to one of its most important customers, Gilley and his related entities, including RGP.

27.     On information and belief, Bonifay also knew or should have known that the supposed "equity" contributed by GLS to the purchase of the Holiday Lodge Property, and which purportedly justified the 75% loan to value ratio represented by the GLS Loan, was in fact non-existent. On information and belief, Bonifay did not disclose this information to Defendant or the other passive investors because it knew the GLS Loan would provide significant benefits to Bonifay and its affiliated companies as well as to one of its most important customers, Gilley and his related entities, including RGP.

28.     Without disclosing its knowledge about the true value of the Bayfront Property, the absence of any real equity contributed by GLS to the purchase of the Holiday Lodge Property, or its extensive and close relationship with Gilley, Bonifay induced Defendant to enter

into a personal guaranty (with subsequent renewals and modifications) in an amount that far exceeded his proportionate share of the underlying loan, and required further personal guaranties to secure a $25,000,000 loan.

## COUNT I

29.     Defendant adopts and incorporates by reference the allegations in paragraphs 1 through 28 above.

30.     Bonifay failed to disclose to Defendant that the Holiday Lodge Property was worth substantial less that the purported purchase price on which the Bonifay loan was based.

31.     Bonifay failed to disclose to Defendant that GLS had little or no equity in the Holiday Lodge Property purchase, and certainly nowhere near the $6,250,000 reflected as the difference between the purported purchase price and the $18,750,000 in funds provided by the Bonifay Loan.

32.     Bonifay also failed to disclose to Defendant its own financial and business relationship with Gilley and RGP, and its intention to "speculate" with Gilley in the Holiday Lodge Property.

33.     Bonifay knew that Defendant would rely on such material omissions in signing his personal guaranty and other agreements in favor of Bonifay and its successors and assigns.

34.     Plaintiff is the direct beneficiary of the material omissions on the part of Bonifay.

35.     As the direct and proximate result of Bonifay's fraudulent concealments, Defendant has been damaged.

## COUNT II

36.     Defendant adopts and incorporates by reference the allegations in paragraphs 1 through 28 above.

16

37.     A fiduciary relationship existed between Defendant and Bonifay.

38.     Further, Bonifay knew, or had reason to know, that Defendant reposed trust and confidence in Bonifay by allowing Bonifay to communicate and negotiate solely with Gilley, RGP, Levine and/or Smith with respect to Defendant's interest in the Bonifay Loan, both as an investor in and member of GLS and as a guarantor thereof.

39.     Bonifay's fiduciary duty to Defendant required that Bonifay disclose fairly and honestly all facts which might be presumed to influence Defendant in regard to his actions with respect to the Bonifay Loan and his personal guaranty thereof.

40.     Bonifay's fiduciary duty to the Defendant also required that the Bank refrain from self-dealing, act in the best interests of Defendant and GLS, and not take unfair advantage of the Defendant or GLS.

41.     Bonifay breached its fiduciary duty to Defendant by failing to disclose facts material to the personal guaranties Defendant signed and collateral he provided to the Bank.

42.     As a direct and proximate result to Bonifay's breach of its fiduciary duty to Defendant, Defendant was damaged.

## COUNT III

43.     Defendant adopts and incorporates by reference the allegations in paragraphs 1 through 28 above.

44.     A fiduciary relationship existed between Defendant and Bonifay because the Bank's unique relationship with Gilley and GLS, and its receipt of greater economic benefit from the Bonifay Loan than from typical loan transactions.

45.     Pursuant to this fiduciary relationship, Bonifay had a duty to disclose its knowledge of the Holiday Lodge Property's true value, its knowledge that GLS had little or no

equity in the transaction, and the Bank's true relationship with Gilley and its involvement with the Marina Di Massa and La Borgatta Projects.

46.     In justifiable reliance upon Bonifay's concealment of the material facts described above, Defendant agreed to incur substantial personal liability on the Bonifay Loan through the execution of various personal guarantees.

47.     As a direct and proximate result of Bonifay's fraudulent concealments, Defendant was damaged.

## COUNT IV

48.     Defendant adopts and incorporates by reference the allegations in paragraphs 1 through 28 above.

49.     Gilley, Levine and Smith all owed fiduciary duties to Defendant.

50.     Gilley, Levine and Smith all breached their fiduciary duties to Defendant by, among other things, conspiring to artificially inflate the price of the Holiday Lodge Property to GLS (and thus the amount of the guaranty required by Bonifay from Defendant in connection with the loan which funded the purchase thereof) and to secure for themselves secret profit on the purchase of the Holiday Lodge Property by GLS.

51.     Defendant suffered damage and injury as a result of such breaches.

52.     Bonifay knew of the breach of such fiduciary duties.

53.     Bonifay substantially assisted Gilley, Levine and Smith in carrying out such breach.

54.     As a direct and proximate result of Bonifay's actions, Defendant was damaged.

**RELIEF REQUESTED**

WHEREFORE, the Defendant respectfully requests that this Court:

(i)      Rescind the personal guaranty of Defendant;

(ii)     Award damages in an amount to be proved at trial

(iii)    Award attorneys fees and costs in this action;

(iv)    Award interest as provided by law; and

(v)     Grant such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

The Defendant demands a jury on all issues so triable.

**CERTIFICATE OF SERVICE**

I hereby certify that this Answer has been filed electronically through this Court's ECF system on this 31st day of July, 2012, and a true and correct copy of the foregoing has been furnished to each party's counsel via a Notice of Electronic Filing.

/s/ Jonathan T. Holloway
Jonathan T. Holloway
Florida Bar No. 627763
Holloway Law Firm, P.A.
369 N. Main Street
Crestview, Florida 32536
Tel.: (850) 398-6808
Fax: (850) 398-6809


*Attorney for James C. Stroud*