UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| **ALOSTAR BANK OF COMMERCE,**<br><br>　　Plaintiff,<br><br>v.<br><br>**GLS FLORIDA PROPERTY 2, LLC;<br>JASON R. FLOM; HERBERT L.<br>GRAHAM; GLENN W. JOHNSON, III;<br>ELLIOT H. LEVINE; PETER MCKENNA;<br>JAMES C. STROUD; DWIGHT P. WILES;<br>ELIZABETH YATES; and EARLE YAFFA<br>and RONALD J. WEISS, as Executors of the<br>Estate of Joseph Flom;**<br><br>　　Defendants. | CIVIL ACTION FILE<br>NO. 5:11-cv-00406-RS-GRJ |

## **VERIFIED AMENDED COMPLAINT**

Plaintiff AloStar Bank of Commerce ("Plaintiff" or "AloStar"), the holder in due course with respect to the Indebtedness (as defined below) on which this suit is based, files this Amended Complaint against Defendant GLS Florida Property 2, LLC ("Borrower") and Defendants Jason R. Flom; Herbert L. Graham; Glenn W. Johnson, III; Elliot H. Levine; Peter McKenna; James C. Stroud; Dwight P. Wiles; Elizabeth Yates; and Earle Yaffa and Ronald J. Weiss, as Executors of the Estate of Joseph Flom (collectively the "Guarantors"), asserting causes of action for breach of contract for Borrower's failure to comply with the Loan Agreement (as defined below) and breach of contract for the Guarantors' failure to comply with the Limited Guaranties (also as defined below), in support of which Plaintiff respectively shows the following:

1

# I.
# PARTIES

1. Plaintiff is an Alabama corporation with its principal place of business in Georgia.

2. Defendant GLS Florida Property 2, LLC is a Florida Limited Liability Company with its principal place of business at 150 East 52nd Street, 21st Floor, New York, New York 10022. Its registered agent for service is Ronald S. Kochman, 222 Lakeview Avenue, Suite 950, West Palm Beach, Florida 33401.

3. All the Guarantors are believed to be born or naturalized citizens of the United States of America.

4. Upon information and belief, Defendant Jason R. Flom is an individual residing and domiciled in New York, New York County, New York at 146 Central Park West, New York, New York 10023 and may be served with process at his personal address.

5. Upon information and belief, Defendant Herbert L. Graham is an individual residing and domiciled in Odessa, Ector County, Texas and may be served with process at 6999 East Business I-20, Odessa, Texas 79762 or his personal address.

6. Upon information and belief, Defendant Glenn W. Johnson, III is an individual residing and domiciled in Miami Beach, Miami-Dade County, Florida at 520 West Avenue, Apartment 2204, Miami Beach, Florida 33139 and may be served with process at his personal address.

7. Upon information and belief, Defendant Elliot H. Levine is an individual residing and domiciled in Port Washington, Nassau County, New York at 140 Cow Neck Road, Port Washington, New York 11050 and may be served with process at his personal address.

8. Upon information and belief, Defendant Peter McKenna is an individual residing and domiciled in Jericho, Nassau County, New York at 38 Kettlepond Road, Jericho, New York 11753 and may be served with process at his personal address.

9. Upon information and belief, Defendant James C. Stroud is an individual residing and domiciled in Nashville, Davidson County, Tennessee and may be served with process at Huskins-Harris, 142 Rosa L. Parks Boulevard, Nashville, Tennessee 37203 or his personal address.

10. Upon information and belief, Defendant Dwight P. Wiles is an individual residing and domiciled in Nashville, Davidson County, Tennessee at 4190 Belmont Park Terrace, Nashville, Tennessee 37215 and may be served with process at his personal address.

11. Upon information and belief, Defendant Elizabeth Yates is an individual residing and domiciled in Summit, Union County, New Jersey at 50 C New England Avenue, Summit, New Jersey 07901 and may be served with process at her personal address.

12. Upon information and belief, Defendants Earle Yaffa and Ronald J. Weiss are the Executors of the Estate of Joseph Flom, who resided and was domiciled in New York, New York County, New York at the time of his death. Defendants Earle Yaffa and Ronald J. Weiss may be personally served at the addresses on file with the Surrogate's Court of New York County, New York.

## II.
## JURISDICTION AND VENUE

13. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of the diversity of citizenship of the parties.

14. The amount in controversy in this case, exclusive of interest and costs, exceeds $75,000.00.

15. None of the Guarantors are believed to be domiciled in AloStar's state of incorporation or the location of its principal place of business. Therefore, the complete diversity requirement is satisfied as to each Guarantor.

16. AloStar and Borrower, Defendant GLS Florida Property 2, LLC, also are completely diverse, as supported by the structure of Borrower and the citizenship of its members.

17. Borrower's members include: Defendant James C. Stroud; Defendant Dwight P. Wiles; Defendant Herbert L. Graham; CRT, LLC, a Tennessee limited liability company; and FL Florida Property 3 LLC, a New York limited liability company.

18. The citizenship of Borrower's individual members is established above. CRT, LLC was an entity organized in Tennessee, but it was administratively dissolved by the Tennessee Secretary of State on August 17, 2009. Upon information and belief, the only member of CRT, LLC was Gary W. Smith, who is not a party to this action, but was a citizen of the United States of America residing and domiciled in Tennessee.

19. The members of FL Florida Property 3, LLC include Defendants Elliot H. Levine; Elizabeth Yates; Glenn W. Johnson, III; Peter McKenna; Jason R. Flom; and Joseph Flom, whose membership interest is now held by his estate. The citizenship of these individual members of FL Florida Property 3, LLC is established above.

20. This Court has personal jurisdiction over all Defendants to this action.

21. Borrower is subject to specific and general personal jurisdiction in the State of Florida because it is an entity organized under Florida law and also has transacted business in this state by developing real estate and borrowing from a Florida bank.

22. The Guarantors are subject to personal jurisdiction by operation of consent by contract and Fla. Stat. § 685.102. All the Guarantors executed or are otherwise bound by an

Amended and Restated Limited Guaranty Agreement with an effective date of January 2010 that was prepared for their individual signatures (the "January 2010 Guaranties").

23. The January 2010 Guaranties contain the following waiver of personal jurisdiction and consent to jurisdiction in Florida courts: "Guarantor also waives any and all rights or defenses arising by reason of: . . . (g) any defenses disputing . . . *disputing personal jurisdiction within the State of Florida*."

24. Additionally, the Guarantors are subject to personal jurisdiction under Florida's Long-Arm Statute by "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state," Fla. Stat. § 48.193(1)(a), through operation of sophisticated Florida real estate investment business and permitting Borrower and others to act as an agent of the Guarantors to manage and pursue returns on their investments and guaranties directed to and part of a Florida real estate development project; "[c]ontracting to insure any person, property, or risk located within this state at the time of contracting," Fla. Stat. § 48.193(1)(d), by executing limited guaranty agreements promising repayment of Borrower's Indebtedness (as defined below); and "[b]reaching a contract in this state by failing to perform acts required to be performed in this state," Fla. Stat. § 48.193(1)(g), by failing to remit full payment owed under their respective guaranty agreements when due.

25. The Guarantors executed guaranty agreements governed under Florida law to facilitate lending by a Florida bank requiring payment to be made in Florida, acquiring Florida real estate, and securing the Indebtedness (as defined below) with a mortgage filed in Florida. The Guarantors' actions provided funds for operating a business whose sole purpose was development of a condominium project in Florida. The majority of the Guarantors also are involved with other similar business transactions in Florida.

26. The exercise of personal jurisdiction by this Court comports with due process. In addition to their other contacts with this forum, the Guarantors have consented to adjudication in Florida of disputes related to the Indebtedness (as defined below) or their respective limited guaranty agreements. When entering the guaranty agreements, the Guarantors expected a financial benefit to result from their activities and contacts in Florida, selected the law of Florida to govern disputes, and expected the protection of its laws and its courts.

27. Several of the Guarantors have invoked Florida's legal system in a comparable real estate transaction. On May 31, 2012, Guarantors Elizabeth Yates, Jason R. Flom, and Joseph Flom, through his estate, ***initiated a lawsuit in Florida state court*** related to another failed residential condominium real estate development project *in Florida,* known as La Borgata. In that suit, these Guarantors seek to rescind their personal guaranties and collateral assignment agreements. This action has been removed to the Northern District of Florida.

28. Providing another basis for personal jurisdiction over Defendant Glenn W. Johnson, III, this Guarantor is domiciled in the State of Florida and is, therefore, subject to general personal jurisdiction in its courts.

29. Multiple Guarantors filed a motion to dismiss for lack of personal jurisdiction, but later withdrew those motions, thereby submitting to the personal jurisdiction of this Court. By agreement of the parties, these consents to personal jurisdiction survive amendment of the Complaint.

30. Venue is proper in this District because a substantial part of the events or omissions giving rise to the asserted claims occurred in this District. 28 U.S.C. § 1391. For example, the mortgaged property and intended real estate development project are located in this District, and the Indebtedness (as defined below) originated with a bank in this District.

31. As an additional basis for venue, all of the Guarantors have executed or are otherwise bound by valid contracts expressly waiving any defense or right to contest venue in Bay County, Florida. The January 2010 Guaranties contained the following, relevant provision: "Guarantor also waives any and all rights or defenses arising by reason of: . . . (g) any defenses disputing *proper venue in Okaloosa or Bay County, Florida* . . . ."

32. This forum selection clause is valid and enforceable.

33. This District is the only venue where all Defendants are subject to personal jurisdiction.

## III.
## FACTS

### The Property Acquisition and Mortgage to The Bank of Bonifay

34. On or about August 15, 2005, Borrower entered a Purchase and Sale Agreement for acquiring real estate located in Bay County, Florida ("Property") for a purchase price of $27,000,000.00.

35. On December 23, 2005, Borrower financed the acquisition of the Property by executing a Promissory Note ("Original Note") in the amount of $18,750,000.00 in favor of The Bank of Bonifay ("Bonifay"). To secure the Original Note, Borrower also executed a Mortgage and Security Agreement (the "Mortgage") on that same date, thereby mortgaging the Property to Bonifay. The Mortgage initially secured the Original Note and "any and all renewals, extensions, modifications, consolidations and extensions thereof" (the "Indebtedness"). It also served as security for any additional advances up to $100,000,000.00.

### The Loan Agreement, Promissory Note, & Basis of Suit

36. The Original Note matured on August 23, 2006. As an alternative to repayment, a renewal note was executed on September 20, 2006, which provided for a new maturity date of

7

September 20, 2007. This process continued for several years: on September 20, 2007, another renewal note was executed to provide for a new maturity date of September 20, 2008; on October 29, 2008, another renewal note was executed to provide for a new maturity date of December 10, 2008; on January 27, 2009, another renewal note was executed to provide for a new maturity date of December 10, 2009; and, on January 10, 2010, a final Renewal Promissory Note was executed to provide for a new maturity date of January 10, 2015 (the Original Note and all renewal notes are collective referred to as the "Loan Agreement").

37. Borrower has defaulted by failing to submit monthly payments as required by numbered paragraph 3 of the Operative Note (as defined below). Further, as a result of Borrower's Default under the Loan Agreement, Plaintiff accelerated the Indebtedness, which then became immediately due and payable when Plaintiff exercised that option. These events are described in greater detail below.

### Assignment of Mortgage to Nexity Bank and Purchase by Plaintiff

38. On or about October 2, 2009, Bonifay assigned virtually its entire interest in the Indebtedness and related loan documents to Nexity Bank ("Nexity") by executing an Assignment of Mortgage, Loan Rights, and Loan Documents.

39. On March 20, 2009, the Federal Deposit Insurance Corporation ("FDIC") issued a Cease and Desist Order against Nexity, and The State of Alabama Banking Department took possession of and closed Nexity on or about April 15, 2011. The FDIC was named Receiver.

40. On or about April 15, 2011, Plaintiff purchased the Indebtedness and related loan documents from the FDIC in its capacity as Receiver for Nexity.

### Relevant Provisions of the Limited Guaranties

41. In conjunction with and as inducement for Bonifay to extend Borrower the Indebtedness, several individuals, the Guarantors, entered Limited Guaranty agreements with

8

Bonifay and subsequent owners of the Indebtedness and Loan Agreement. The Guarantors, through these agreements and periodic amendments and restatements, guaranteed the performance and prompt payment when due of a portion of the Indebtedness, as specified in his or her individual Limited Guaranty.

42. Most of the Guarantors initially executed a Limited Guaranty with an effective date of December 23, 2005, which coincides with the inception of the Indebtedness.

43. As the Indebtedness was modified and extended over time, all of the Guarantors executed at least one Amended and Restated Limited Guaranty. Unless otherwise indicated, "Limited Guaranty" throughout the remainder of this Verified Complaint refers to the most recent Amended and Restated Guaranty executed by a Guarantor, and "Limited Guaranties" refers to every Limited Guaranty collectively.

44. These Amended and Restated Limited Guaranty Agreements defined "Lender" as Bonifay and "its successors and assigns," or, after Bonifay's assignment of the Indebtedness to Nexity, "Lender" was defined as Nexity and "its successors and assigns."

45. Other than the individual Guarantor's maximum liability and obligation, the material financial terms are substantially identical across all Limited Guaranties.

46. As set forth in numbered paragraph 1.01 of the Limited Guaranties, titled "Commercial Guaranty:"

> For good and valuable consideration, and for purpose(s) of inducing [Lender] to extend, make, renew, modify and/or continue to extend, make, renew or modify the Indebtedness . . . , [Guarantor] absolutely and unconditionally guarantees and promises to pay to Lender or its order, in lawfully obtained legal tender of the United States of America, the Indebtedness of [Borrower] to Lender on the terms and conditions set forth in this Guaranty.

47. Numbered paragraph 3.01 of the Limited Guaranties established the nature of the guaranty, stating that

> Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, Guarantor's portion of the Indebtedness.

48. In numbered paragraph 5.01 of the Limited Guaranties, the Guarantors further authorized

> *Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) to make one or more additional secured or unsecured loans to borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit; (b) to alter, supplement, compromise, modify, renew, extend, terminate, accelerate, waive or otherwise change one or more time the time for payment or other terms, conditions, or provisions of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions and modification may be repeated and may be for longer than the original term . . . .*

49. Numbered paragraph 3.01 also established each individual Guarantor's maximum liability and obligation to Lender at a fixed dollar amount of the total

> amount of Indebtedness outstanding from time to time and at maturity (whether maturity occurs on the Maturity Date specified in the Note or by earlier acceleration of the Note by Lender upon an Event of Default) plus attorneys' fees and costs reasonably incurred by Lender in the enforcement of this Guaranty.

The maximum amounts of each Guarantor's liability and basis therefore are established in the paragraphs that follow.

50. Effective January 10, 2010, Defendant Herbert L. Graham executed an Amended and Restated Limited Guaranty with Nexity, which fixed his maximum liability and obligation

10

with respect to the Indebtedness at $7,374,375.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the guaranty.

51. Effective January 10, 2010, Defendant Peter McKenna executed an Amended and Restated Limited Guaranty with Nexity, which fixed his maximum liability and obligation with respect to the Indebtedness at $3,526,875.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the Guaranty.

52. Effective January 10, 2010, Defendant Elliot H. Levine executed an Amended and Restated Limited Guaranty with Nexity, which fixed his maximum liability and obligation with respect to the Indebtedness at $3,847,500.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the guaranty.

53. Effective January 10, 2010, Defendant James C. Stroud executed an Amended and Restated Guaranty with Nexity, which fixed his maximum liability and obligation with respect to the Indebtedness at $1,603,125.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the guaranty.

54. Effective January 10, 2010, Defendant Dwight P. Wiles executed an Amended and Restated Limited Guaranty with Nexity, which fixed his maximum liability and obligation with respect to the Indebtedness at $480,938.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the guaranty.

55. Prior to his death, Joseph Flom executed an Amended and Restated Limited Guaranty with Nexity effective January 10, 2010, which fixed his maximum liability and obligation with respect to the Indebtedness at $1,763,438.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the Guaranty.

56. Effective January 27, 2009, Defendant Elizabeth Yates executed an Amended and Restated Limited Guaranty, which fixed her maximum liability and obligation with respect to the Indebtedness at $3,712,500.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the guaranty.

57. Additionally, Defendant Elizabeth Yates executed or is otherwise bound by an Amended and Restated Limited Guaranty Agreement with Nexity having an effective date of January 10, 2010, which fixed her maximum liability and obligation with respect to the Indebtedness at $3,526,875.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the Guaranty.

58. Effective January 27, 2009, Defendant Jason R. Flom executed an Amended and Restated Limited Guaranty, which fixed his maximum liability and obligation with respect to the Indebtedness at $3,712,500.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the Guaranty.

59. Additionally, Defendant Jason R. Flom executed or is otherwise bound by an Amended and Restated Limited Guaranty Agreement with Nexity having an effective date of January 10, 2010, which fixed his maximum liability and obligation with respect to the Indebtedness at $3,562,875.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the Guaranty.

60. Effective January 27, 2009, Defendant Glenn W. Johnson, III executed an Amended and Restated Limited Guaranty, which fixed his maximum liability and obligation with respect to the Indebtedness at $5,568,750.00 plus attorneys' fees and costs reasonably incurred in the enforcement of the guaranty. This Guarantor failed to make any appearance in this action, and this Court entered a default judgment on August 31, 2012.

**The Guaranty Period**

61. Paragraph 4.01 of the Amended and Restated Guaranties established the duration of Guaranty, established the effect of Guarantor's death, and provided for fluctuations in the amount of Indebtedness, stating that

> *This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been fully performed in full. . . . This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. . . . It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. . . .*

62. The Indebtedness has never been fully and finally paid and satisfied.

63. No Guarantor has satisfied all other obligations under his or her own Limited Guaranty.

64. The Limited Guaranties executed by each Guarantor are still in effect.

**Defaults Under the Loan Agreement and Breaches of the Limited Guaranties**

65. Borrower's present obligations, and derivative obligations of the Guarantors, are set forth in the most recent Renewal Promissory Note, dated January 10, 2010 ("Operative Note").

66. The Operative Note, pursuant to numbered paragraph 3, required Borrower to "make principal and interest payments monthly commencing on February 10, 2010 and on the same day each month thereafter until the Maturity Date," which is January 10, 2015. The amount of these monthly payments was fixed at $136,020.70.

13

67. Commencing with the payment due under the Operative Note on June 10, 2010 and continuing thereafter though the date of this Complaint, Borrower has failed to make monthly principal and interest payments as required.

68. Section 8 of the Operative Note provides that Borrower's failure to make any monetary payment required by the Operative Note, as and when due, constitutes an Event of Default.

69. Section 4 of the Operative Note establishes that interest on the outstanding principal balance shall accrue and be payable at the rate of 18% per annum ("Default Rate") from and after any uncured Event of Default.

70. Section 9 of the Operative Note provides that, "Upon the occurrence of any Event of Default as hereinabove defined, the entire principal balance of this Note, together with all accrued interest and other sums due hereunder or under the Loan Documents, *shall become immediately due and payable* without notice, demand or legal process, at the option of Lender."

71. By letter dated October 20, 2011, Paul Hastings LLP, on behalf of Plaintiff, informed Borrower that Plaintiff was exercising its option to accelerate the Indebtedness and that "all obligations of Borrower under the Note and the other Loan Documents are now due and payable in full."

72. Borrower has not cured any Event of Default under the Loan Agreement, and the full balance of the Indebtedness remains in default and overdue.

73. Accordingly, Plaintiff has exercised its option to accelerate the Indebtedness.

74. As of September 14, 2012, the total outstanding principal balance under the Operative Note was $15,182,779.39, with total outstanding unpaid interest of $2,656,253.66 and

interest continuing to accrue thereon at the Default Rate. As of that date, late charges and other fees totaled $240,505.54, for a total amount due of $18,079,538.59.

75. Pursuant to the Guaranties, the Guarantors are obligated to pay the Indebtedness, up to their individual maximum liability and obligation, "at maturity (whether maturity occurs at the Maturity Date specified in the Note or by *earlier acceleration of the Note by Lender upon an Event of Default*) . . . ."

76. On October 20, 2011 and on behalf of Plaintiff, Paul Hastings LLP sent an overnight letter (the "Demand Letter") to all living Guarantors: Jason R. Flom; Herbert L. Graham; Glenn W. Johnson, III; Elliot H. Levine; Peter McKenna; James C. Stroud; Dwight P. Wiles; and Elizabeth Yates. The Demand Letter provided notification of acceleration of the Indebtedness under the Operative Note and that all obligations of Borrower were now due and payable in full.

77. That Demand Letter also included a demand upon those living Guarantors for "immediate payment in full of all principal and interest outstanding under the Note and the Loan Documents," subject to the monetary limitation established by the Limited Guaranty executed by each of the Guarantors.

78. This Demand Letter afforded the Guarantors 10 days to remit payment.

79. As of the day preceding this Complaint, no Guarantor has remitted any funds to be applied toward their obligations to Plaintiff pursuant to his or her Limited Guaranty.

80. A verified claim has been filed in the Estate of Joseph H. Flom, who executed a guaranty on the Indebtedness during his lifetime.

## IV.
## CAUSES OF ACTION

**A.     Breach of Contract – Failure of Borrower to Comply with Loan Agreement**

81.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs, as if fully restated herein.

82.     Plaintiff has fully performed its contractual obligations as set forth in the terms of the Loan Agreement.

83.     Plaintiff and its predecessor and assignor relied on and were induced to initially and continue to extend, make, renew, and modify the Indebtedness by Borrower's commitment to fulfill its obligations under the Loan Agreement, including but not limited to Borrower's promise to make principal and interest payments on the Indebtedness, when due.

84.     Borrower has failed to perform its contractual obligations under the Loan Agreement, even after receiving notice of acceleration and demand for payment.  Specifically, Borrower has failed to remit principal and interest payments due on the Indebtedness, now due and payable in full.  Borrower's default has not been cured.

85.     Borrower's failure to perform its contractual obligations, as set forth above and in the Loan Agreement, constitutes breach of contract.

86.     As a direct and proximate result of the foregoing breaches by Borrower, Plaintiff has suffered and will suffer damages in an amount in excess of the minimum jurisdictional limits of this Court and not less than the total balance of the Indebtedness, including principal and all accrued interest.

87.     All conditions precedent have been performed or have occurred.

88.     Pursuant to Paragraph 11(E) of the Operative Note, Plaintiff is entitled to recover "all filing fees, taxes and costs of collecting or securing or attempting to collect or secure any

obligations under the Note or any of the Loan Documents, including without limitation reasonable attorney's fees, whether or not any lawsuit is filed."

**B.      Breach of Contract – Failure of the Guarantors to Comply with Limited Guaranties**

89.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs, as if fully restated herein.

90.     Plaintiff has fully performed its contractual obligations as set forth in the terms of the Loan Agreement.

91.     The Guarantors have failed to perform consistent contractual obligations under their Limited Guaranties, even after receiving notice of Borrower's default, notice of acceleration of the Indebtedness, and demand for payment.  Specifically, the Guarantors have failed to remit payment for the Indebtedness, now due and payable in full, up to their maximum liability and obligation under the applicable Limited Guaranty.

92.     The Guarantors' failures to perform their contractual obligations, as set forth above and in the Limited Guaranties, constitute breaches of contract.

93.     As a direct and proximate result of the foregoing breaches by the Guarantors, Plaintiff has suffered and will suffer damages in an amount in excess of the minimum jurisdictional limits of this Court.

94.     As a result of Borrower and the Guarantors' failure to perform under the Loan Agreement and Limited Guaranties, Plaintiff has suffered actual damages in an amount not less than the individual maximum liability and obligation set forth in the Limited Guaranty applicable to each Guarantor.

95.     All conditions precedent have been performed or have occurred.

17

96. Paragraph 3.01 of the Limited Guaranties provides that Plaintiff is entitled to recover, in addition to the monetary cap established for each Guarantor, "attorneys' fees and costs reasonably incurred by Lender in the enforcement of this Guaranty.

## V.
## PRAYER

97. Accordingly, Plaintiff respectfully requests that Defendants be cited to appear, and that Plaintiff have judgment against Defendants for:

    a. As to Borrower, the total balance of the Indebtedness, including principal and all accrued interest outstanding as of the date of judgment;

    b. As to each Guarantor, the maximum liability and obligation for each Guarantor in the amount set forth in the Limited Guaranty executed by each Guarantor;

    c. Interest accruing at the Default Rate of 18% per annum, as specified in Paragraph 4 of the Operative Note;

    d. Reasonable attorneys' fees in amount not less than the total of attorneys' fees incurred to date;

    e. Costs of collection, enforcement, and suit; and

    f. Such other relief to which Plaintiff may be entitled.

Dated this 14th day of September 2012.

Respectfully submitted,

| By: /s William K Whitner | /s George R. Mead |
|---|---|
| William K Whitner | George R. Mead |
| Georgia Bar No. 756652 | Florida Bar No. 096490 |
| Eric D. Stolze | Yancey F. Langston |
| Ga. Bar No. 425966 | Florida Bar No. 827134 |
| PAUL HASTINGS LLP | MOORE, HILL & WESTMORELAND, P.A. |
| 600 Peachtree Street, N.E. | 220 West Garden Street (32502) |
| Twenty-Fourth Floor | SunTrust Tower, 9th Floor |
| Atlanta, GA  30308 | Post Office Box 13290 |
| Telephone:  (404) 815-2400 | Pensacola, FL 32591-3290 |
| Facsimile:  (404) 815-2424 | Telephone:  (850) 434-3541 |
| Email:  kwhitner@paulhastings.com | Facsimile:   (850) 435-7899 |
| | Email:  ylangston@mhw-law.com |
| and | |
| | *Attorneys for Plaintiff* |
| LEGAL_US_E # 100368888.6 | *AloStar Bank of Commerce* |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| ALOSTAR BANK OF COMMERCE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GLS FLORIDA PROPERTY 2, LLC;<br>JASON R. FLOM; HERBERT L.<br>GRAHAM; GLENN W. JOHNSON, III;<br>ELLIOT H. LEVINE; PETER MCKENNA;<br>JAMES C. STROUD; DWIGHT P. WILES;<br>ELIZABETH YATES; and EARLE YAFFA<br>and RONALD J. WEISS, as Executors of the<br>Estate of Joseph Flom;<br><br>　　　　Defendants. | CIVIL ACTION FILE<br>NO. 5:11-cv-00406-RS-GRJ |

## VERIFICATION

STATE OF GEORGIA　　　　)
COUNTY OF FULTON　　　　)

　　　　BEFORE ME, the undersigned authority, on this day personally appeared _Norbert Schmidt_, who under oath stated that he is a duly authorized representative of AloStar Bank of Commerce, on whose behalf the foregoing Verified Amended Complaint is filed, that he is legally competent to make this Verification, which is based on his personal knowledge and belief, and that the factual statements contained therein are true and correct.

　　　　And further Affiant sayeth not.

AloStar Bank of Commerce, By:
_[signature]_
Title: _Vice President_
Printed Name: _Norbert Schmidt_
Affiant

SUBSCRIBED AND SWORN TO BEFORE
ME this 14th day of September 2012.

_Stephanie Locke_
Notary Public in and for
_Cobb_ County, State of Georgia
My commission expires: _4-2-16_