IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ALOSTAR BANK OF COMMERCE,

    Plaintiff,

v.

GLS FLORIDA PROPERTY 2, LLC; JASON R. FLOM; HERBERT L. GRAHAM; GLENN W. JOHNSON, III; ELLIOT H. LEVINE; PETER MCKENNA; JAMES C. STROUD; DWIGHT P. WILES; ELIZABETH YATES; and ROGER S. AARON, EARLE YAFFA, and RONALD J. WEISS, as Executors of the Estate of Joseph Flom;

    Defendants.
_____/

CASE NO. 5:11cv406-RS-GRJ

**DEFENDANT DWIGHT P. WILES'
MEMORANDUM IN OPPOSITION TO
PLAINTIFF ALOSTAR'S MOTION TO DISMISS
<u>DEFENDANT WILES' COUNTERCLAIMS</u>**

Defendant DWIGHT P. WILES ("Wiles"), by and through undersigned counsel and pursuant to Local Rule 7.1(C), hereby submits this Responsive Memorandum and requests that this Court deny Plaintiff's Motion to Dismiss Counterclaim (Doc. 151).

***FACTUAL AND PROCEDURAL BACKGROUND***

Plaintiff AloStar Bank of Commerce ("AloStar") has filed the instant action seeking to foreclose on a mortgage with borrower GLS Florida Property 2, LLC ("GLS") and to obtain a money judgment on guaranties allegedly signed by the remaining Defendants. The original loan was entered between GLS and Bank of Bonifay, which is

1

a predecessor-in-interest to AloStar. Wiles takes the position in his Counterclaim and in the instant Memorandum that AloStar acquired and assumed all of the duties and liabilities of Bank of Bonifay vis-à-vis the Defendants, including any fiduciary duties and any liability for fraud, by virtue of the assignment admitted to exist by AloStar in its Amended Complaint.

Bank of Bonifay entered into the loan agreement with knowledge that the property at issue was worth substantially less than the purchase price. Bank of Bonifay entered into the loan agreement with further knowledge that the supposed equity contributed by GLS was nonexistent. Wiles was unaware of these facts, Bank of Bonifay knew that Wiles was not aware of these facts, and Bank of Bonifay never disclosed these facts. Further, Bank of Bonifay helped to obfuscate the facts and prevent Wiles from learning of the facts by conspiring to produce an inflated appraisal of the property.

With representations that equity did exist and that the appraisal and loan-to-value ratio were accurate, Bank of Bonifay intentionally and fraudulently induced Wiles to enter into a certain guaranty and other loan documents, which are the subject of a claim against Wiles by AloStar in the instant matter. In addition to being actionable as fraudulent concealment and fraudulent inducement, these actions by Bank of Bonifay were a breach of fiduciary duty, as Bank of Bonifay was aware and accepted the reposed trust and confidence of Wiles in Bank of Bonifay communicating and negotiating with the seller and borrower as to the transaction and as to determining the value of the property and equity.

Due to these actions, Bank of Bonifay and its successors, including AloStar, are liable for the counterclaims that have been asserted by Wiles: fraudulent concealment, fraudulent inducement, breach of fiduciary duty, and civil conspiracy.

AloStar has responded to the counterclaims by seeking dismissal based on an alleged contractual waiver. As set forth below, AloStar's motion should be dismissed for three reasons: (1) the contract presented by AloStar should not be considered by the Court at this stage of the litigation, because the contract is outside of Wiles' pleading; (2) the contractual waiver is unenforceable as it was induced by fraud; and (3) the contractual waiver does not clearly extend to the counterclaims asserted by Wiles.

**ARGUMENT**

### I. The Contract Presented by AloStar Should Not Be Considered by the Court at this Stage of the Litigation, Because the Contract is Outside of Wiles' Pleading.

In its Motion to Dismiss, AloStar argues that this Court may consider documents outside the Counterclaim when resolving the Motion to Dismiss. In support of this argument, AloStar cites two Eleventh Circuit decisions, each of which appears to allow for certain documents appended to a motion to dismiss to be considered. These cases are distinguishable from the instant matter.

First, in *Sampson v. Washington Mutual Bank*, the Court clearly limits the documents that can be considered to those that are "relationship forming contracts that are central to plaintiff's claim":

> In general, a district court should not look outside the complaint in a motion to dismiss, but it may consider documents attached to a defendant's motion if those documents are *relationship-forming contracts that are central to plaintiff's claim*. In this case, the defendants appended to

> their motion to dismiss a note, a security deed, and a deed under power, none of which [Plaintiff] disputes and all of which are central to his claims that arose out of his loan transaction with the defendants.

453 Fed. Appx. 863, 866 (11th Cir. 2011) (emphasis added). In *Sampson*, unlike in the instant matter, the documents at issue were required parts of the claims asserted. Most importantly, Sampson brought a claim for promissory estoppel, alleging that "some time *after* the loan had closed the defendants promised him that he would have the option of a short sale, but then they refused." *Id.* at 867 (emphasis added). It was here in the *Sampson* opinion, and only here, where the Court considered any documents outside the Complaint. As Sampson's claim arose out of a promise *regarding a loan agreement* that had already been entered into, the Court willingly looked to the agreement, which required any changes or releases to be in writing. Based on this language in the agreement, the Court found that Sampson could not have reasonably relied on later promises. *See id.*

On the other hand, as AloStar astutely points out in its Motion to Dismiss, the promises or representations giving rise to Wiles' Counterclaim occurred prior to the actual "modification agreement" that AloStar attempts to enter into this Court's consideration. These promises or representations are actionable misconduct separate from the subsequent loan modification evidenced by AloStar's document. As such, the document presented by AloStar is *not* central to Wiles' Counterclaim, as required by the *Sampson* case for this Court to consider it. Further, the modification agreement is not the "relationship-forming" agreement between the parties, as required by the *Sampson* case for this Court to consider it. The AloStar-Wiles relationship was formed through

prior agreements, according to AloStar's own recital of the facts in the Motion to Dismiss.

Similarly, the other case cited by AloStar did, in fact, involve the consideration of documents outside the complaint, but only because the documents were relationship-forming documents and "central to [Plaintiff's] claims." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). The relationship-forming documents were critical in that case, because those documents would have given rise to the "fiduciary" relationship that Plaintiff alleged was breached. Once again, in the instant matter, the *modification* agreement presented by AloStar did not *form* the relationship between Wiles and AloStar and, in any event, did not itself give rise and is not central to the claims by Wiles or the duties breached by AloStar or its predecessors-in-interest.

While the modification agreement presented by AloStar may very well be relevant evidence in an eventual summary judgment motion or trial, so could several other agreements, communications, and other documents. This Court should not reach outside Wiles' Counterclaim to review this document, which is not central to the claim or the relationship-forming document. *See, e.g., Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1353 (11th Cir. 2006) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.").

Even if Wiles' vague reference to certain loan documents in the Counterclaim is interpreted to include the modification agreement presented by AloStar, this reference is of no consequence. Without the document being central to the dispute, a piece of the

5

puzzle remains missing, and the Court cannot consider this document in resolving the Motion to Dismiss. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

For the foregoing reasons, the Court should not consider the exhibit attached to AloStar's Motion to Dismiss. As this document and provisions thereof are the only apparent bases presented by AloStar for dismissal, the Motion to Dismiss should therefore be denied.

II.  **The Contractual Waiver Is Unenforceable As It Was Induced by Fraud.**

Even if this Court considers the modification agreement that was appended to AloStar's Motion to Dismiss, the agreement itself is unenforceable. Or, at the least, Wiles properly alleges in his Counterclaim that the agreement is unenforceable. Wiles, in his Counterclaim, seeks to rescind his personal loan agreements executed with AloStar's predecessors-in-interest. The basis of this relief is fraudulent concealment, fraudulent inducement, and intentional breach of fiduciary duty by AloStar's predecessor in the form described in the Factual and Procedural Background section above. Specifically, the Counterclaim sets forth the following facts in support of rescinding any agreements:

> 25. As a result of the unique relationship with Gilley and GLS, and its receipt of greater economic benefit from the Bonifay Loan than from typical loan transactions, Bonifay had a fiduciary duty to both GLS and Defendant.
>
> 26. On information and belief, at the time GLS entered into the GLS Loan Bonifay knew that the Bayfront Property was worth substantially less than the purported purchase price of $25,000,000 "paid" by GLS (which price was "justified" by the Lewis Appraisal) and that the GLS investors (other than Smith and Levine), including Defendant, were not aware of

that fact. On information and belief, Bonifay did not disclose this information to Defendant or the other passive investors because it knew the GLS Loan would provide significant benefits to Bonifay and its affiliated companies as well as to one of its most important customers, Gilley and his related entities, including RGP.

27. On information and belief, Bonifay also knew or should have known that the supposed "equity" contributed by GLS to the purchase of the Holiday Lodge Property, and which purportedly justified the 75% loan to value ratio represented by the GLS Loan, was in fact non-existent. On information and belief, Bonifay did not disclose this information to Defendant or the other passive investors because it knew the GLS Loan would provide significant benefits to Bonifay and its affiliated companies as well as to one of its most important customers, Gilley and his related entities, including RGP.

28. Without disclosing its knowledge about the true value of the Bayfront Property, the absence of any real equity contributed by GLS to the purchase of the Holiday Lodge Property, or its extensive and close relationship with Gilley, Bonifay induced Defendant to enter into a personal guaranty (with subsequent renewals and modifications) in an amount that far exceeded his proportionate share of the underlying loan, and required further personal guaranties to secure a $25,000,000 loan.

Taking these allegations as true, along with other allegations in the Counterclaim and the reasonable inferences that can be drawn therefrom, Wiles has stated a claim for fraudulent concealment, fraudulent inducement, and breach of fiduciary duty by AloStar's predecessor. *See FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (holding that, at the motion to dismiss stage for failure to state a claim, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed to the light most favorable to the [claimant]"). Notably, AloStar makes no apparent argument that Wiles has failed to assert the allegations necessary

for a claim of fraudulent concealment, fraudulent inducement, or breach of fiduciary duty. Instead, AloStar limits its Motion to Dismiss argument to Wiles' claims being waived due to the modification agreement.[1]

Courts are clear that "any … contractual provision [] will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake." *Daugherty v. MAPCO Exp., Inc.*, No. 1:10-cv-2092-KOB, 2012 WL 2357732, at *14 (N.D. Ala. June 19, 2012) (quoting and adopting rationale from Restatement (2d) of Conflict of Laws § 187, cmt. b, and citing other federal district and circuit courts in accord); *see also Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 314-16 (Fla. 2000) (in answering certified question from Eleventh Circuit, holding that, under Florida law, a release of claims does *not* bar fraudulent inducement claims); *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1293-94 (S.D. Fla. 2004) (approving, adopting, and extending *Mazzoni Farms* to find that plaintiffs who had signed release could nonetheless bring fraud-based claims); *Urfirer v.*

---

[1] Wiles notes that, in AloStar's Motion to Dismiss, AloStar objects to the presentation of the Counterclaim and the difficulty in understanding the nexus between Wiles' claims and AloStar. Although AloStar does not directly argue for dismissal based on this alleged lack of clarity in the Counterclaim, if this Court is to consider AloStar's objection and deem Wiles' Counterclaim insufficient, Wiles respectfully requests leave of Court to amend the Counterclaim to clarify. As the case remains in the procedural and pleadings stage due to the recent addition of third-party claims and crossclaims by parties *other than Wiles*, such leave would not be prejudicial to AloStar or any other party or nonparty. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Taylor v. Fla. State Fair Auth.*, 875 F. Supp. 812, 814 (M.D. Fla. 1995) (approving leave and citing *Foman v. Davis*, 371 U.S. 178 (1962) for the proposition that "a court should deny leave to amend a pleading only when: (1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile"). Undersigned counsel attempted to obtain consent of AloStar's counsel for such leave to amend prior to filing the instant Memorandum but was unable to obtain such consent. If the Court is inclined to entertain this request for leave, Wiles requests that the Court direct the parties to fully brief this issue, to provide Wiles an opportunity to explain the proposed amendment and to provide AloStar an opportunity to interpose any reasons why leave to amend would not be appropriate.

*Cornfeld*, 408 F.3d 710, 723 (11th Cir. 2005) (applying New York state law to determine that a waiver of release of rights does not preclude a party from claiming fraud in the inducement of the very instrument by which the party waived his rights and that a general contractual waiver of rights is void if induced by fraud).

For the foregoing reasons, even if the Court is inclined to consider the document attached to AloStar's Motion to Dismiss, the Court should, at this stage in litigation, take all inferences in the light most favorable to Wiles, including the inference that the modification agreement's waiver provision is not enforceable. As such, AloStar's Motion to Dismiss Counterclaim should be denied.

### III. The Contractual Waiver Does Not Clearly Extend to the Counterclaims Asserted by Wiles.

Even if this Court considers the modification agreement and deems its waiver provision to bar fraud-based and other intentional tort claims, the waiver provision nonetheless does not extend to the *particular* counterclaims brought by Wiles. As the Florida Supreme Court held in *Mazzoni Farms*:

> [T]he courts' willingness to enforce general releases is not absolute. Rather, enforcement is premised upon the assumption that the released claims are those that were contemplated by the agreement.

761 So.2d at 315.

Based on the four corners of the modification agreement, there is anything but clarity as to whether the parties contemplated to release claims based on breach of fiduciary duty and fraud due to AloStar's predecessors' misrepresentations and other intentional misconduct of AloStar's predecessors. It is not clear that the claims "aris[e] out of or in connection with" the loan documents or dealings between the parties, as

required for the release, by its own terms, to apply. Instead, the claims appear to arise out of dealings between AloStar's predecessors and *other* parties and the fact that such dealings amounted to a breach of duty and fraud on Wiles. Further, Florida law on such releases has found that language that bars all claims "known or unknown," as included in the modification agreement, is vague as to whether fraud-based claims or other claims arising out of misconduct are barred, and, therefore, such claims are not subject to dismissal or even summary judgment based on the document alone. *See Floyd v. Homes Beautiful Constr. Co.*, 710 So.2d 177, 179 (Fla. 1st DCA 1998) (construing a substantially similar release of all claims "whether known or unknown," refusing to enter summary judgment, and holding that the release is unclear as to which claims are barred, including whether the release truly extends to "unknown" claims and whether the modifying language limits the release to causes of action fully accrued at the time of execution).

Based on allegations in the Counterclaim, Wiles did not learn of *or sustain any damage* from the fraud and breach of fiduciary duty until after the modification agreement was entered and until after the instant lawsuit was filed; thus, the cause of action may have not fully accrued until after agreeing to the waiver provision. *See Margolis v. Andromides*, 732 So.2d 507, 509 (Fla. 4th DCA 1999) (holding that the cause of action did not accrue until after harm had been incurred, because "[a] cause of action accrues when the last element necessary to constitute the cause of action occurs"); *State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So.2d 818, 821 (Fla. 1996) ("[A] cause of action cannot be said to have accrued … until an action may be brought."). Because Wiles did not suffer the harm of the attempted enforcement of loan

required for the release, by its own terms, to apply. Instead, the claims appear to arise out of dealings between AloStar's predecessors and *other* parties and the fact that such dealings amounted to a breach of duty and fraud on Wiles. Further, Florida law on such releases has found that language that bars all claims "known or unknown," as included in the modification agreement, is vague as to whether fraud-based claims or other claims arising out of misconduct are barred, and, therefore, such claims are not subject to dismissal or even summary judgment based on the document alone. *See Floyd v. Homes Beautiful Constr. Co.*, 710 So.2d 177, 179 (Fla. 1st DCA 1998) (construing a substantially similar release of all claims "whether known or unknown," refusing to enter summary judgment, and holding that the release is unclear as to which claims are barred, including whether the release truly extends to "unknown" claims and whether the modifying language limits the release to causes of action fully accrued at the time of execution).

Based on allegations in the Counterclaim, Wiles did not learn of *or sustain any damage* from the fraud and breach of fiduciary duty until after the modification agreement was entered and until after the instant lawsuit was filed; thus, the cause of action may have not fully accrued until after agreeing to the waiver provision. *See Margolis v. Andromides*, 732 So.2d 507, 509 (Fla. 4th DCA 1999) (holding that the cause of action did not accrue until after harm had been incurred, because "[a] cause of action accrues when the last element necessary to constitute the cause of action occurs"); *State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So.2d 818, 821 (Fla. 1996) ("[A] cause of action cannot be said to have accrued … until an action may be brought."). Because Wiles did not suffer the harm of the attempted enforcement of loan

agreements against him and AloStar's claim for a money judgment until *after* the modification agreement was executed, Wiles could not have brought his instant Counterclaim until *after* the waiver provision went into effect. The causes of action did not accrue until *after* the waiver provision went into effect. With the waiver provision applying only to claims through the date of the waiver provision, by its own terms, the waiver provision does not extend to Wiles' Counterclaim.

For the foregoing reasons, even if the Court is inclined to consider the document attached to AloStar's Motion to Dismiss, the Court should deem that document's waiver provision to not extend, or not clearly extend, to Wiles' Counterclaim. As such, AloStar's Motion to Dismiss Counterclaim should be denied.

## IV.  Conclusion

For the reasons stated and discussed above, AloStar's Motion to Dismiss Wiles' Counterclaim, based on a modification agreement that was presented only as an exhibit to the Motion to Dismiss, should be DENIED.

/s/ Ralph Schofield
**Lawrence Keefe**
Florida Bar No. 602809
**A. Benjamin Gordon**
Florida Bar No. 528617
**Ralph Schofield**
Florida Bar No. 70543
Keefe Anchors & Gordon P.A.
2113 Lewis Turner Blvd., Ste. 100
Fort Walton Beach, FL 32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email: lkeefe@kaglawfirm.com
           bgordon@kaglawfirm.com
           rschofield@kaglawfirm.com

*Attorneys for Defendant Wiles*

## CERTIFICATE OF SERVICE

I hereby certify that this motion has been filed electronically through this Court's ECF system on this 26th day of October, 2012, and a true and correct copy of the foregoing has been furnished to each party's counsel via a Notice of Electronic Filing.

/s/ Ralph Schofield
**Lawrence Keefe**
Florida Bar No. 602809
**A. Benjamin Gordon**
Florida Bar No. 528617
**Ralph Schofield**
Florida Bar No. 70543
Keefe Anchors & Gordon P.A.
2113 Lewis Turner Blvd., Ste. 100
Fort Walton Beach, FL 32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email: lkeefe@kaglawfirm.com
           bgordon@kaglawfirm.com
           rschofield@kaglawfirm.com

*Attorneys for Defendant Wiles*