## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

ALOSTAR BANK OF COMMERCE,

       Plaintiff and Counter-Defendant,

v.

GLS FLORIDA PROPERTY 2, LLC;
JASON R. FLOM; HERBERT L.
GRAHAM; GLENN W. JOHNSON, III;
ELLIOT H. LEVINE; PETER
MCKENNA; JAMES C. STROUD;
DWIGHT P. WILES; ELIZABETH
YATES; and EARLE YAFFA and
RONALD J. WEISS, as Executors of the
Estate of Joseph Flom;

       Defendants and Counter-Plaintiffs,

_____

PETER MCKENNA,

       Cross-Claim Plaintiff,

v.

JASON R. FLOM; HERBERT L.
GRAHAM; GLENN W. JOHNSON, III;
ELLIOT H. LEVINE; JAMES C.
STROUD; DWIGHT P. WILES; and
ELIZABETH YATES;

       Cross-Claim Defendants,

_____

PETER MCKENNA,

       Third-Party Plaintiff,

v.

RONALD E. GILLEY; RONNIE GILLEY
PROPERTIES, LLC; and SUNSOUTH
BANK;

       Third-Party Defendants.

CIVIL ACTION FILE
NO. 5:11-cv-00406-RS-GRJ

**ALOSTAR'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS DEFENDANT YATES'S COUNTERCLAIMS PURSUANT TO
FED. R. CIV. P. 12(B)(6) & 12(B)(1)**

Plaintiff AloStar Bank of Commerce ("AloStar"), by and through its counsel,

submits this memorandum of law in support of its motion to dismiss the counterclaims filed

by Defendant and Counter-Plaintiff Elizabeth Yates ("Yates").   In response to AloStar's

Verified Amended Complaint (Doc. 125), Yates filed her answer and Counterclaim

Complaint (the "Response") (Doc. 179).   The Response asserts three counterclaims for

damages based on alleged pre-FDIC receivership conduct of failed financial institutions, a

fourth counterclaim seeking damages for AloStar's purported breach of contract in mid-

2011, and an additional counterclaim for declaratory judgment seeking an interpretation of

her guaranty agreement—all of which remain subject to dismissal on multiple procedural

and substantive grounds.

Foremost, every counterclaim of the Response incorporates, "reasserts," and

"realleges" nearly 100 paragraphs that are "made *upon information* currently available to

Yates and *upon her belief*," making it an impermissible "shotgun" pleading that should be

dismissed under the law of the Eleventh Circuit.   Beyond this procedural shortcoming,

Yates's counterclaims are substantively defective.   The first three counterclaims Yates

asserts against AloStar are barred by failure to submit the administrative notice of claim

required by federal statute, depriving this Court of jurisdiction to hear these complaints now.

Further, a January 2009 contractual waiver forever released all but one of Yates's

counterclaims for damages, and the only alleged wrongful conduct attributable to AloStar

occurring after that waiver also is barred by the statute of frauds and loan documents' terms

requiring all modifications to be in writing.   As a result, all of Yates's counterclaims for

damages against AloStar 1) fail to state a claim upon which relief may be granted as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), 2) are barred by federal statute, or 3) are beyond the subject matter jurisdiction of this Court for failure to exhaust administrative remedies.  Yates's remaining counterclaim for declaratory judgment seeks an opinion on an issue which must be decided to adjudicate AloStar's claims, and AloStar asks this Court to decline to exercise jurisdiction over an unnecessary, repetitive cause of action.

## I.      FACTUAL BACKGROUND

In December 2005, The Bank of Bonifay ("Bonifay")—a Florida bank—loaned Defendant GLS Florida Property 2, LLC (the "Borrower")—a Florida entity— $18,750,000.00 (the "Indebtedness") to facilitate the purchase of real estate in Bay County, Florida for development into the "Marina Di Massa" condominium project.  To induce Bonifay to make the loan, several individuals (the "Guarantors") executed limited guaranty agreements promising repayment.  Although the Indebtedness originally matured in August 2006, Bonifay extended maturity to 2007.  In 2007, Bonifay again extended the maturity date to 2008; in 2008, Bonifay extended the maturity date to later in 2008; in 2009, Bonifay extended the maturity date once more to December 2009.  Prior to this maturity, however, the Indebtedness was assigned to Nexity Bank ("Nexity"), and, in January 2010, Nexity extended the maturity date to 2015.

In April 2011, Nexity failed and was closed by regulators, and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver.  Shortly thereafter, AloStar entered a purchase and assumption agreement with the FDIC and became the holder of the Indebtedness.  Earlier, Bonifay also failed and was closed by regulators on May 7, 2010, and the FDIC entered a purchase and assumption agreement with First Federal Bank of Florida

on the same date.  Borrower has defaulted on the Indebtedness, and AloStar initiated this action against the Borrower and the Guarantors.

## II.      APPLICABLE LEGAL STANDARD

A motion to dismiss should be granted under Fed. R. Civ. P. 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The role of the Court at this stage of litigation is to determine whether the complaint—or counterclaims—are legally sufficient.  *See Sherman ex rel. Sherman v. Helms*, 80 F. Supp. 2d 1365, 1368 (M.D. Ga. 2000).  Similarly, claims must be dismissed where this Court lacks subject matter jurisdiction, and a motion to dismiss under Fed. R. Civ. P. 12(b)(1) may assert either a factual attack or a facial attack to jurisdiction. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citations omitted).

## III.     DOCUMENTS THAT MAY PROPERLY BE CONSIDERED

Yates's Response asserts counterclaims against AloStar "as successor-in-interest to Bonifay and Nexity" (Doc. 179 ¶ 92) and explicitly references "loan documents" and "Loan Documents" throughout her Counterclaim Complaint (*see, e.g.*, *id.* ¶¶ 26, 37, 45, 62, 63, 74), although failing to define fully the scope of that phrase or apparent defined term.  Yates does, however, repeatedly utilize the term "Loan" (*See, e.g.*, *id.* ¶¶ 16, 21, 23, 28) and references "[t]he initial loan and all subsequent refinancing of the loan documents and guaranties" in her Counterclaim Complaint.  (*Id.* at 101).

By doing so, Yates permitted this Court, consistent with Eleventh Circuit precedent, to consider those and other key documents at the motion to dismiss stage.  *See Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 866 (11th Cir. 2011) (considering documents

appended to a motion to dismiss, including "a note, a security deed, and a deed under power"); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (allowing consideration of "relationship-forming contracts [] central to a plaintiff's claim" in ruling on a motion to dismiss).   For the Court's consideration, AloStar has attached as Exhibit A the January 27, 2009 Modification Agreement (the "2009 Modification") (ALOSTAR000345-362), a document that was executed by GLS Florida Property 2, LLC (the "Borrower"), the other individual Defendants in this action (collectively, the "Guarantors"), and one of AloStar's predecessors in interest (the "Lender") before a notary, and, as Exhibit B, the January 10, 2010 Renewal Promissory Note (the "2010 Modification") (ALOSTAR000399-405), executed by the Borrower.

**IV.    YATES'S RESPONSE IS A "SHOTGUN" PLEADING AND FAILS TO SATISFY THE PLEADING STANDARDS OF THE ELEVENTH CIRCUIT AND THE FEDERAL RULES OF CIVIL PROCEDURE**

Yates's Response, which asserts counterclaims based on fraud and similar conduct, fails to meet the pleading standard required by Fed. R. Civ. P. 9(b), as a disclaimer in a footnote precludes elevating its allegations to the level of fact:   "[a]ll allegations in this Counterclaim are made *upon information* currently available to Yates *and upon her belief*, unless expressly stated otherwise."   (Doc. 179 at 28 n.2).   Yates's counterclaims for monetary damages that are based on fraud and similar actions should be dismissed on this basis alone.   *See U.S. ex rel. Lindsey v. Easter Seals UCP N. Carolina, Inc.*, No. 1:06CV125, 2007 WL 3124664, at *4 (W.D.N.C. Oct. 25, 2007) (unpublished) ("A plaintiff must know about what he is complaining before he files [a] suit [claiming fraud]. . . .   To allow otherwise would be to encourage actions for fraud based on 'information and belief' rather than hard facts and firsthand knowledge" (citation and quotation omitted).); *Antilles*

*Trading Co., S.A. v. Scientific-Atlanta, Inc.*, 117 F.R.D. 447, 451 (N.D. Ga. 1986) (holding that "while a complaint may allege fraud on information and belief, the allegations must then be accompanied by a statement of facts upon which the belief is founded," which Yates has failed to provide.).

Providing another ground for dismissal, Yates's Response—occupying over nearly 60 pages *in toto*—contains over 200 numbered paragraphs.  (Doc. 179).  Of those, Yates pleads 84 paragraphs over more than 20 pages as background allegations, all of which—like the entirety of the Counterclaim Complaint—are stated upon "*information*" and "*belief.*" (Doc. 179 at 28 n.2; 28-50 ¶¶ 1-84).  Worse, *every counterclaim* begins with the following incorporation language that bloats each one to nearly a hundred paragraphs:

> Yates *reasserts* and *realleges*, as if fully set forth herein, *all numbered paragraphs set forth in this Counterclaim* (through its conclusion).

(*See, e.g.,* Doc. 179 ¶¶ 85, 96, 105, 110, 113).

Without any pleading of known facts, much less facts connected to the counterclaims asserted, Yates's Response constitutes an impermissible shotgun pleading, "an unacceptable form of establishing a claim for relief."  *Innocent v. Wachovia Mortg. Corp.*, No. 1:10-CV-03799-RWS, 2012 WL 602129, at *1 (N.D. Ga. Feb. 22, 2012) (unpublished) (citing *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002)).  Although "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions," *id.*, Yates's Response is worse, as even the first count incorporates *every* numbered paragraph—not just the ones that come before it.  A perfunctory review of those

background averments reveals a "quintessential 'shotgun' pleading replete with" allegations based on information and belief "and rambling legal conclusions." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008).

AloStar should not be required to respond to and defend against a pleading that fails to meet the minimum pleading standards. *Byrne v. Nezhat,* 261 F.3d 1075, 1129-34 (11th Cir. 2001) (discussing shotgun pleadings and approving remedy of dismissal when a party fails to cure the deficiency). "Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice . . . . and, in a very real sense, amounts to obstruction of justice." *Id.* at 1131 (citation and quotation omitted). Because "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996), Yates's Response should be dismissed. *Lumley v. City of Dade City*, 327 F.3d 1186, 1192 n.13 (11th Cir. 2003) ("We . . . suggest that when faced with such pleading, the district court, acting on its own initiative, require a repleader."); *Roundtree v. Countrywide Home Loans, Inc.*, 3:09-CV-189-J-32TEM, 2009 WL 5215334 (M.D. Fla. Dec. 29, 2009) ("[I]n a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient.").

## V.     YATES NEVER FILED CLAIMS WITH THE FDIC FOR THE CONDUCT BY BONIFAY OR NEXITY NOW AT ISSUE IN YATES'S COUNTERCLAIMS, WHICH IS A PREREQUISITE TO THIS COURT HAVING SUBJECT MATTER JURISDICTION

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L No. 101-73, 103 Stat. 183 (1989) (codified at various sections of 12 and 15 U.S.C.), was "enacted to enable the federal government to respond swiftly and

effectively to the declining financial condition of the nation's banks and savings institutions. The statute grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks. *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993) (citing 12 U.S.C. § 1821(d)(3)(A)). To facilitate the FDIC's role, "Congress created a claims process for the filing, consideration[,] and determination of claims against insolvent banks" "to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts." *Id.*

Under this framework, once a financial institution has failed, "subsequent claims must be presented first to the FDIC for an administrative determination on whether they should be paid." *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 445 (E.D.N.Y. 2010). Satisfaction of this administrative claims process is a "prerequisite to judicial review," and without it, no subject matter jurisdiction exists to hear the claim. *Id.* at 446. The jurisdictional bar resulting from failure to exhaust the administrative claims process of FIRREA is equally applicable to the FDIC and its successors in interest, like AloStar. *American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1265 (11th Cir. 1999) (holding that counterclaim against purchaser of failed bank's assets from the FDIC was barred for failure to exhaust administrative remedies under FIRREA).

Several provisions of a federal statutory scheme interact to result in this jurisdictional bar. When the FDIC becomes receiver, it provides notice that claims against the failed financial institution, together with proof, must be presented by a date at least 90 days from the notice. 12 U.S.C. § 1821(d)(3)(B)(i). The FDIC is permitted up to 180 days from the date of claim filing to issue a decision allowing or denying the claim. *Id.* at

§ 1821(d)(5)(A)(i).  Claims must be presented within this timeframe, and a claimant may

pursue judicial review *only* as provided by FIRREA:

> (D) ***Limitation on judicial review***. Except as otherwise
> provided in this subsection, ***no court shall have jurisdiction
> over***—
>
>> (i)   any claim or action for payment from, or any action
>>       seeking a determination of rights with respect to, the
>>       assets of any depository institution for which the
>>       Corporation has been appointed receiver, including
>>       assets which the Corporation may acquire from itself
>>       as such receiver; or
>>
>> (ii)  ***any claim relating to any act or omission of such
>>       institution*** or the Corporation as receiver.

*Id.* at § (d)(13)(D).  The provision allowing for jurisdiction "except as otherwise provided"

refers to judicial review *only after* completion of the FDIC's administrative claims process.

FIRREA allows a claimant only 60 days to initiate a lawsuit following the issuance of the

FDIC's administrative determination, and if a claimant fails to do so, "the claims shall be

deemed to be disallowed . . . such disallowance shall be final, . . . and the claimant shall

have no further rights or remedies with respect to such claim."  *Id.* at § 1821(d)(6)(B).

Potential claimants failing even to initiate the FDIC's administrative process within

applicable deadlines will have their claims "disallowed and such disallowance shall be

final." *Id.* at § 1821(d)(5)(C)(i).

Notably absent from Yates's Response is any mention of FIRREA's claims process

or exhaustion of administrative remedies—an unsatisfied condition precedent to the

existence of subject matter jurisdiction to hear the claims she now asserts.  Yates's first three

counterclaims for monetary damages are based exclusively on the "act[s] or omission[s]," 12

U.S.C. § 1821(d)(13)(D), of two failed financial institutions, Bonifay and Nexity.  The

repetitive allegations contained in these counterclaims exclude AloStar's independent conduct from being a basis for the cause of action:

> Plaintiff, as successor-in-interest to Bonifay and Nexity, is also a *direct beneficiary of* [various types of wrongful conduct alleged]*, and they are attributable and imputable* to Plaintiff.

> Plaintiff, pursuant to Article 2.1 (n) of its Purchase and Assumption Agreement with the FDIC, *assumed the liabilities of Bonifay and Nexity to Yates and is liable* for [various types of wrongful conduct alleged].

> The guaranty created fiduciary duties *on the part of Bonifay* to Yates . . . .

> As set forth herein, *Bonifay breached* those duties . . . .

> *Bonifay had a duty* to disclose those facts to Yates and did not.

> *Bonifay's non-disclosures and/or misrepresentations* caused damage to Yates and constitute fraud as to Yates.

> *Bonifay engaged in conduct* that is grossly negligent, reprehensible, and well beyond the norms of appropriate societal behavior.

(Doc. 179 ¶¶ 87-88, 91-92, 98, 100, 102-03, 106-08 (emphasis added)).  As stated in a notice by the FDIC, claims against Bonifay were due on or before August 10, 2010.  FDIC, *Failed Bank Information: Information for The Bank of Bonifay, Bonifay, FL*, available at: http://www.fdic.gov/bank/individual/failed/bonifay.html).  Similarly, the FDIC required all claims against Nexity to be filed on or before July 20, 2011.  FDIC, *Failed Bank Information: Information for Nexity Bank, Birmingham, AL*, available at: http://www.fdic.gov/bank/individual/failed/nexity.html).

The time period for submitting claims to the FDIC for both Bonifay and Nexity has expired, and Yates's counterclaims include no allegation that she submitted a claim to the

FDIC or that the FDIC denied that claim at least in part.[1]  Yates's causes of action against Bonifay and Nexity were extinguished through FDIC receivership and inaction during FIRREA's administrative claims period, resulting in the divestment of subject matter jurisdiction from any court.

Yates improperly attempts to circumvent FIRREA's administrative exhaustion requirement by filing suit directly against AloStar.  Previous attempts to do so by other inattentive claimants have been rejected.  *See Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 447 (2010) ("[P]laintiffs cannot evade FIRREA's mandatory exhaustion requirement simply by asserting claims against . . . third-party purchasers of the failed bank's assets . . . .").  Yates's repeated reference to Article 2.1(n) of AloStar's Purchase and Assumption Agreement with the FDIC is irrelevant to the operation of FIRREA.  Even assuming, *arguendo*, that the liability of Yates's counterclaims transferred to AloStar by operation of this *contract* provision,

> the issues of ***whether*** the ***successor bank*** contractually ***assumed its predecessor's liabilities or*** whether the ***FDIC was still acting as receiver*** have ***no legal relevance*** . . . .

*Stearns Bank, N.A. v. Burnes-Leverenz*, No. A11-1868, 2012 Minn. App. Unpub. LEXIS 668, at *14-*16 (Minn. Ct. App. July 23, 2012) (unpublished) ("[A]gree[ing] with majority of federal courts that have examined this issue . . . ."); s*ee also Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1214 (9th Cir. 2012) ("FIRREA's jurisdictional bar applies to

---

[1] Even assuming, *arguendo*, that Yates filed a claim against Nexity on the last day of the claims period and that the FDIC waited the maximum period of 180 days before issuing a decision, Yates's last day to seek judicial review would have been ***March 16, 2012***, and the deadline for claims against Bonifay would have expired nearly a year earlier.  In contrast, Yates's counterclaims first were raised in this action via her ***October 31, 2012*** answer and counterclaim.  (Doc. 179).

claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution."); *Grady v. Bank of Elmwood*, No. CV11-2060, 2012 U.S. Dist. LEXIS 111429, at *6-*15 (D. Ariz. Aug. 6, 2012) (unpublished) (evaluating applicability of FIRREA before reaching question of liabilities assigned by purchase and assumption agreement).  Regardless of the contents of the Purchase and Assumption Agreement, Yates's first three counterclaims for monetary damages against AloStar are barred—and this Court does not have jurisdiction to hear them—by operation of federal law.

## VI.    THE 2009 MODIFICATION: WAIVER OF CLAIMS

Looking past FIRREA, the contents of the loan documents provide additional grounds for dismissing the majority of Yates's counterclaims.  The 2009 Modification was executed at the request of the Borrower and the Guarantors, in part, to obtain *yet another* extension of the maturity date of the Indebtedness, and the Lender agreed to that extension "pursuant to the terms, conditions and additional requirements" set forth in that agreement. (Exhibit A at 1-2).  Pertinent to this Motion, Section 12 of the 2009 Modification contains an explicit waiver of all claims the Borrower or the Guarantors could have asserted against the Lender and related parties as of that time:

> 12. <u>Waiver of Claims</u>. As additional consideration for Lender entering into this Agreement, Borrower and Guarantors ***unconditionally and irrevocably forever release and forever discharge Lender*** and its agents, servants, employees, directors, officers, attorneys, branches, affiliates, subsidiaries, ***successors and assigns*** and all persons, firms corporations, and organizations acting on Lender's behalf (collectively the "Lender Related Parties") ***of and from all damage***, loss, claims, demands, liabilities obligations, actions; and causes of action, suits, debts, costs, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses and liabilities whatsoever, ***known or unknown, at law or in***

> **equity, which Borrower or Guarantors may now have or
> claim to have** against Lender or the Lender Related Parties or
> any of them, **from the beginning of the world to the date
> hereof** arising out of or in connection with, or relating in any
> manner to the Loan, the Note, the Loan Documents,
> Guaranties, Mortgage or this Agreement, or that may arise as a
> consequence of the dealings between the parties **up to and
> including the date hereof**.  This Agreement and covenant on
> the part of Borrower and Guarantors is contractual, and **not a
> mere recital.**

(Exhibit A at 5 (emphasis added)).

The clear and unambiguous terms of the 2009 Modification operate as a bar to any claim by Yates, the Borrower, or any other Guarantor based on events occurring prior to January 27, 2009, and such clauses are valid and enforceable under Florida law.  *See Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1419 (M.D. Fla.1989) ("A person may waive any legally entitled rights, including rights guaranteed by the Constitution, conferred by statute or secured by contract. . . .  If the waiver is clear and unambiguous it shall be given intended force and effect.").  In *Scarborough Assocs. v. Fin. Fed. Savings & Loan Ass'n*, the guarantors executed an analogous modification agreement on March 21, 1991, which stated:

> Indebtedness.  Mortgagor and Guarantors acknowledge and
> confirm that . . . Mortgagor *is presently indebted* to the
> Mortgagee by virtue of said Notes in the principal sum of
> $4,816,630.42, plus accrued interest from the date last paid, all
> of *which is free and clear of any defense, setoff or
> counterclaim.*

647 So. 2d 1001, 1002 (Fla. Dist. Ct. App. 1994).  The court held that that the modification agreement "clearly waived all such defenses or counterclaims through and including March 21, 1991" and that allowing waived claims to go forward "would frustrate the explicit terms of the Modification Agreement."  *Id.* at 1003-04.

Yates's counterclaims include five total counts:  the first four seek damages, and the last one requests declaratory judgment.[2]  Of the four total counterclaims for damages, all but one—a breach of contract counterclaim based on an unwritten 2011 modification agreement—involve exclusively events and conduct occurring prior to January 27, 2009. (Doc. 179 at 28-58).  The allegations of Yates's counterclaims state that "[t]he purchase of the Property was funded in late **December 2005**.  In the **two-year period that followed**, the reckless lending at Bonifay [which serves as the basis for Yates's counterclaims] became apparent to the state and federal agencies charged with oversight of Bonifay."  (Doc. 179 ¶ 53 (emphasis added)).

Yates's counterclaims effectively plead that the basis for the claims against Bonifay—now asserted against AloStar—had accrued well before the 2009 Modification. (*See, e.g.* Doc. 179 ¶ 88 (reciting events allegedly occurring in **2005** as basis for breach of fiduciary duty counterclaim); ¶ 97 (referencing events "material to Yates" with respect to her decision "to sign the loan documents and any guaranties relating to" the **2005** Loan as basis for fraud counterclaim); ¶ 106 (necessarily including **2005** conduct by Bonifay as basis for punitive damages counterclaim).  In fact, Yates alleges that "[t]he fraud and/or negligence that **had taken place** with respect to the Loan, the Property, and Yates **was or should have been apparent** to Bonifay, and, pursuant to the **[June 11,] 2008** Cease and Desist Order, should have been well documented in Bonifay's files" existing at that time. (*Id.* ¶ 59 (emphasis added)).  As pled, the alleged wrongs had occurred surrounding the *initial* financing in 2005, years prior to the waiver in the 2009 Modification.  (*See, e.g., id.*

---

[2] The declaratory judgment claims are addressed in Part VIII.

¶¶ 90, 101 ("*[A]ll subsequent refinancing[s]* of the loan documents and guaranties are *tainted by the foregoing* . . . .").

Because all of Yates's counterclaims for damages, with the exception of the 2011 breach of contract claim, are based on conduct occurring *prior* to the 2009 Amendment and that amendment contains a valid waiver extinguishing those claims, these counts of the counterclaims are subject to dismissal for failure to state a claim. *See Bank of Ozarks v. 400 S. Land Co., LLC*, No. 2:11-CV-00129-RWS, 2012 WL 3704807, at *5 (N.D. Ga. Aug. 27, 2012) (unpublished) (granting motion to dismiss on defendants' counterclaim where guaranty agreements waived "any and all . . . claims . . . pertaining to Indebtedness . . .")

## VII.   THE 2010 MODIFICATION: WRITTEN MODIFICATION REQUIREMENT AND FLORIDA'S STATUTE OF FRAUDS

The remaining counterclaim for damages, which contends that *AloStar*'s conduct *in 2011* gives rise to a cause of action, also is subject to dismissal.  Specifically, Yates alleges that around July 2011, "negotiations took place" during which "[s]pecific terms for a restructuring of the Loan were eventually agreed to."  (Doc. 179 ¶¶ 77-78).   Other allegations reveal that the purported "agreement" never was reduced to an executed agreement but was, instead, "*memorialized* in electronic communications and writings." (*Id.* ¶ 78 (emphasis added)).   While this argument may escape application of the 2009 Modification's waiver, this counterclaim also should be dismissed for failure to state a claim due to 1) the terms of other loan documents expressly prohibiting modification without a writing signed by the Lender and 2) Florida's statute of frauds.

The 2010 Modification contains clear language mandating that any further modification was required to be in writing:

> no waiver of any kind nor any modification of this Note shall
> be valid ***unless in writing and signed by Lender.***

(Exhibit B at 5 (emphasis added)).  Accepting all facts alleged in Yates's counterclaim as true, the purported modification agreement in July 2011 is inadequate to alter the terms of the 2010 Modification.  While Florida law holds that "written contracts can be modified by subsequent oral agreement of the parties, even though the written contract purports to prohibit such modification," *Pan Am. Eng'g Co. v. Poncho's Constr. Co.*, 387 So. 2d 1052, 1053 (Fla. Dist. Ct. App. 1980), "[s]uch modification, however, is only allowed when it has been ***accepted and acted upon in such a manner that refusing to enforce it would constitute fraud upon either party" and* "the parties agreed to waive the requirement" of written modification.  *WSOS-FM, Inc. v. Hadden*, 951 So. 2d 61, 63-64 (Fla. Dist. Ct. App. 2007) (emphasis added).  Yates's counterclaim fails to allege any agreement in July 2011 to dispense with the written modification requirement of the 2010 Modification and do not present any allegations that the purported agreement was "acted upon" or that refusing to enforce it "would constitute fraud."  Accordingly, Yates fails to state a claim as a matter of law.

Further, the purported terms of the alleged "agreement" demonstrate a violation of Florida's statute of frauds, which states that

> No action shall be brought . . . upon any agreement that is not
> to be performed within the space of 1 year from the making
> thereof . . . . unless the agreement or promise upon which such
> action shall be brought, or some note or memorandum thereof
> shall be in writing and signed by the party to be charged
> therewith or by some other person by her or him thereunto
> lawfully authorized.

Fla. Stat. § 725.01; *see Hesston Corp. v. Roche*, 599 So. 2d 148 (Fla. Dist. Ct. App. 1992) ("Only if a contract could not possibly be performed within one year would it fall within the statute."). On their face, the terms of the purported July 2011 modification could not have been performed within one year, as it allegedly required AloStar to abide by the Loan Documents for "an additional ***period of two (2) years*** (i.e., until July 2013)," accept a "balloon payment for remaining obligations being due and owing ***in July 2013***," and "accept payments of interest, alone, ***during the two (2) year period between July 2011 and July 2013***." (Doc. 179 ¶ 81 (emphasis added)). Multiple terms of this purported agreement *required* AloStar to accept performance more than one year from the date this understanding allegedly was reached, meaning that Florida's statute of frauds extinguishes this claim.

Because the factual allegations of Yates's counterclaim fail to state a claim as a matter of law, both as a product of the written terms of the 2010 Modification and Florida's statue of frauds, dismissal of Count IV is appropriate.

## VIII.   YATES'S COUNTERCLAIM FOR DECLARATORY JUDGMENT

Yates's final counterclaim seeks a declaratory judgment that "her maximum liability" under her guaranty agreement "is capped commensurate with and proportionate to her respective contributive ownership interest in [FL Florida Property 3, LLC]." (Doc. 179 ¶ 116). Yates's guaranty agreement and her maximum exposure under its terms are central to AloStar's claim against Yates, and resolution of this disputed issue is necessary to determination of the proper amount of a judgment against Yates. The Declaratory Judgment Act only grants this Court discretion that *may* be exercised to make a declaration of rights; "it does not impose a duty to do so." *Americas Variable Life Ins. Co v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). Yates's counterclaim for declaratory judgment presents no

argument and requests no relief that could not be resolved by this Court at a later time through standard motions practice, and AloStar respectfully requests that this Court decline jurisdiction over a purely duplicative claim for relief in this already complex action.

## IX.   <u>CONCLUSION</u>

Yates's counterclaims are subject to immediate dismissal.  The allegations of the response are made only upon "information" and "belief" and fail to meet the standards of the Federal Rules of Civil Procedure.  Because the counterclaims in Yates's Response balloon by incorporating nearly a hundred paragraphs of vague averments and meaningless legal conclusions, this impermissible "shotgun" pleading under Eleventh Circuit precedent should be dismissed.   Ignoring these procedural shortcomings, Yates's failure to pursue an administrative claim with the FDIC results in her first three counterclaims for damages being barred under FIRREA and depriving this Court of subject matter jurisdiction. Notwithstanding this fatal defect, a waiver in the 2009 Modification forever released and discharged AloStar from all but one of the counterclaims for damages Yates now attempts to assert.  As for the fourth counterclaim for damages based on an alleged agreement in 2011, Florida's statue of frauds and Florida law enforcing contractual provisions requiring written modification result in this breach of contract counterclaim failing as a matter of law. Finally, Yates's declaratory judgment counterclaim merely duplicates an argument that must be resolved to adjudicate AloStar's already pending claims against Yates.   AloStar, therefore, requests that this court decline to entertain Yates's declaratory judgment action in its sound discretion.

For the reasons set forth above, Yates's counterclaims are subject to dismissal in their entirety.

Dated this 26th day of November 2012.

Respectfully submitted,

s/ Eric D. Stolze
William K Whitner
Georgia Bar No. 756652
Eric D. Stolze
Georgia Bar No. 425966
PAUL HASTINGS LLP
1170 Peachtree Street, N.E.
Suite 100
Atlanta, GA 30309
Telephone:       (404) 815-2400
Facsimile:       (404) 815-2424
Email:  kwhitner@paulhastings.com
Email:  ericstolze@paulhastings.com


George R. Mead
Florida Bar No. 096490
Yancey F. Langston
Florida Bar No. 827134
MOORE, HILL & WESTMORELAND, P.A.
220 West Garden Street (32502)
SunTrust Tower, 9th Floor
Post Office Box 13290
Pensacola, FL 32591-3290
Telephone:       (850) 434-3541
Facsimile:       (850) 435-7899
Email:  emead@mhw-law.com
Email:  ylangston@mhw-law.com
*Attorneys for Plaintiff - AloStar Bank*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

| | |
|---|---|
| **ALOSTAR BANK OF COMMERCE,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION FILE** |
| | **NO. 5:11-cv-00406-RS-GRJ** |
| **GLS FLORIDA PROPERTY 2, LLC; JASON R. FLOM; HERBERT L. GRAHAM; GLENN W. JOHNSON, III; ELLIOT H. LEVINE; PETER MCKENNA; JAMES C. STROUD; DWIGHT P. WILES; ELIZABETH YATES; and EARLE YAFFA and RONALD J. WEISS, as Executors of the Estate of Joseph Flom;** | |
| **Defendants.** | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed on November 26, 2012 with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel for the parties registered on the CM/ECF system.

Respectfully submitted,

By: s/ Eric D. Stolze
    William K Whitner
    Georgia Bar No. 756652
    Eric D. Stolze
    Georgia Bar No. 425966
    PAUL HASTINGS LLP
    1170 Peachtree Street, N.E.
    Suite 100
    Atlanta, GA 30309
    Telephone:    (404) 815-2400
    Facsimile:    (404) 815-2424
    Email:  kwhitner@paulhastings.com
    Email:  ericstolze@paulhastings.com

George R. Mead
Florida Bar No. 096490
Yancey F. Langston
Florida Bar No. 827134
MOORE, HILL & WESTMORELAND, P.A.
220 West Garden Street (32502)
SunTrust Tower, 9th Floor
Post Office Box 13290
Pensacola, FL 32591-3290
Telephone:      (850) 434-3541
Facsimile:      (850) 435-7899
Email:  emead@mhw-law.com

*Attorneys for Plaintiff*
*AloStar Bank of Commerce*

LEGAL_US_E # 101420600.1