## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

ALOSTAR BANK OF COMMERCE,

      Plaintiff and Counter-Defendant,

v.

GLS FLORIDA PROPERTY 2, LLC;
JASON R. FLOM; HERBERT L.
GRAHAM; GLENN W. JOHNSON, III;
ELLIOT H. LEVINE; PETER
MCKENNA; JAMES C. STROUD;
DWIGHT P. WILES; ELIZABETH
YATES; and EARLE YAFFA and
RONALD J. WEISS, as Executors of the
Estate of Joseph Flom;

      Defendants and Counter-Plaintiffs,

_____

PETER MCKENNA,

      Cross-Claim Plaintiff,

v.

JASON R. FLOM; HERBERT L.
GRAHAM; GLENN W. JOHNSON, III;
ELLIOT H. LEVINE; JAMES C.
STROUD; DWIGHT P. WILES; and
ELIZABETH YATES;

      Cross-Claim Defendants,

_____

PETER MCKENNA,

      Third-Party Plaintiff,

v.

RONALD E. GILLEY; RONNIE GILLEY
PROPERTIES, LLC; and SUNSOUTH
BANK;

      Third-Party Defendants.

CIVIL ACTION FILE
NO. 5:11-cv-00406-RS-GRJ

**ALOSTAR'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS DEFENDANT JASON R. FLOM'S COUNTERCLAIMS PURSUANT TO
FED. R. CIV. P. 12(B)(6) & 12(B)(1)**

Plaintiff AloStar Bank of Commerce ("AloStar"), by and through its counsel,
submits this memorandum of law in support of its motion to dismiss the counterclaims filed
by Defendant and Counter-Plaintiff Jason R. Flom ("Flom").  In response to AloStar's
Verified Amended Complaint (Doc. 125), Flom filed his answer and Counterclaim
Complaint (the "Response") (Doc. 177).  The Response asserts two counterclaims for
damages based on alleged pre-FDIC receivership conduct of failed financial institutions, a
third counterclaim for damages to recoup money "mistakenly paid" to a failed financial
institution, and a fourth counterclaim requesting that this Court order an accounting with
respect to the loan underlying this dispute—all of which are subject to dismissal on multiple
procedural and substantive grounds.

Foremost, every counterclaim of the Response "incorporate[s] as if fully set forth
herein" the several dozen paragraphs before it, making it an impermissible "shotgun"
pleading that should be dismissed under the law of the Eleventh Circuit.  Beyond this
procedural shortcoming, Flom's counterclaims are substantively defective.  The first three
counterclaims for monetary damages Flom asserts against AloStar are barred by failure to
submit the administrative notice of claim required by federal statute, depriving this Court of
jurisdiction to hear these complaints now.  Further, a January 2009 contractual waiver
forever released Flom's first two counterclaims for damages, as the only alleged wrongful
conduct attributable to AloStar occurred years prior to the date of this waiver.  Flom's final
counterclaim for accounting is inadequately pled under Florida law and must be dismissed.
As a result, all of Flom's counterclaims against AloStar 1) fail to state a claim upon which

relief may be granted as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), 2) are barred by federal statute, or 3) are beyond the subject matter jurisdiction of this Court for failure to exhaust administrative remedies.

## I.    <u>FACTUAL BACKGROUND</u>

In December 2005, The Bank of Bonifay ("Bonifay")—a Florida bank—loaned Defendant GLS Florida Property 2, LLC (the "Borrower")—a Florida entity— $18,750,000.00 (the "Indebtedness") to facilitate the purchase of real estate in Bay County, Florida for development into the "Marina Di Massa" condominium project.  To induce Bonifay to make the loan, several individuals (the "Guarantors") executed limited guaranty agreements promising repayment.  Although the Indebtedness originally matured in August 2006, Bonifay extended maturity to 2007.  In 2007, Bonifay again extended the maturity date to 2008; in 2008, Bonifay extended the maturity date to later in 2008; in 2009, Bonifay extended the maturity date once more to December 2009.  Prior to this maturity, however, the Indebtedness was assigned to Nexity Bank ("Nexity"), and, in January 2010, Nexity extended the maturity date to 2015.

In April 2011, Nexity failed and was closed by regulators, and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver.  Shortly thereafter, AloStar entered a purchase and assumption agreement with the FDIC and became the holder of the Indebtedness.  Earlier, Bonifay also failed and was closed by regulators on May 7, 2010, and the FDIC entered a purchase and assumption agreement with First Federal Bank of Florida on the same date.  Borrower has defaulted on the Indebtedness, and AloStar initiated this action against the Borrower and the Guarantors.

## II.   APPLICABLE LEGAL STANDARD

A motion to dismiss should be granted under Fed. R. Civ. P. 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The role of the Court at this stage of litigation is to determine whether the complaint—or counterclaims—are legally sufficient.  *See Sherman ex rel. Sherman v. Helms*, 80 F. Supp. 2d 1365, 1368 (M.D. Ga. 2000).  Similarly, claims must be dismissed where this Court lacks subject matter jurisdiction, and a motion to dismiss under Fed. R. Civ. P. 12(b)(1) may assert either a factual attack or a facial attack to jurisdiction. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citations omitted).

## III.   DOCUMENTS THAT MAY PROPERLY BE CONSIDERED

Flom's Response asserts counterclaims against "AloStar as the alleged successor in interest" to Bonifay and Nexity (Doc. 177 ¶¶ 41, 46, and 48).  The extensions, renewals, and guarantees remain central to Flom's counterclaims against AloStar, as the Response explicitly references "all of the following **amendments and restatements of the Loan and this Defendant's guaranty/guaranties**" (*id.* ¶¶ 30, 40).

By doing so, Flom permitted this Court, consistent with Eleventh Circuit precedent, to consider those and other key documents at the motion to dismiss stage.  *See Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 866 (11th Cir. 2011) (considering documents appended to a motion to dismiss, including "a note, a security deed, and a deed under power"); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (allowing consideration of "relationship-forming contracts [] central to a plaintiff's claim" in ruling on a motion to dismiss).  For the Court's consideration, AloStar has

3

attached as Exhibit A the January 27, 2009 Modification Agreement (the "2009 Modification") (ALOSTAR000345-362), a document that was executed by GLS Florida Property 2, LLC (the "Borrower"), the other individual Defendants in this action (collectively, the "Guarantors"), and one of AloStar's predecessors in interest (the "Lender") before a notary, and, as Exhibit B, the January 2009 Amended and Restated Guaranty Agreement executed by Flom (ALOSTAR000135-143).

IV.    **FLOM'S RESPONSE IS A "SHOTGUN" PLEADING AND FAILS TO SATISFY THE PLEADING STANDARDS OF THE ELEVENTH CIRCUIT AND THE FEDERAL RULES OF CIVIL PROCEDURE**

Flom's Response, which asserts counterclaims based on fraud and similar conduct, fails to meet the pleading standard required by Fed. R. Civ. P. 9(b), as a disclaimer in a footnote precludes elevating its allegations to the level of fact:  "***All allegations*** contained in Defendant's counterclaims ***are stated upon information and belief*** and are alleged 'at all relevant times' unless specifically stated otherwise."   (Doc. 177 at 6 n.1).   Flom's counterclaims for monetary damages that are based on fraud and related actions should be dismissed on this basis alone.  *See U.S. ex rel. Lindsey v. Easter Seals UCP N. Carolina, Inc.*, No. 1:06CV125, 2007 WL 3124664, at *4 (W.D.N.C. Oct. 25, 2007) (unpublished) ("A plaintiff must know about what he is complaining before he files [a] suit [claiming fraud]. . . .   To allow otherwise would be to encourage actions for fraud based on 'information and belief' rather than hard facts and firsthand knowledge" (citation and quotation omitted).); *Antilles Trading Co., S.A. v. Scientific-Atlanta, Inc.*, 117 F.R.D. 447, 451 (N.D. Ga. 1986) (holding that "while a complaint may allege fraud on information and belief, the allegations must then be accompanied by a statement of facts upon which the belief is founded," which Flom has failed to provide.).

Providing another ground for dismissal, Flom's Counterclaim Complaint occupies a meager 6 pages and less than 50 numbered paragraphs.  (Doc. 177).  Of those, a section dubbed "Factual Allegations" spans less than two pages and less than two dozen paragraphs, all of which—like the entirety of the Counterclaim Compliant—are "stated upon *information and belief* and are stated to be '*at all relevant times* and the present' unless specifically stated otherwise."  (Doc. 177 at 6 n.1; 6-11 ¶¶ 1-49).  Worse, *every counterclaim* begins with the following incorporation language that bloats each one to many more pages without adding the substance necessary to adequately plead a claim for relief:

> The allegations set forth in paragraphs 1-[the last paragraph of the previous count] of this Counterclaim are incorporated as if fully set forth herein.

(*See, e.g.,* Doc. 177 ¶¶ 26, 33, 42, 47).

Without any pleading of known facts, much less facts connected to the counterclaims asserted, Flom's Response constitutes an impermissible shotgun pleading, "an unacceptable form of establishing a claim for relief."  *Innocent v. Wachovia Mortg. Corp.*, No. 1:10-CV-03799-RWS, 2012 WL 602129, at *1 (N.D. Ga. Feb. 22, 2012) (unpublished) (citing *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002)).  Flom's counterclaims contain only legal conclusions, vaguely reference "material facts" and "Bonifay's misrepresentations" (Doc. 177 ¶¶ 36, 38), and pattern allegations after "[t]he typical shotgun complaint [that] contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions," *id.*  A perfunctory review of those "Factual Allegations" reveals a "quintessential 'shotgun' pleading replete with" allegations based on information and belief

"and rambling legal conclusions." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008).

AloStar should not be required to respond to and defend against a pleading that fails to meet the minimum pleading standards. *Byrne v. Nezhat,* 261 F.3d 1075, 1129-34 (11th Cir. 2001) (discussing shotgun pleadings and approving remedy of dismissal when a party fails to cure the deficiency).   "Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice . . . . and, in a very real sense, amounts to obstruction of justice." *Id.* at 1131 (citation and quotation omitted).  Because "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996), Flom's Response should be dismissed. *Lumley v. City of Dade City*, 327 F.3d 1186, 1192 n.13 (11th Cir. 2003) ("We . . . suggest that when faced with such pleading, the district court, acting on its own initiative, require a repleader."); *Roundtree v. Countrywide Home Loans, Inc.*, 3:09-CV-189-J-32TEM, 2009 WL 5215334 (M.D. Fla. Dec. 29, 2009) ("[I]n a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient.").

## V.     FLOM NEVER FILED CLAIMS WITH THE FDIC FOR THE CONDUCT BY BONIFAY OR NEXITY NOW AT ISSUE IN FLOM'S COUNTERCLAIMS, WHICH IS A PREREQUISITE TO THIS COURT HAVING SUBJECT MATTER JURISDICTION

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L No. 101-73, 103 Stat. 183 (1989) (codified at various sections of 12 and 15 U.S.C.), was "enacted to enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions.

The statute grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks. *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993) (citing 12 U.S.C. § 1821(d)(3)(A)). To facilitate the FDIC's role, "Congress created a claims process for the filing, consideration[,] and determination of claims against insolvent banks" "to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts." *Id.*

Under this framework, once a financial institution has failed, "subsequent claims must be presented first to the FDIC for an administrative determination on whether they should be paid." *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 445 (E.D.N.Y. 2010). Satisfaction of this administrative claims process is a "prerequisite to judicial review," and without it, no subject matter jurisdiction exists to hear the claim. *Id.* at 446. The jurisdictional bar resulting from failure to exhaust the administrative claims process of FIRREA is equally applicable to the FDIC and its successors in interest, like AloStar. *American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1265 (11th Cir. 1999) (holding that counterclaim against purchaser of failed bank's assets from the FDIC was barred for failure to exhaust administrative remedies under FIRREA).

Several provisions of a federal statutory scheme interact to result in this jurisdictional bar. When the FDIC becomes receiver, it provides notice that claims against the failed financial institution, together with proof, must be presented by a date at least 90 days from the notice. 12 U.S.C. § 1821(d)(3)(B)(i). The FDIC is permitted up to 180 days from the date of claim filing to issue a decision allowing or denying the claim. *Id.* at § 1821(d)(5)(A)(i). Claims must be presented within this timeframe, and a claimant may pursue judicial review *only* as provided by FIRREA:

    (D) ***Limitation on judicial review***. Except as otherwise provided in this subsection, ***no court shall have jurisdiction over***—

        (i)    any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

        (ii)   ***any claim relating to any act or omission of such institution*** or the Corporation as receiver.

*Id.* at § (d)(13)(D). The provision allowing for jurisdiction "except as otherwise provided" refers to judicial review *only after* completion of the FDIC's administrative claims process. FIRREA allows a claimant only 60 days to initiate a lawsuit following the issuance of the FDIC's administrative determination, and if a claimant fails to do so, "the claims shall be deemed to be disallowed . . . such disallowance shall be final, . . . and the claimant shall have no further rights or remedies with respect to such claim." *Id.* at § 1821(d)(6)(B). Potential claimants failing even to initiate the FDIC's administrative process within applicable deadlines will have their claims "disallowed and such disallowance shall be final." *Id.* at § 1821(d)(5)(C)(i).

    Notably absent from Flom's Response is any mention of FIRREA's claims process or exhaustion of administrative remedies—an unsatisfied condition precedent to the existence of subject matter jurisdiction to hear many of the claims he now asserts. Flom's first three counterclaims for monetary damages are based exclusively on the "act[s] or omission[s]," 12 U.S.C. § 1821(d)(13)(D), of two failed financial institutions, Bonifay and Nexity. The repetitive allegations contained in these counterclaims exclude AloStar's independent conduct from being a basis for the cause of action:

The purchase of the Property by GLS *was funded by a loan from Bonifay* (the "Loan") in the principal amount of $18,750,000.

*Bonifay* obtained an appraisal of the Property on September 7, 2005 (the "2005 Appraisal").

*Bonifay had a duty to this Defendant* to disclose material information about the Loan, the Property, and the transaction at issue.

*Bonifay breached* its duty by . . . .

*Bonifay induced* this Defendant to sign a personal guaranty for a portion of the Loan.

*Bonifay's breaches of fiduciary duty tainted* all of the following amendments and restatements of the Loan and this Defendant's guaranty/guaranties.

*Bonifay* negligently and/or intentionally failed to disclose material facts to this Defendant.

*Bonifay's* misrepresentations are attributable to AloStar as the alleged successor in interest.

(Doc. 177, ¶¶ 10-11, 15-18, 30, 41 (emphasis added)).  As stated in a notice by the FDIC, claims against Bonifay were due on or before August 10, 2010.   FDIC, *Failed Bank Information:  Information for The Bank of Bonifay, Bonifay, FL*, available at: http://www.fdic.gov/bank/individual/failed/bonifay.html).  Similarly, the FDIC required all claims against Nexity to be filed on or before July 20, 2011.   FDIC, *Failed Bank Information:   Information for Nexity Bank, Birmingham, AL*, available at: http://www.fdic.gov/bank/individual/failed/nexity.html).

The time period for submitting claims to the FDIC for both Bonifay and Nexity has expired, and Flom's counterclaims include no allegation that he submitted a claim to the

9

FDIC or that the FDIC denied that claim at least in part.[1]  Flom's causes of action against Bonifay and Nexity were extinguished through FDIC receivership and inaction during FIRREA's administrative claims period, resulting in the divestment of subject matter jurisdiction from any court.

Flom improperly attempts to circumvent FIRREA's administrative exhaustion requirement by filing suit directly against AloStar.  Previous attempts to do so by other inattentive claimants have been rejected.  *See Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 447 (2010) ("[P]laintiffs cannot evade FIRREA's mandatory exhaustion requirement simply by asserting claims against . . . third-party purchasers of the failed bank's assets . . . .").  Even assuming, *arguendo*, that the liability of Flom's counterclaims transferred to AloStar by operation of a *contract* provision of AloStar's Purchase and Assumption Agreement with the FDIC,

> the issues of **whether** the **successor bank** contractually **assumed its predecessor's liabilities or** whether the **FDIC was still acting as receiver** have **no legal relevance** . . . .

*Stearns Bank, N.A. v. Burnes-Leverenz*, No. A11-1868, 2012 Minn. App. Unpub. LEXIS 668, at *14-*16 (Minn. Ct. App. July 23, 2012) (unpublished) ("[A]gree[ing] with majority of federal courts that have examined this issue . . . ."); s*ee also Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1214 (9th Cir. 2012) ("FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the

---

[1] Even assuming, *arguendo*, that Flom filed a claim against Nexity on the last day of the claims period and that the FDIC waited the maximum period of 180 days before issuing a decision, Flom's last day to seek judicial review would have been ***March 16, 2012***, and the deadline for claims against Bonifay would have expired nearly a year earlier.  In contrast, Flom's counterclaims first were raised in this action via his ***October 31, 2012*** answer and counterclaim (Doc. 177).

failed institution."); *Grady v. Bank of Elmwood*, No. CV11-2060, 2012 U.S. Dist. LEXIS 111429, at \*6-\*15 (D. Ariz. Aug. 6, 2012) (unpublished) (evaluating applicability of FIRREA before reaching question of liabilities assigned by purchase and assumption agreement). Regardless of the contents of the Purchase and Assumption Agreement, Flom's counterclaims for monetary damages against AloStar are barred—and this Court does not have jurisdiction to hear them—by operation of federal law.

## VI.   THE 2009 MODIFICATION: WAIVER OF CLAIMS

Looking past FIRREA, the contents of the loan documents provide additional grounds for dismissing Flom's first two counterclaims for damages. The 2009 Modification was executed at the request of the Borrower and the Guarantors, in part, to obtain *yet another* extension of the maturity date of the Indebtedness, and the Lender agreed to that extension "pursuant to the terms, conditions and additional requirements" set forth in that agreement. (Exhibit A at 1-2). Pertinent to this Motion, Section 12 of the 2009 Modification contains an explicit waiver of all claims the Borrower or the Guarantors could have asserted against the Lender and related parties as of that time:

> 12. Waiver of Claims. As additional consideration for Lender entering into this Agreement, Borrower and Guarantors ***unconditionally and irrevocably forever release and forever discharge Lender*** and its agents, servants, employees, directors, officers, attorneys, branches, affiliates, subsidiaries, ***successors and assigns*** and all persons, firms corporations, and organizations acting on Lender's behalf (collectively the "Lender Related Parties") ***of and from all damage***, loss, claims, demands, liabilities obligations, actions; and causes of action, suits, debts, costs, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses and liabilities whatsoever, ***known or unknown, at law or in equity, which Borrower or Guarantors may now have or claim to have*** against Lender or the Lender Related Parties or

> any of them, ***from the beginning of the world to the date
> hereof*** arising out of or in connection with, or relating in any
> manner to the Loan, the Note, the Loan Documents,
> Guaranties, Mortgage or this Agreement, or that may arise as a
> consequence of the dealings between the parties ***up to and
> including the date hereof***.  This Agreement and covenant on
> the part of Borrower and Guarantors is contractual, and ***not a
> mere recital.***

(Exhibit A at 5 (emphasis added)).

The clear and unambiguous terms of the 2009 Modification operate as a bar to any claim by Flom, the Borrower, or any other Guarantor based on events occurring prior to January 27, 2009, and such clauses are valid and enforceable under Florida law.  *See Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1419 (M.D. Fla.1989) ("A person may waive any legally entitled rights, including rights guaranteed by the Constitution, conferred by statute or secured by contract. . . .  If the waiver is clear and unambiguous it shall be given intended force and effect.").  In *Scarborough Assocs. v. Fin. Fed. Savings & Loan Ass'n*, the guarantors executed an analogous modification agreement on March 21, 1991, which stated:

> Indebtedness.  Mortgagor and Guarantors acknowledge and
> confirm that . . . Mortgagor *is presently indebted* to the
> Mortgagee by virtue of said Notes in the principal sum of
> $4,816,630.42, plus accrued interest from the date last paid, all
> of *which is free and clear of any defense, setoff or
> counterclaim.*

647 So. 2d 1001, 1002 (Fla. Dist. Ct. App. 1994).  The court held that that the modification agreement "clearly waived all such defenses or counterclaims through and including March 21, 1991" and that allowing waived claims to go forward "would frustrate the explicit terms of the Modification Agreement."  *Id.* at 1003-04.

Flom's first two counterclaims seek damages for breach of fiduciary duty and misrepresentation from AloStar, but involve exclusively events and conduct by Bonifay occurring prior to January 27, 2009—and had accrued well before the 2009 Modification. (*See, e.g.* Doc. 177 ¶¶ 11, 16 (discussing the September 2005 appraisal obtained by Bonifay and alleging breach of duty for failing to disclose its contents to Flom); ¶ 25 (alleging that fraud and misrepresentation should have been apparent from review of loan files upon receipt by Nexity and AloStar); ¶ 29 (listing alleged misrepresentations concerning the purchase of property and loan from Bonifay, both occurring in 2005)).  As pled, the alleged wrongs had occurred surrounding the *initial* financing in 2005, years prior to the waiver in the 2009 Modification.

Because Flom's first two counterclaims for damages are based on conduct occurring *prior* to the 2009 Amendment and that amendment contains a valid waiver extinguishing those claims, these counterclaims are subject to dismissal for failure to state a claim.  *See Bank of Ozarks v. 400 S. Land Co., LLC*, No. 2:11-CV-00129-RWS, 2012 WL 3704807, at *5 (N.D. Ga. Aug. 27, 2012) (unpublished) (granting motion to dismiss on defendants' counterclaim where guaranty agreements waived "any and all . . . claims . . . pertaining to Indebtedness . . .")

## VII. FLOM'S COUNTERCLAIM FOR UNJUST ENRICHMENT BY NEXITY, EVEN IF NOT BARRED BY FIRREA, STILL FAILS UNDER THE TERMS OF THE LOAN DOCUMENTS AND GUARANTY AGREEMENT

Flom's third counterclaim seeks monetary damages to recoup amounts he "mistakenly paid" to Nexity after an extension of the maturity date of the Indebtedness in January 2010.  (Doc. 177 ¶¶ 43-46).  Flom claims that he executed neither a loan agreement nor guaranty agreement in January 2010 and that, therefore, the Indebtedness "was

extinguished by Nexity in favor of a new agreement in January 2010." (*Id.* 20-22). Flom contends that because he was "not a party to the 2010 loan agreement," he is absolved of any liability under his prior guaranty agreements and that Nexity was "unjustly enriched" because it "retained the moneys paid by [Flom]." (*Id.* ¶¶ 45-46). Flom's theory ignores the continuing nature of the guaranty agreements he executed concerning the Indebtedness and the plain language of his 2009 Amended and Restated Guaranty Agreement (the "2009 Guaranty") (Exhibit B).

In the 2009 Guaranty, Flom "guarantee[d] at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise," a specified amount "of the ***Indebtedness***." (Exhibit B § 3.01 (emphasis added)). On the face of the 2009 Guaranty, its purpose was "inducing THE BANK OF BONIFAY ("Lender") to extend, make, renew, modify, and/or ***continue to extend, make, renew or modify the Indebtedness*** (as that term is defined below) . . . ." (*Id.* § 1.01 (emphasis added)). The 2009 Guaranty specified that the "***Indebtedness***" Flom guaranteed specifically included "any ***renewals, modifications, extensions,*** substitutions, or consolidations thereof." (*Id.* § 2.05 (emphasis added)). With the 2009 Guaranty, Flom expressly authorized Bonifay and its successors

> without notice or demand and ***without lessening [Flom's] liability under this Guaranty*** (a) ***to make*** one or more ***additional*** secured or unsecured ***loans to Borrower*** . . . or otherwise ***to extend additional credit*** to Borrower; (b) to alter, supplement, compromise, ***modify, renew, extend,*** terminate, accelerate, waive, or otherwise ***change one or more time the time for payment*** or other terms, conditions, or provisions of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness, ***extensions and modifications may be repeated and may be for longer than the original term*** . . . .

(*Id.* § 5.01 (emphasis added)).

AloStar contends that Flom's third counterclaim for damages, which is based solely on the unjust enrichment of Nexity and claimed to be "attributable to AloStar as the alleged successor in interest," is barred by FIRREA like all of Flom's other counterclaims for damages.  However, if this Court concludes it has jurisdiction to hear this counterclaim, the clear and unambiguous terms of Flom's 2009 Guaranty precludes any basis for a claim that Flom's liability for the outstanding Indebtedness was "extinguished."

## VIII.   FLOM'S HAS INADEQUATELY PLED A COUNTERCLAIM FOR ACCOUNTING UNDER FLORIDA LAW

Flom's fourth and final counterclaim seeks an accounting, but the original averments under this heading—ignoring the dozens of paragraphs incorporated by reference—are contained in just two short phrases:

> 48.   AloStar, as alleged successor to Nexity and Bonifay has a duty to provide an accounting to the members of GLS and FLP regarding the Loan.

> 49.   Accordingly, this Defendant requests the Court to order an Accounting by AloStar for all payments received and/or amounts expended on the Loan.

(Doc. 177 ¶¶ 48-49).  These perfunctory sentences are inadequate to state a claim for equitable accounting under Florida law, and Flom has neither pled nor taken the action necessary to demonstrate entitlement to the relief he requests.

Under Florida law, an action for an accounting presents two triable issues: 1) the right to an accounting and 2) the accounting itself. *Wood v. Brackett*, 266 So. 2d 398, 399 (Fla. Dist. Ct. App. 1972).  Flom's counterclaim has not alleged any basis for the right to an accounting because "a party seeking an equitable accounting must show the existence of a

fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate." *Fla. Software Sys. v. Columbia/HCA Healthcare Corp.*, 46 F. Supp. 2d 1276, 1285-86 (M.D. Fla. 1999); *see also Solar Star Sys., LLC v. Bellsouth Telcoms., Inc.*, 2011 U.S. Dist. LEXIS 90423, at *18 (S.D. Fla. Aug. 12, 2011) (unpublished).  Flom does not include even a legal conclusion that AloStar's owes a fiduciary duty or that any other relationship triggers the right to an accounting, and payments received and applied on a loan account by a bank are hardly a complex transaction.  Further, Flom has not alleged that he has no adequate remedy at law, and the opportunity to conduct discovery in this action and pursue a breach of contract claim or argue affirmative defenses to enforcement of his 2009 Guaranty obviates the need for an accounting.  *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538 (11th Cir. Fla. 1990) ("When a judgment for breach of contract is obtainable, the remedy at law is considered adequate, precluding the need for the imposition of an equitable remedy," including an equitable accounting).

Because Flom has not adequately pled an action for an accounting, Flom's fourth counterclaim must be dismissed for failure to state a claim.  *See Staup v. Wachovia Bank, N.A.*, 2008 U.S. Dist. LEXIS 49388, *9-*10 (S.D. Fla. June 27, 2008) (dismissing claim for accounting where "conclusory allegations in the Complaint do not show any of the[] necessary elements").

## IX.   **CONCLUSION**

Flom's counterclaims are subject to immediate dismissal.  The allegations of the Response are made only "upon information and belief" and fail to meet the standards of the Federal Rules of Civil Procedure.   Because the counterclaims in Flom's Response incorporate dozens of paragraphs of vague averments and meaningless legal conclusions,

this impermissible "shotgun" pleading under Eleventh Circuit precedent should be dismissed.   Ignoring these procedural shortcomings, Flom's failure to pursue an administrative claim with the FDIC results in his first three counterclaims being barred under FIRREA and depriving this Court of subject matter jurisdiction.   Notwithstanding this fatal defect, a waiver in the 2009 Modification forever released and discharged AloStar from the first two counterclaims for damages Flom now attempts to assert.   Flom's third counterclaim for damages also is precluded by the clear and unambiguous nature of his 2009 Guaranty, which expressly encompasses extensions, modifications, and renewals of the Indebtedness—regardless of whether yet another guaranty agreement was executed in January 2010.   Finally, Flom's counterclaim that seeks an accounting is so inadequately pled that it fails to state a cause of action under Florida law and must be dismissed.   For the reasons set forth above, Flom's counterclaims are subject to dismissal in their entirety.

*[Signatures to appear on the following page.]*

Dated this 26th day of November 2012.

Respectfully submitted,

s/ Eric D. Stolze
William K Whitner
Georgia Bar No. 756652
Eric D. Stolze
Georgia Bar No. 425966
PAUL HASTINGS LLP
1170 Peachtree Street, N.E.
Suite 100
Atlanta, GA 30309
Telephone:       (404) 815-2400
Facsimile:       (404) 815-2424
Email:  kwhitner@paulhastings.com
Email:  ericstolze@paulhastings.com

George R. Mead
Florida Bar No. 096490
Yancey F. Langston
Florida Bar No. 827134
MOORE, HILL & WESTMORELAND, P.A.
220 West Garden Street (32502)
SunTrust Tower, 9th Floor
Post Office Box 13290
Pensacola, FL 32591-3290
Telephone:       (850) 434-3541
Facsimile:       (850) 435-7899
Email:  emead@mhw-law.com
Email:  ylangston@mhw-law.com
*Attorneys for Plaintiff - AloStar Bank*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

ALOSTAR BANK OF COMMERCE,

        Plaintiff,

v.

GLS FLORIDA PROPERTY 2, LLC;
JASON R. FLOM; HERBERT L.
GRAHAM; GLENN W. JOHNSON, III;
ELLIOT H. LEVINE; PETER
MCKENNA; JAMES C. STROUD;
DWIGHT P. WILES; ELIZABETH
YATES; and EARLE YAFFA and
RONALD J. WEISS, as Executors of the
Estate of Joseph Flom;

        Defendants.

CIVIL ACTION FILE
NO. 5:11-cv-00406-RS-GRJ

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that the foregoing was electronically filed on November 26,

2012 with the Clerk of the Court using the CM/ECF system, which will send a notice of

electronic filing to counsel for the parties registered on the CM/ECF system.

Respectfully submitted,

        By:  s/ Eric D. Stolze
            William K Whitner
            Georgia Bar No. 756652
            Eric D. Stolze
            Georgia Bar No. 425966
            PAUL HASTINGS LLP
            1170 Peachtree Street, N.E.
            Suite 100
            Atlanta, GA 30309
            Telephone:     (404) 815-2400
            Facsimile:     (404) 815-2424
            Email:  kwhitner@paulhastings.com
            Email:  ericstolze@paulhastings.com

George R. Mead
Florida Bar No. 096490
Yancey F. Langston
Florida Bar No. 827134
MOORE, HILL & WESTMORELAND, P.A.
220 West Garden Street (32502)
SunTrust Tower, 9th Floor
Post Office Box 13290
Pensacola, FL 32591-3290
Telephone:      (850) 434-3541
Facsimile:      (850) 435-7899
Email:  emead@mhw-law.com

*Attorneys for Plaintiff*
*AloStar Bank of Commerce*

LEGAL_US_E # 101419182.1