UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| **ALOSTAR BANK OF COMMERCE,** | |
| Plaintiff and Counter-Defendant, | |
| v. | CIVIL ACTION FILE NO. 5:11-cv-00406-RS-GRJ |
| **GLS FLORIDA PROPERTY 2, LLC; JASON R. FLOM; HERBERT L. GRAHAM; GLENN W. JOHNSON, III; ELLIOT H. LEVINE; PETER MCKENNA; JAMES C. STROUD; DWIGHT P. WILES; ELIZABETH YATES; and EARLE YAFFA and RONALD J. WEISS, as Executors of the Estate of Joseph Flom;** | |
| Defendants and Counter-Plaintiffs, | |
| **PETER MCKENNA,** | |
| Cross-Claim Plaintiff, | |
| v. | |
| **JASON R. FLOM; HERBERT L. GRAHAM; GLENN W. JOHNSON, III; ELLIOT H. LEVINE; JAMES C. STROUD; DWIGHT P. WILES; and ELIZABETH YATES;** | |
| Cross-Claim Defendants, | |
| **PETER MCKENNA,** | |
| Third-Party Plaintiff, | |
| v. | |
| **RONALD E. GILLEY; RONNIE GILLEY PROPERTIES, LLC; and SUNSOUTH BANK;** | |
| Third-Party Defendants. | |

## ALOSTAR'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT GRAHAM'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6) & 12(B)(1)

Plaintiff AloStar Bank of Commerce ("AloStar"), by and through its counsel, submits this memorandum of law in support of its motion to dismiss the counterclaims filed by Defendant and Counter-Plaintiff Herbert L. Graham ("Graham"). In response to AloStar's Verified Amended Complaint (Doc. 125), Graham filed his answer and Counterclaim Complaint (the "Response") (Doc. 176). The Response asserts four counterclaims for damages based on alleged pre-FDIC receivership conduct of failed financial institutions, all of which are subject to dismissal on multiple procedural and substantive grounds.

Foremost, every counterclaim of the Response "incorporates by reference" the several dozen paragraphs before it, making it an impermissible "shotgun" pleading that should be dismissed under the law of the Eleventh Circuit. Beyond this procedural shortcoming, Graham's counterclaims are substantively defective. All the counterclaims Graham asserts against AloStar are barred by failure to submit the administrative notice of claim required by federal statute, depriving this Court of jurisdiction to hear these complaints now. Further, a January 2009 contractual waiver forever released these counterclaims, and no wrongful conduct attributable to or by AloStar is alleged to have occurred after that waiver. As a result, all of Graham's counterclaims for damages against AloStar 1) fail to state a claim upon which relief may be granted as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), 2) are barred by federal statute, or 3) are beyond the subject matter jurisdiction of this Court for failure to exhaust administrative remedies.

1

I.      **FACTUAL BACKGROUND**

In December 2005, The Bank of Bonifay ("Bonifay")—a Florida bank—loaned Defendant GLS Florida Property 2, LLC (the "Borrower")—a Florida entity—$18,750,000.00 (the "Indebtedness") to facilitate the purchase of real estate in Bay County, Florida for development into the "Marina Di Massa" condominium project.  To induce Bonifay to make the loan, several individuals (the "Guarantors") executed limited guaranty agreements promising repayment.  Although the Indebtedness originally matured in August 2006, Bonifay extended maturity to 2007.  In 2007, Bonifay again extended the maturity date to 2008; in 2008, Bonifay extended the maturity date to later in 2008; in 2009, Bonifay extended the maturity date once more to December 2009.  Prior to this maturity, however, the Indebtedness was assigned to Nexity Bank ("Nexity"), and, in January 2010, Nexity extended the maturity date to 2015.

In April 2011, Nexity failed and was closed by regulators, and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver.  Shortly thereafter, AloStar entered a purchase and assumption agreement with the FDIC and became the holder of the Indebtedness.  Earlier, Bonifay also failed and was closed by regulators on May 7, 2010, and the FDIC entered a purchase and assumption agreement with First Federal Bank of Florida on the same date.  Borrower has defaulted on the Indebtedness, and AloStar initiated this action against the Borrower and the Guarantors.

II.     **APPLICABLE LEGAL STANDARD**

A motion to dismiss should be granted under Fed. R. Civ. P. 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The role

2

of the Court at this stage of litigation is to determine whether the complaint—or counterclaims—are legally sufficient. *See Sherman ex rel. Sherman v. Helms*, 80 F. Supp. 2d 1365, 1368 (M.D. Ga. 2000). Similarly, claims must be dismissed where this Court lacks subject matter jurisdiction, and a motion to dismiss under Fed. R. Civ. P. 12(b)(1) may assert either a factual attack or a facial attack to jurisdiction. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citations omitted).

### III.    DOCUMENTS THAT MAY PROPERLY BE CONSIDERED

Graham's Response asserts counterclaims against "AloStar in its own right and as *successor-in-interest* to Nexity and Bonifay" and explicitly references "the underlying loan documents" as the basis for an affirmative defense (Doc. 176 at 13 (emphasis added)), although failing to define fully the scope of that phrase. Graham alleges that "by contract, AloStar assumed the liabilities of Nexity *and, thus, Bonifay*." (*Id.* at 15 (emphasis added)). Graham repeatedly utilizes the term "Bonifay Loan" without defining it, but references "subsequent renewals and modifications" of Graham's personal guaranty in his Counterclaim Complaint. (*See, e.g.*, *id.* at 21-24, 36). Whether an effort to limit documents this Court may consider or simply the result of incautious drafting, the extensions, renewals, and guarantees remain central to Graham's counterclaims against AloStar, as the Response includes an allegation that "AloStar is a direct beneficiary of the *wrongdoing of Bonifay*, and *Bonifay's conduct* is attributable and imputable to AloStar." (*Id.* at ¶ 9 (emphasis added)).

By doing so, Graham permitted this Court, consistent with Eleventh Circuit precedent, to consider those and other key documents at the motion to dismiss stage. *See Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 866 (11th Cir. 2011) (considering documents appended to a motion to dismiss, including "a note, a security deed, and a deed

3

under power"); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (allowing consideration of "relationship-forming contracts [] central to a plaintiff's claim" in ruling on a motion to dismiss). For the Court's consideration, AloStar has attached as Exhibit A the January 27, 2009 Modification Agreement (the "2009 Modification") (ALOSTAR000345-362), a document that was executed by GLS Florida Property 2, LLC (the "Borrower"), the other individual Defendants in this action (collectively, the "Guarantors"), and one of AloStar's predecessors in interest (the "Lender") before a notary.

### IV.   GRAHAM'S RESPONSE IS A "SHOTGUN" PLEADING AND FAILS TO SATISFY THE PLEADING STANDARDS OF THE ELEVENTH CIRCUIT AND THE FEDERAL RULES OF CIVIL PROCEDURE

Graham's Response, which asserts counterclaims based on fraud and similar conduct, fails to meet the pleading standard required by Fed. R. Civ. P. 9(b), as a repetitive disclaimer in the section labeled "Background 'Facts' " precludes elevating its allegations to the level of fact because many of the core allegations are merely made "upon information and belief" (Doc. 176 ¶¶ 16, 17, 21, 22, 23, 24, 25, 26, 27, 30, 31, 32, 34, 35, ). Graham's counterclaims for monetary damages that are based on fraud and like actions should be dismissed on this basis alone. *See U.S. ex rel. Lindsey v. Easter Seals UCP N. Carolina, Inc.*, No. 1:06CV125, 2007 WL 3124664, at *4 (W.D.N.C. Oct. 25, 2007) (unpublished) ("A plaintiff must know about what he is complaining before he files [a] suit [claiming fraud]. . . . To allow otherwise would be to encourage actions for fraud based on 'information and belief' rather than hard facts and firsthand knowledge" (citation and quotation omitted).); *Antilles Trading Co., S.A. v. Scientific-Atlanta, Inc.*, 117 F.R.D. 447, 451 (N.D. Ga. 1986) (holding that "while a complaint may allege fraud on information and

4

belief, the allegations must then be accompanied by a statement of facts upon which the belief is founded," which Graham has failed to provide.).

Providing another ground for dismissal, Graham's Counterclaim Complaint spans over a dozen pages and 60 paragraphs. Of those, a section dubbed "Background Facts" occupies more than half of the Counterclaim Complaint and contains few true facts, couching many allegations as based only "[o]n information and belief." (*See, e.g.*, Doc. 176 ¶ 31). Worse, *every counterclaim* begins with the following incorporation language that bloats each one to many more pages without adding the substance necessary to adequately plead a claim for relief:

> Defendants adopts and corporates by reference the allegations in paragraphs 1 through [the last paragraph of the previous count] above.

(*See, e.g.,* Doc. 176 ¶¶ 37, 44, 51, 56).

Without an adequate pleading of known facts, much less facts connected to the counterclaims asserted, Graham's Response constitutes an impermissible shotgun pleading, "an unacceptable form of establishing a claim for relief." *Innocent v. Wachovia Mortg. Corp.*, No. 1:10-CV-03799-RWS, 2012 WL 602129, at *1 (N.D. Ga. Feb. 22, 2012) (unpublished) (citing *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002)). Graham's counterclaims contain only legal conclusions, vaguely reference "the material facts described above" (Doc. 176 ¶ 54), and pattern allegations after "[t]he typical shotgun complaint [that] contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions," *id.* A perfunctory review of Graham's "Background Facts" reveals a

5

"quintessential 'shotgun' pleading replete with" allegations based on information and belief "and rambling legal conclusions." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008).

AloStar should not be required to respond to and defend against a pleading that fails to meet the minimum pleading standards. *Byrne v. Nezhat,* 261 F.3d 1075, 1129-34 (11th Cir. 2001) (discussing shotgun pleadings and approving remedy of dismissal when a party fails to cure the deficiency). "Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice . . . . and, in a very real sense, amounts to obstruction of justice." *Id.* at 1131 (citation and quotation omitted). Because "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996), Graham's Response should be dismissed. *Lumley v. City of Dade City*, 327 F.3d 1186, 1192 n.13 (11th Cir. 2003) ("We . . . suggest that when faced with such pleading, the district court, acting on its own initiative, require a repleader."); *Roundtree v. Countrywide Home Loans, Inc.*, 3:09-CV-189-J-32TEM, 2009 WL 5215334 (M.D. Fla. Dec. 29, 2009) ("[I]n a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient.").

V. **GRAHAM NEVER FILED CLAIMS WITH THE FDIC FOR THE CONDUCT BY BONIFAY OR NEXITY NOW AT ISSUE IN GRAHAM'S COUNTERCLAIMS, WHICH IS A PREREQUISITE TO THIS COURT HAVING SUBJECT MATTER JURISDICTION**

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L No. 101-73, 103 Stat. 183 (1989) (codified at various sections of 12 and 15 U.S.C.), was "enacted to enable the federal government to respond swiftly and

6

effectively to the declining financial condition of the nation's banks and savings institutions. The statute grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks. *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993) (citing 12 U.S.C. § 1821(d)(3)(A)). To facilitate the FDIC's role, "Congress created a claims process for the filing, consideration[,] and determination of claims against insolvent banks" "to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts." *Id.*

Under this framework, once a financial institution has failed, "subsequent claims must be presented first to the FDIC for an administrative determination on whether they should be paid." *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 445 (E.D.N.Y. 2010). Satisfaction of this administrative claims process is a "prerequisite to judicial review," and without it, no subject matter jurisdiction exists to hear the claim. *Id.* at 446. The jurisdictional bar resulting from failure to exhaust the administrative claims process of FIRREA is equally applicable to the FDIC and its successors in interest, like AloStar. *American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1265 (11th Cir. 1999) (holding that counterclaim against purchaser of failed bank's assets from the FDIC was barred for failure to exhaust administrative remedies under FIRREA).

Several provisions of a federal statutory scheme interact to result in this jurisdictional bar. When the FDIC becomes receiver, it provides notice that claims against the failed financial institution, together with proof, must be presented by a date at least 90 days from the notice. 12 U.S.C. § 1821(d)(3)(B)(i). The FDIC is permitted up to 180 days from the date of claim filing to issue a decision allowing or denying the claim. *Id.* at

§ 1821(d)(5)(A)(i).  Claims must be presented within this timeframe, and a claimant may pursue judicial review *only* as provided by FIRREA:

> (D) ***Limitation on judicial review***. Except as otherwise provided in this subsection, ***no court shall have jurisdiction over***—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) ***any claim relating to any act or omission of such institution*** or the Corporation as receiver.

*Id.* at § (d)(13)(D).  The provision allowing for jurisdiction "except as otherwise provided" refers to judicial review *only after* completion of the FDIC's administrative claims process. FIRREA allows a claimant only 60 days to initiate a lawsuit following the issuance of the FDIC's administrative determination, and if a claimant fails to do so, "the claims shall be deemed to be disallowed . . . such disallowance shall be final, . . . and the claimant shall have no further rights or remedies with respect to such claim."  *Id.* at § 1821(d)(6)(B). Potential claimants failing even to initiate the FDIC's administrative process within applicable deadlines will have their claims "disallowed and such disallowance shall be final."  *Id.* at § 1821(d)(5)(C)(i).

      Notably absent from Graham's Response is any mention of FIRREA's claims process or exhaustion of administrative remedies—an unsatisfied condition precedent to the existence of subject matter jurisdiction to hear the claims he now asserts.  All of Graham's counterclaims are based exclusively on the "act[s] or omission[s]," 12 U.S.C. § 1821(d)(13)(D), of two failed financial institutions, Bonifay and Nexity.  The repetitive

8

allegations contained in these counterclaims exclude AloStar's independent conduct from being a basis for the cause of action:

> *Bonifay* failed to disclose . . . .
>
> *Bonifay* knew that Defendant would rely on . . . .
>
> Plaintiff is the direct beneficiary of the *material omissions on the part of Bonifay*.
>
> *Bonifay's fiduciary duty* to Defendant . . . .
>
> As a *direct and proximate result of Bonifay's* fraudulent concealments, Defendant was damaged.
>
> *Bonifay* substantially assisted . . . .
>
> Pursuant to Article 2.1(n) of the Purchase and Assumption Agreement, *AloStar assumed liabilities of Bonifay and Nexity* . . . . The *breach of these duties by Bonifay and Nexity* makes AloStar liable. AloStar is also a direct beneficiary of the breaches of fiduciary duties. Such breaches are attributable and imputable to AloStar. . . .

(Doc. 176 at 12, ¶¶ 38-42, 47-48, 50, 55, 61 (emphasis added)). As stated in a notice by the FDIC, claims against Bonifay were due on or before August 10, 2010. FDIC, *Failed Bank Information: Information for The Bank of Bonifay, Bonifay, FL*, available at: http://www.fdic.gov/bank/individual/failed/bonifay.html). Similarly, the FDIC required all claims against Nexity to be filed on or before July 20, 2011. FDIC, *Failed Bank Information: Information for Nexity Bank, Birmingham, AL*, available at: http://www.fdic.gov/bank/individual/failed/nexity.html).

The time period for submitting claims to the FDIC for both Bonifay and Nexity has expired, and Graham's counterclaims include no allegation that he submitted a claim to the

9

FDIC or that the FDIC denied that claim at least in part.[1]  Graham's causes of action against Bonifay and Nexity were extinguished through FDIC receivership and inaction during FIRREA's administrative claims period, resulting in the divestment of subject matter jurisdiction from any court.

Graham improperly attempts to circumvent FIRREA's administrative exhaustion requirement by filing suit directly against AloStar.  Previous attempts to do so by other inattentive claimants have been rejected.  *See Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 447 (2010) ("[P]laintiffs cannot evade FIRREA's mandatory exhaustion requirement simply by asserting claims against . . . third-party purchasers of the failed bank's assets . . . .").  Graham's reference to Article 2.1(n) of AloStar's Purchase and Assumption Agreement with the FDIC is irrelevant to the operation of FIRREA.  Even assuming, *arguendo*, that the liability of Graham's counterclaims transferred to AloStar by operation of this *contract* provision,

> the issues of ***whether*** the ***successor bank*** contractually ***assumed its predecessor's liabilities or*** whether the ***FDIC was still acting as receiver*** have ***no legal relevance*** . . . .

*Stearns Bank, N.A. v. Burnes-Leverenz*, No. A11-1868, 2012 Minn. App. Unpub. LEXIS 668, at *14-*16 (Minn. Ct. App. July 23, 2012) (unpublished) ("[A]gree[ing] with majority of federal courts that have examined this issue . . . ."); s*ee also Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1214 (9th Cir. 2012) ("FIRREA's jurisdictional bar applies to

---

[1] Even assuming, *arguendo*, that Graham filed a claim against Nexity on the last day of the claims period and that the FDIC waited the maximum period of 180 days before issuing a decision, Graham's last day to seek judicial review would have been ***March 16, 2012***, and the deadline for claims against Bonifay would have expired nearly a year earlier.  In contrast, Graham's counterclaims first were raised in this action via his ***October 31, 2012*** answer and counterclaim (Doc. 176).

claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution."); *Grady v. Bank of Elmwood*, No. CV11-2060, 2012 U.S. Dist. LEXIS 111429, at *6-*15 (D. Ariz. Aug. 6, 2012) (unpublished) (evaluating applicability of FIRREA before reaching question of liabilities assigned by purchase and assumption agreement). Regardless of the contents of the Purchase and Assumption Agreement, Graham's counterclaims for monetary damages against AloStar are barred—and this Court does not have jurisdiction to hear them—by operation of federal law.

## VI. THE 2009 MODIFICATION: WAIVER OF CLAIMS

Looking past FIRREA, the contents of the loan documents provide additional grounds for dismissing the majority of Graham's counterclaims. The 2009 Modification was executed at the request of the Borrower and the Guarantors, in part, to obtain *yet another* extension of the maturity date of the Indebtedness, and the Lender agreed to that extension "pursuant to the terms, conditions and additional requirements" set forth in that agreement. (Exhibit A at 1-2). Pertinent to this Motion, Section 12 of the 2009 Modification contains an explicit waiver of all claims the Borrower or the Guarantors could have asserted against the Lender and related parties as of that time:

> 12. Waiver of Claims. As additional consideration for Lender entering into this Agreement, Borrower and Guarantors ***unconditionally and irrevocably forever release and forever discharge Lender*** and its agents, servants, employees, directors, officers, attorneys, branches, affiliates, subsidiaries, ***successors and assigns*** and all persons, firms corporations, and organizations acting on Lender's behalf (collectively the "Lender Related Parties") ***of and from all damage***, loss, claims, demands, liabilities obligations, actions; and causes of action, suits, debts, costs, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses and liabilities whatsoever, ***known or unknown, at law or in***

11

> *equity, which Borrower or Guarantors may now have or claim to have* against Lender or the Lender Related Parties or any of them, *from the beginning of the world to the date hereof* arising out of or in connection with, or relating in any manner to the Loan, the Note, the Loan Documents, Guaranties, Mortgage or this Agreement, or that may arise as a consequence of the dealings between the parties *up to and including the date hereof.* This Agreement and covenant on the part of Borrower and Guarantors is contractual, and *not a mere recital.*

(Exhibit A at 5 (emphasis added)).

The clear and unambiguous terms of the 2009 Modification operate as a bar to any claim by Graham, the Borrower, or any other Guarantor based on events occurring prior to January 27, 2009, and such clauses are valid and enforceable under Florida law. *See Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1419 (M.D. Fla.1989) ("A person may waive any legally entitled rights, including rights guaranteed by the Constitution, conferred by statute or secured by contract. . . . If the waiver is clear and unambiguous it shall be given intended force and effect."). In *Scarborough Assocs. v. Fin. Fed. Savings & Loan Ass'n*, the guarantors executed an analogous modification agreement on March 21, 1991, which stated:

> Indebtedness. Mortgagor and Guarantors acknowledge and confirm that . . . Mortgagor *is presently indebted* to the Mortgagee by virtue of said Notes in the principal sum of $4,816,630.42, plus accrued interest from the date last paid, all of *which is free and clear of any defense, setoff or counterclaim.*

647 So. 2d 1001, 1002 (Fla. Dist. Ct. App. 1994). The court held that that the modification agreement "clearly waived all such defenses or counterclaims through and including March 21, 1991" and that allowing waived claims to go forward "would frustrate the explicit terms of the Modification Agreement." *Id.* at 1003-04.

12

Graham's four counterclaims involve exclusively events and conduct occurring prior to January 27, 2009, and the majority of the allegations and averments relate to the original closing of the real estate purchase and *initial* funding of the loan, both occurring *in 2005*. (Doc. 176 at 13-22). Graham's counterclaims effectively plead that the basis for the claims against Bonifay—now asserted against AloStar—had accrued well before the 2009 Modification. (*See, e.g.* Doc. 176 ¶ 23 (discussing the August 2005 contract to purchase the real property that was financed with the Indebtedness); ¶ 26 (alleging, "[o]n information and belief," that "100% of the funds used to facilitate" purchase of the real property by GLS originated from Bonifay); ¶ 28 (discussing a September 2005 appraisal of the real property underlying the Indebtedness) ¶ 36 (alleging that "Bonifay induced [Graham] to enter a personal guaranty (with subsequent renewals and modifications)," presumably in 2005).

Because all of Graham's counterclaims for damages are based on conduct occurring *prior* to the 2009 Amendment and that amendment contains a valid waiver extinguishing those claims, these counterclaims are subject to dismissal for failure to state a claim. *See Bank of Ozarks v. 400 S. Land Co., LLC*, No. 2:11-CV-00129-RWS, 2012 WL 3704807, at *5 (N.D. Ga. Aug. 27, 2012) (unpublished) (granting motion to dismiss on defendants' counterclaim where guaranty agreements waived "any and all . . . claims . . . pertaining to Indebtedness . . .")

## VII. CONCLUSION

Graham's counterclaims are subject to immediate dismissal. The core allegations of the Response are made only "[o]n information and belief," and otherwise fail to meet the standards of the Federal Rules of Civil Procedure. Because the counterclaims in Graham's Response balloon by incorporating dozens of paragraphs of vague averments and

meaningless legal conclusions, this impermissible "shotgun" pleading under Eleventh Circuit precedent should be dismissed. Ignoring these procedural shortcomings, Graham's failure to pursue an administrative claim with the FDIC results in all of his counterclaims being barred under FIRREA and depriving this Court of subject matter jurisdiction. Notwithstanding this fatal defect, a waiver in the 2009 Modification forever released and discharged AloStar from every counterclaim Graham now attempts to assert.

For the reasons set forth above, Graham's counterclaims are subject to dismissal in their entirety.

Dated this 26th day of November 2012.

Respectfully submitted,

s/ Eric D. Stolze
William K Whitner
Georgia Bar No. 756652
Eric D. Stolze
Georgia Bar No. 425966
PAUL HASTINGS LLP
1170 Peachtree Street, N.E.
Suite 100
Atlanta, GA 30309
Telephone:     (404) 815-2400
Facsimile:      (404) 815-2424
Email:  kwhitner@paulhastings.com
Email:  ericstolze@paulhastings.com

George R. Mead
Florida Bar No. 096490
Yancey F. Langston
Florida Bar No. 827134
MOORE, HILL & WESTMORELAND, P.A.
220 West Garden Street (32502)
SunTrust Tower, 9th Floor
Post Office Box 13290
Pensacola, FL 32591-3290
Telephone:     (850) 434-3541
Facsimile:     (850) 435-7899
Email:  emead@mhw-law.com
Email:  ylangston@mhw-law.com
*Attorneys for Plaintiff - AloStar Bank*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| ALOSTAR BANK OF COMMERCE,<br><br>    Plaintiff,<br><br>v.<br><br>GLS FLORIDA PROPERTY 2, LLC; JASON R. FLOM; HERBERT L. GRAHAM; GLENN W. JOHNSON, III; ELLIOT H. LEVINE; PETER MCKENNA; JAMES C. STROUD; DWIGHT P. WILES; ELIZABETH YATES; and EARLE YAFFA and RONALD J. WEISS, as Executors of the Estate of Joseph Flom;<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 5:11-cv-00406-RS-GRJ |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed on November 26, 2012 with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel for the parties registered on the CM/ECF system.

Respectfully submitted,

> By: s/ Eric D. Stolze
> William K Whitner
> Georgia Bar No. 756652
> Eric D. Stolze
> Georgia Bar No. 425966
> PAUL HASTINGS LLP
> 1170 Peachtree Street, N.E.
> Suite 100
> Atlanta, GA 30309
> Telephone:     (404) 815-2400
> Facsimile:       (404) 815-2424
> Email: kwhitner@paulhastings.com
> Email: ericstolze@paulhastings.com

>George R. Mead
>Florida Bar No. 096490
>Yancey F. Langston
>Florida Bar No. 827134
>MOORE, HILL & WESTMORELAND, P.A.
>220 West Garden Street (32502)
>SunTrust Tower, 9th Floor
>Post Office Box 13290
>Pensacola, FL 32591-3290
>Telephone:      (850) 434-3541
>Facsimile:       (850) 435-7899
>Email:  emead@mhw-law.com
>
>*Attorneys for Plaintiff*
>*AloStar Bank of Commerce*

LEGAL_US_E # 101419081.1