# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

ALOSTAR BANK OF COMMERCE,
    Plaintiff,

v.                                            CASE NO.  5:11-cv-406-RS-GRJ

GLS FLORIDA PROPERTY 2, LLC, et al.,
    Defendants,
_____

PETER MCKENNA,
    Cross-Claim Plaintiff,

v.

JASON R. FLOM, et al.,
    Cross-Claim Defendants,
_____

PETER MCKENNA,
    Third-Party Plaintiff,

v.

RONALD E. GILLEY, et al.,
    Third-Party Defendants.
_____/

## ORDER

Before me are AloStar's Motion to Dismiss Defendant Wiles's Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 151) and Defendant Dwight P. Wiles' Memorandum in Opposition (Doc. 173).  Because I cannot properly consider the document relied on by AloStar at this stage of the proceedings, the Motion to Dismiss is **DENIED**.

1

## Standard of Review

To overcome a motion to dismiss, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S. Ct. 2229, 2232 (1984). I must construe all allegations in the complaint as true and in the light most favorable to the plaintiff. *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (citing *Lowell v. American Cyanamid Co.,* 177 F.3d 1228, 1229 (11th Cir. 1999)).

## Background

In December of 2005, the Bank of Bonifay ("Bonifay") loaned Defendant GLS Florida Property 2, LLC ("GLS") $18,750,000 ("the Loan") to purchase real property in Bay County, Florida. The purchase price for the property was $25,000,000. Several individuals, including Defendant Wiles, executed limited guaranty agreements in favor of Bonifay. The maturity date of the Loan, which was originally in 2006, was extended several times: first to 2007, then to 2008, then to later in 2008, and then to late 2009. Before the 2009 maturity date, the Loan was assigned to Nexity Bank. Nexity Bank extended the maturity date to

2015.  In April of 2011, Nexity Bank failed and the FDIC was named Receiver.  Plaintiff AloStar Bank of Commerce ("AloStar") purchased the Loan from the FDIC.  GLS has defaulted on the Loan, and AloStar brought this action to recover the funds from GLS and the guarantors.  Most guarantors have filed counterclaims against AloStar, mainly alleging fraud perpetrated by Bonifay.  *See* Docs. 135, 167, 176, 177, & 179.

AloStar moves for dismissal of Defendant Wiles' counterclaims on the basis that all of the allegations contained in the counterclaims relate to the execution of the Loan in December of 2005, but in January of 2009 Defendant Wiles signed a modification agreement which waived all claims he could have asserted against Bonifay prior to January of 2009.  The waiver reads,

> 12. Waiver of Claims. As additional consideration for Lender entering into this Agreement, Borrower and Guarantors unconditionally and irrevocably forever release and forever discharge Lender and its agents, servants, employees, directors, officers, attorneys, branches, affiliates, subsidiaries, successors and assigns and all persons, firms corporations, and organizations acting on Lender's behalf (collectively the "Lender Related Parties") of and from all damage, loss, claims, demands, liabilities obligations, actions; and causes of action, suits, debts, costs, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses and liabilities whatsoever, known or unknown, at law or in equity, which Borrower or Guarantors may now have or claim to have against

> Lender or the Lender Related Parties or any of them, from the beginning of the world to the date hereof arising out of or in connection with, or relating in any manner to the Loan, the Note, the Loan Documents, Guaranties, Mortgage or this Agreement, or that may arise as a consequence of the dealings between the parties up to and including the date hereof. This Agreement and covenant on the part of Borrower and Guarantors is contractual, and not a mere recital.

Defendant Wiles argues that (i) the 2009 modification agreement should not be considered because it is outside the pleadings; (ii) the waiver included in the 2009 modification agreement is unenforceable because it was induced by fraud; and (iii) the waiver does not clearly extend to the counterclaims asserted by Defendant Wiles.

## Analysis

AloStar argues that I may properly consider the 2009 modification agreement attached to its Motion to Dismiss because Wiles' counterclaims explicitly reference "an $18,750,000 loan (the 'GLS Loan') from the Bank of Bonifay ('Bonifay') to GLS" (Doc. 135 at 11 ¶ 18) and his "personal guaranty (with subsequent renewals and modifications)" (*Id.* at 14 ¶ 28). "In general, a district court should not look outside the complaint in a motion to dismiss, but it may consider documents attached to a defendant's motion if those documents are 'relationship-forming contracts [that] are central to a plaintiff's claim.'" *Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 866 (11th Cir. 2011) (quoting *SFM*

4

*Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010)). In *Sampson*, the Eleventh Circuit considered a note, a security deed, and a deed under power which were appended to the defendants' motion to dismiss the plaintiff's claims for fraud and predatory lending, among others, arising from the refinancing of the plaintiff's residential mortgage.  The Eleventh Circuit held that these three documents were "central to the plaintiff's claims that arose out of his loan transaction with the defendants."  453 F. App'x at 866.  In *SFM Holdings*, the plaintiff sued Banc of America Securities for constructive fraud and breach of fiduciary duties arising from a brokerage account held by the plaintiff.  600 F.3d at 1336.  The Eleventh Circuit held that the district court did not err by considering a Prime Broker Margin Agreement, which was one of the documents used to open the brokerage account but was not attached to the complaint.  *Id.* at 1337.  The Eleventh Circuit noted that the Prime Broker Margin Agreement set forth the terms and conditions on which Banc of America Securities would open and maintain accounts with the customer, and was thus a relationship-forming contract central to the plaintiff's claim.  *Id.*

The 2009 modification agreement which AloStar urges me to consider is neither a relationship-forming document nor central to Defendant Wiles' counterclaims.  The relationship between Bonifay and Wiles was formed more than three years before the 2009 modification agreement was executed.  And, as

5

noted by AloStar, Defendant Wiles' counterclaims are based on the allegedly wrongful actions of Bonifay when the Loan was made in 2005.  The 2009 modification agreement is in no way central to Wiles' claims themselves.  It may be relevant in a future motion for summary judgment, but that is for another day.  Accordingly, AloStar's Motion to Dismiss Defendant Wiles's Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 151) is **DENIED**.  At this juncture, I need not reach the issues of whether the waiver included in the 2009 modification agreement is enforceable or extends to the counterclaims asserted by Defendant Wiles.

**ORDERED** on November 27, 2012.

<u>**/s/ Richard Smoak**</u>
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**