UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

_____x
ALOSTAR BANK OF COMMERCE,                )
                              Plaintiff, )
v.                                       )
                                         )
GLS FLORIDA PROPERTY 2, LLC;             )
JASON R. FLOM; HERBERT L. GRAHAM;        )
GLENN W. JOHNSON, III; ELLIOT H.         )
LEVINE; PETER MCKENNA; JAMES C.          )
STROUD; DWIGHT P. WILES; ELIZABETH       )
YATES; and ROGER S. AARON, EARLE         )
YAFFA, and RONALD J. WEISS, as           )          No. 5-11-cv-00406-RS-GRJ
Executors of the Estate of Joseph Flom;  )
                             Defendants.  )
_____x
PETER MCKENNA,                           )
                    Cross-Claim Plaintiff, )
v.                                       )
                                         )
JASON R. FLOM; HERBERT L. GRAHAM;        )
GLENN W. JOHNSON, III; ELLIOT H.         )
LEVINE; JAMES C. STROUD; DWIGHT P.       )
WILES; and ELIZABETH YATES;              )
                  Cross-Claim Defendants. )
_____x
PETER MCKENNA,                           )
                    Third-Party Plaintiff, )
v.                                       )
                                         )
RONALD E. GILLEY; RONNIE GILLEY          )
PROPERTIES, LLC; and SUNSOUTH BANK       )
                  Third-Party Defendants. )
_____x

**DEFENDANT PETER MCKENNA'S RESPONSE IN OPPOSITION
TO ALOSTAR'S MOTION TO DISMISS COUNTERCLAIMS**

Defendant, Peter McKenna ("this Defendant"), hereby responds to Plaintiff AloStar Bank of Commerce's ("AloStar") motion to dismiss the counterclaims [Docket No. 183] (the "Motion") asserted by this Defendant in his Amended Answer [Docket No. 167] (the "Amended Answer").  In support of this response, this Defendant respectfully states as follows:

## Background

The factual background underlying the counterclaims asserted against AloStar by certain defendants, including this Defendant, is set forth in this Court's Order of November 27, 2012.  *See* Docket No. 197; *see also* Amended Answer ¶¶ 98-104, 123-149, 443-451, 454-463, 464-476, 479-485; Graham Answer [Docket No. 176] at pp. 13-22; Wiles Answer [Docket No. 135] ¶¶ 7-14; Yates Answer [Docket No. 179] at 29-50; J. Flom Answer [Docket No. 177] ¶¶ 6-8.  For the reasons set forth below, AloStar's motion should be denied, except that this Defendant is prepared at this time to withdraw, without prejudice, his 3 counterclaims for declaratory relief because of the uncertainty of the current record created by AloStar in its inconsistent statements to this Court, as is described more fully below (*see* pp. 23-25, *infra*).

## Standard of Review on Motion to Dismiss

In order for AloStar to prevail on its Motion, the pleadings must be read most favorably to this Defendant, *Stearns Bank, N.A. v. Shiraz Inv., LLC*, Case No. 8:12-cv-313-T-33, 2012 WL 3133679, at *2 (M.D. Fla. July 31, 2012), and there must be no doubt that under any of the facts and theories plead, AloStar is entitled to dismissal of the claims asserted by this Defendant, *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct.

1309, 1322 n.12 (2011).  This is a heavy burden not easily met at this preliminary stage of the case where no merits discovery has occurred.

**Argument**

**I.     AloStar's "Shotgun" Pleading Argument is Barred by Fed.R.Civ.P. 12(g)(2)**

On September 28, 2012 [Docket No. 132], this Defendant filed his initial Answer to the Amended Complaint, asserting eleven (11) counterclaims against AloStar.   On October 12, 2012 [Docket No. 150], AloStar responded by making a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure (the "Federal Rules" and each individual rule being referred to herein as a "Rule") to dismiss on 3 grounds:  (i) a purported release based on extraneous evidence outside the initial Answer regarding 7 counterclaims; (ii) the fact that one counterclaim for breach of contract was purportedly barred because AloStar claimed it was not alleged to be in writing; and (iii) the prematurity of 3 counterclaims for declaratory relief.   On October 19, 2012 [Docket No. 167], this Defendant filed the Amended Answer, making limited changes to the initial Answer, in an effort to address some of the issues raised in AloStar's first motion to dismiss.

The Motion is thus the *second* motion to dismiss filed by AloStar.  The Federal Rules include provisions designed to prevent the use of successive and incomplete motions to dismiss.  *See* 2 Matthew Bender, MOORE'S FEDERAL PRACTICE (3d ed. 2012) ("Moore's Federal Practice") §§ 12.20 ("Rule 12 includes several provisions designed to prevent a litigant from using a series of motions as a dilatory tactic."), 12.21 ("amending a complaint does not revive omitted defenses or objections that the defendant could have raised in response to the original complaint."); 5C Wright and Miller, FEDERAL PRACTICE

3

AND PROCEDURE (3d ed. 2004) §§ 1384 ("The defendant cannot delay the filing of a responsive pleading by interposing these defenses and objections in piecemeal fashion, but must present them simultaneously.  Any defense that is available at the time of the original motion, but is not included, may not be the basis of a second pre-answer motion."), 1388 ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading[.]").

Rule 12(g)(2) provides that if a "defense or objection that was available to [a] party" was not included in a prior motion to dismiss, it may not be raised in a subsequent motion to dismiss.  Point IV of the Motion is a new request under Rule 12(b)(6) (to dismiss for failure to state a claim).  Those arguments relate to matters that were implicated by this Defendant's initial Answer [Docket No. 132], and which were *not* included in AloStar's original motion to dismiss [Docket No. 150].  Those arguments cannot be now made through the Motion.  Rather, Rule 12(h)(2) provides that such defenses may only be raised, if at all, in:  (i) an answer or responsive pleading as specified in Rule 7(a); (ii) a motion for judgment on the pleadings brought after pleadings are closed, as specified in Rule 12(c); or (iii) at trial.  *See* Fed. R. Civ. P. 12(g)(2), (h)(2); Moore's Federal Practice § 12.23 ("If omitted from the initial motion, those matters may not be raised in a successive Rule 12(b) motion, but may be raised in any Rule 7(a) responsive pleading, in a Rule 12(c) motion for judgment on the pleadings, or at trial.").

4

The relief sought by AloStar through Point IV of the Motion is barred by application of Rule 12(g)(2), and the relief sought by AloStar should be denied.[1]

## II.    AloStar's "Shotgun" Pleading Arguments Should be Rejected on the Merits

Although the relief sought by AloStar in Point IV of the Motion is barred by application of Rule 12(g)(2), the reality of the matter is that even if the relief sought by AloStar were properly before the Court, it should be denied on the merits.

AloStar, without citing any substantive allegation, labels the Amended Answer a "shotgun" pleading by focusing on 2 non-substantive sentences.  The contention that this is a "shotgun" pleading is simply not true as a matter of fact and relevant case law.  The Amended Answer is a well-organized, well-reasoned, well-researched presentation of the claims against AloStar and the other parties it addresses.  *See* Amended Answer ¶¶ 98-104, 123-149, 443-451, 454-463, 464-476, 479-485.

The essence of the interplay among Rules 8, 9, 10, and 12 of the Federal Rules of Civil Procedure and all the legal authority cited by AloStar, is that the party asserting claims must allege sufficient facts to enable the defendant (here, AloStar), to have a fair understanding of the claims asserted against it.

> The point is to give the defendant fair notice of what the claim is and the grounds upon which it rests.  A "shotgun pleading" where it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief does not comply with that standard.

*Peavey v. Black*, 476 Fed. App'x 697 (11th Cir. 2012) (citations and quotations omitted).

---

[1] By making multiple motions to dismiss as to each defendant, AloStar unnecessarily increased the number of matters submitted to the Court for resolution, and sought multiple rulings on issues that impact all defendants.  It would have been more efficient to consolidate the motion practice now taking place on multiple fronts.

DM3\2349738.7

This Defendant's Amended Answer more than satisfies the fair notice standard. AloStar does not seriously contend otherwise.  Rather, AloStar's makes a hyper-technical argument that focuses on essentially just two sentences from the Amended Answer, one being the fact that allegations are stated "upon information and belief" and the other being that the affirmative claims have a "repeat and reallege" introduction.  AloStar's argument avoids discussion of the substantive allegations in the Amended Answer.

AloStar's "repeat and reallege" arguments fail.  The Amended Answer asserts claims against AloStar, 7 Co-Defendants, and 3 Third-Party Defendants based on theories of negligence, professional malpractice, breach of fiduciary duty, failure to keep books and records, failure to produce an accounting, negligent misrepresentation, fraud, RICO, aiding and abetting, and conspiracy.  The claims are asserted with particularity and specificity, are set out separately as to each defendant, including AloStar (*i.e.*, defendants are not "lumped together"), and AloStar cannot credibly contend that it does not understand what the claims are.  Each of this Defendant's counterclaims against AloStar: (i) identifies in its point heading the nature of the claim; (ii) sets forth the specific facts on which it is based; (iii) details the relevant breaches of duty; and (iv) addresses damages.  The elements and facts of each claim are specifically alleged in each individual claim.  Indeed, although AloStar makes hyper-technical "shotgun pleading" arguments, it has not asserted that it does not, in fact, understand the claims against it.[2]

---

[2] The Amended Complaint is built upon the implied concession that hyper-technicality cannot overcome the specificity of allegations because AloStar uses the same practice. Notably, the individual defendants in this action were able to respond to each claim.  *See* Docket Nos. 178, 180, 181.

To the contrary, AloStar's Motion, in and of itself, reveals that AloStar understands the claims and allegations at issue.  *See* Motion [Docket No. 183] at pp. 1 (detailing "seven counterclaims for damages based as alleged pre-FDIC receivership conduct" and an "eighth counterclaim seeking damages for AloStar's purported breach of contract in July 2011"), 13 (detailing counts for damages, declaratory judgment, and breach of contract), 13-15 (detailing allegations, including precise timeframe at issue), 14-15 (detailing *and admitting* that allegations in Amended Answer *escape* application of the extraneous evidence AloStar has submitted, but nonetheless presenting arguments in opposition), 16 (detailing how "the purported July 2011 modification could not have been performed within one year"); *cf.* pp. 1 (AloStar understands allegations well enough to argue that the claims are barred), 3-4 (AloStar understands allegations well enough to argue that the extraneous evidence it offers is "central to [this Defendant's] counterclaims"), 10 (AloStar understands allegations well enough to contend that the claims "were extinguished by FDIC receivership inaction during FIRREA's administrative claim periods."), *id.* (AloStar understands allegations well enough to contend that Article 2.1 (n) of the Purchase and Assumption Agreement is not relevant). AloStar's hyper-technical pleadings-based argument is refuted by its own recitation of the claims asserted against it.  If AloStar truly did not understand the claims against it, it would have raised this issue in its first motion to dismiss.

In substance, AloStar's complaint is simply that this Defendant's pleading is too long.  Yet, AloStar in its Amended Complaint, took 18 pages and 87 paragraphs to assert 2 simple breach of contract claims.  This Defendant has asserted 44 claims against some

7

11 parties on a host of theories.  When compared with AloStar's own pleading and given the complexity and number of claims and parties at issue, the Amended Answer falls well within the norm for length.  The fact that the underlying facts and claims in this case are more complex than AloStar would like is not a basis for dismissal.[3]

The case law in the Eleventh Circuit cited by AloStar focuses on the fact that the individual claims at issue in those cases did not contain the requisite specificity.  That simply is not the case here.  This is not a case where the counterclaim simply repeats and realleges everything that came before it and then says "therefore AloStar is liable" on this claim.  To the contrary, each counterclaim identifies the specific allegations relevant to each counterclaim.  For example, the first counterclaim alleges that Bonifay owed fiduciary duties to this Defendant.  Amended Answer ¶¶ 443, 444.  It alleges the nature and scope of these duties.  *Id*. at ¶ 444.  It details 6 breaches of duty for failure to disclose and/or misrepresentation.  *Id*. at ¶ 445.  It alleges that those breaches were material and tainted all subsequent dealings regarding the loan at issue.  *Id*. at ¶¶ 446, 447.  It alleges that AloStar contractually assumed liability, specifies the contractual language at issue and alleges that this Defendant has been damaged as a result of conduct attributable to AloStar.  *Id*. at ¶¶ 448-52.  There is no guesswork for each counterclaim as they have been set out in the Amended Answer.  Indeed, *AloStar uses this same practice* (*i.e.*,

---

[3] As against defendant J. Flom, AloStar alleges that a "meager 6 pages" and "less than 50 numbered paragraphs" is *too short*.  *See* Docket No. 195 at p. 5.  As against defendant Yates, "nearly 100 paragraphs" is *too long*.  *See* Docket No. 194 at p. 1.  What length of pleading is acceptable to AloStar, who took 87 paragraphs to state two breach of contract claims and, in connection with personal jurisdiction discovery in this case, made in excess of 150 separate demands upon this Defendant, is unclear.

"repeats and realleges") in its own Amended Complaint. *See* Amended Complaint [Docket No. 125] at ¶¶ 81, 89; *see also* Complaint [Docket No. 1] at ¶¶ 62, 70.[4]

AloStar's argument that the Amended Answer is flawed because it states claims "upon information and belief," too, fails. AloStar's complaint is that the requirements of Federal Rule 9(b) are not met when fraud claims are alleged upon information and belief. This argument relates to the one claim for fraud against AloStar in the Amended Answer. *See* Amended Answer ¶¶ 478-486. In essence, AloStar argues that a single footnote using the phrase "upon information and belief" somehow nullifies the detailed factual allegations in the Amended Answer regarding the wrongdoing of its predecessor bank, Bonifay. As the Eleventh Circuit made clear in *West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x 81, 86 (11th Cir. 2008) (*per curiam*):

> To satisfy Rule 9(b)'s "particularity" standard, we generally require that a complaint identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendant gains by the alleged fraud. Furthermore, Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud. *See U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir.2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in [ ] [a] conclusory fashion.... [A] plaintiff is not expected to actually prove his allegations," but it must offer more than "mere conjecture.").

---

[4] Cases cited by AloStar stand for the proposition that leave to file an amended pleading is the appropriate remedy, if necessary. *See*, *Roundtree v. Countrywide Home Loans, Inc.*, Case No. 3:09-cv-189, 2009 WL 5215334, at *5-6 (M.D. Fla. Dec. 29, 2009).

*See also Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (RICO context); *Nichols v. W.M. Wrigley Jr. Co*., Case No. 10-80759-CIV, 2011 WL 181458, at *1-3 (S.D. Fl. Jan 19, 2011).

As the Eleventh Circuit's analysis recognizes, and the court made plain in *United States v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1040 (S.D. Ga. 1990) ("*Blue Cross*"), Rule 9(b)'s requirements of particularity "must be read in harmony with Rule 8's directive[s]" and "[i]n the usual case, '[t]o pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation.'" *Id*. at 1051-52. Where facts are "peculiarly within the defendant's knowledge or control, rule 9(b)'s requirement is relaxed somewhat." *Blue Cross*, 755 F.Supp. at 1052. In such cases, allegations stated upon information and belief are sufficient "on one condition: the 'complaint must adduce specific facts supporting a strong inference of fraud[,]" and "[t]hese facts must amount to more than 'mere suspicion that a fraud may have occurred.'" *Blue Cross*, 755 F. Supp. at 1052. To meet that standard, the "supporting facts on which the belief is founded must be set forth in the complaint" and "the complainant must be able to connect the allegations of fraud to the defendant." *Blue Cross*, 755 F. Supp. at 1052 (citations omitted and quotations altered).

The fraud counterclaim at issue alleges that Bonifay was aware of material facts and had a duty to disclose those material facts, but did not. *See* Amended Answer ¶¶ 479-81. The material facts were contained in the 2005 Appraisal and related to valuation. *Id*. at ¶¶ 101, 129-37. Thus, the "precise statements, documents or misrepresentations made" are set out with particularity, as is "the time and place of and persons responsible

10

for the statement" and "the content and manner in which the statements misled the plaintiff."  The Amended Answer also alleges that Bonifay's misrepresentations enabled it to obtain personal guaranties from the individual defendants in this action, which Bonifay would not otherwise have been able to obtain.  *Id*. at ¶¶ 141-44.  Specific facts are alleged, the 2005 Appraisal is identified and discussed, the relevant timeframes are identified, and the allegations are not set out in a conclusory manner.  Thus, the four prongs of the analysis required by *West Coast Roofing and Waterproofing*, *supra*, are met.  The specificity of the allegations in the Amended Answer gives rise to a strong inference of fraud.  Any additional specifics to be uncovered can only be gained through merits discovery and can only come from documents and information solely within the control of AloStar and/or individuals other than this Defendant.  The arguments in Point IV of the Motion should be rejected.

III.    **AloStar's Motion to Dismiss Should be Denied Because it Relies Upon Extraneous Evidence Beyond the Pleadings, or Should be Converted to a Motion for Summary Judgment and a Briefing Schedule Set by the Court**

Through the Motion (Points III and VI), AloStar has reached beyond the pleadings and seeks to introduce extraneous evidence into a pleadings-based motion.  By Order entered on November 27, 2012 [Docket No. 197], the Court denied an identical motion to dismiss by AloStar as against counterclaims asserted by defendant Wiles.  This Defendant respectfully submits that the same result is warranted here.

AloStar's Motion relies upon documents that are not referenced in this Defendant's Amended Answer, and AloStar does not seriously argue to the contrary.  AloStar's argument relies in large part upon language that was used in a prior pleading of

this Defendant that has since been amended and is not relevant in the context of the Motion.  *See* Motion, p. 3.  AloStar effectively concedes that this Defendant's core contention in this action is as follows: because of misrepresentations and other wrongdoing that took place in connection with the underlying loan that closed in or about December 2005 and the 2005 Appraisal, everything that followed is tainted.  *See* Motion at pp. 3-4.  The documents AloStar seeks to introduce into evidence,[5] some of which are not even executed by this Defendant and all of which did not exist until years after the documents at issue on this Defendant's counterclaims were created, have nothing to do with this Defendant's claims.  *See* Order [Docket No. 197] at pp. 5-6.

There are both procedural and substantive flaws in AloStar's analysis.

First, as a matter of procedure, the manner in which AloStar has sought relief is improper.  If the Court considers the extraneous evidence offered by AloStar, Rule 12(d) requires that the Motion be converted to a motion for summary judgment under Rule 56 and that all parties be given a reasonable opportunity to submit all materials pertinent to the motion.  *See* Fed. R. Civ. P. 12(d), 56.  Rule 56, in turn, implicates Supreme Court precedent which counsels that motions for summary judgment should not be granted in the absence of discovery, which has not occurred here.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Lakeland Reg. Med. Ctr., Inc. v. Astellas U.S. LLC*, Case No. 8:10-cv-2008-T-33TGW, 2011 WL 3035226, at *3 (M.D. Fla. July 25, 2011).[6]

---

[5] The documents presented by AloStar are not in admissible form and are not supported by an affidavit.  This Defendant objects to Exhibits A and B to the Motion being admitted into evidence, and requests that Point VI of the Motion be denied on this basis.

[6] *See also Crosslink Ortho., LLC v. Synth. Spine Co., Ltd.*, Case No. 7:07-cv-59, 2007 WL 3333342, at *3 (M.D. Ga. Nov. 9, 2007) ("a party does not need to file an affidavit to

Rule 56 also implicates the Court's local rules requirements concerning, *inter alia*, the submission of statements of genuinely undisputed material fact.  AloStar has made no effort to satisfy any of those requirements.  Local rule 56.1(A) provides:

> Any motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 [*or Fed. R. Civ. P. 12(b)(6) which requires reference to matters outside the pleading*] shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  *Failure to submit such a statement constitutes grounds for denial of the motion*.

> The statement shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source.

Rule 56.1(A), Local Rules for the United States District Court, Northern District of Florida (emphasis supplied) (internal bracketing included in local rule).

Second, beyond these procedural shortcomings, the pertinent legal authorities reflect that in order to introduce evidence outside the pleadings at this preliminary stage, the documentary evidence being injected into the proceedings must be (i) "relationship-forming" documents that are (ii) at the core of the claims asserted.  *See* Order [Docket No. 197] at p. 5 and cases cited therein.

The documents AloStar seeks to inject into the Motion are not at the core of the claims asserted by this Defendant, are not referred to in this Defendant's Amended Answer, and are not central to any of this Defendant's claims.  Rather, the documents are

---

invoke the protection of Rule 56(f) [*now Rule 56(d)*] and that if the attorneys represent that they need to conduct discovery in order to adequately respond to the motion for summary judgment, then that is sufficient under the rule.").  Here, this Defendant's counsel represents that discovery is necessary for the issues raised by AloStar's Motion, including whether the 2009 Modification supplied by AloStar is unenforceable for fraud.

instead documents created in 2009, four years after the "relationship forming documents" were generated in 2005. It is the 2005 relationship-forming documents that are central to this Defendant's claims. *See generally* Order [Docket No. 197].

In any event, even if the Court were to consider this document, this Defendant, and the other defendants in this action, have plead sufficient facts that, if ultimately proven, will render unenforceable the documents relied upon by AloStar.

Releases are not enforceable where the wrongdoing was not discovered until *after* the release was executed. In *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours and Co.*, 761 So. 2d 306 (2000), for example, the Supreme Court of Florida addressed whether releases barred claims where facts and claims were concealed and misrepresented to the releasing party. *Id*. at 308-9. The court held that "Florida law does not bar the . . . fraudulent inducement claims" that were based on the claims and facts that were concealed and misrepresented. *Id*. at 316; *see also Malakul v. Altech Ark., Inc*., 298 Ark. 246, 251-52 (1989). Indeed, in *Malakul*, the court stated:

> Misrepresentations amounting to fraud may be shown to set aside a release. It has also been held plaintiffs are entitled to assert the fraud they claim in the entire transaction fatally infects the release upon which the defendants rely. Here, Kusuma testified that when he signed the release, he still believed [the misrepresentations]. In short, these misrepresentations, and others, typified the entire transaction or venture which also led to Kusuma signing the release now in issue. Thus, the evidence supports the view that the release was fatally infected by the Malakuls' overall fraudulent scheme, and we believe the chancellor was correct in deciding the release was not a valid settlement of the claims[.]

*Malakul*, 298 Ark.at 251-2.

The holdings of *Mazzoni* and *Malakul* are also particularly relevant here for two additional reasons. First, the fraud at issue in this case was only uncovered at or about

14

the time that this action was commenced.  When the document relied upon by AloStar was executed, a lawsuit had not been commenced and the parties were not in an adversarial posture.  The claims of fraud set out in this Defendant's amended answer were not mature, and were not known to this Defendant, until years after execution of the document relied upon by AloStar.  *See Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 377-378 (2007) (noting distinction between mature claims of fraud and claims for fraud whose existence is unknown at the time a release is executed).  Second, the failure to disclose, misrepresentations and/or concealment in this case was accomplished by and/or through fiduciaries that owed duties to this Defendant.[7]  *See Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 371-374 (2007).  As the court found in *Coughlin*:

> The intent of Coughlin[, a fiduciary,] to fraudulently induce the signing of the [document] and the justifiable reliance by Wal-Mart on those documents are critical issues in this case and material issues of fact for the jury to decide.

*Id*. at 379.

The holdings of *Mazzoni*, *Coughlin*, and *Malakul* are consistent with Florida's long-standing principle of law that releases can be set aside for fraud.  *See Fl. East Coast Ry. Co. v. Thompson*, 93 Fla. 30, 34-5 (1927) ("The court will not hesitate to set aside and avoid a release [procured by fraud]"); *Winter Park Tel. Co. v. Strong*, 130 Fla. 755, 764 (1938); *see also HR Mktg, Inc. v. ROI Netw., L.L.C.*, 927 So. 2d 972, 973 (4th DCA 2006); *17070 Collins Ave. v. Granite State Ins. Co.*, 720 So. 2d 1132, 1133-34 (3d DCA

---

[7]  This Defendant has alleged that the banks at issue in this action, and Defendant Levine, owed this Defendant fiduciary duties and breached those duties.  This Defendant has also alleged that the banks used Defendant Levine – a known fiduciary – as the go-between for the negotiation and execution of all documents at issue in this action.

1998).  Here, in addition to fraudulent concealment, fraud in the inducement, and breach of fiduciary, there are allegations of unconscionability, economic duress, undue influence, and unilateral/mutual mistake of fact, all directly attributable to AloStar's predecessor and/or through allegations of aiding and abetting and conspiracy, and for which AloStar expressly assumed liability.  *See* Amended Answer, pp. 48-52 (affirmative defenses), pp. 12-48 (allegations) [Docket No. 167].  These claims, if proven, will render the documents proffered by AloStar unenforceable on the merits.

AloStar's Motion attempts to achieve summary judgment without complying with Rule 56, without any effort to comply with Local Rule 56.1(A), and without affording the defendants in this action an opportunity to undertake merits discovery.   AloStar is seeking to enforce a release through a pleadings-based motion when, on the merits, that very same release may be rendered unenforceable.  This Defendant respectfully submits that the arguments in Points III and VI of the Motion should be rejected.

**IV.    AloStar's Reliance Upon the FDIC Administrative Claims Process Fails.**

AloStar argues that the Federal Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") bars this Defendant's counterclaims regardless of the fact that when AloStar purchased the loan at issue from the FDIC, it assumed the liabilities associated with that loan: AloStar contractually assumed Nexity's liability for "*all asset-related offensive litigation liabilities and all asset-related defensive litigation liabilities*".  AloStar's efforts to avoid the liabilities it expressly assumed by contract must fail.

FIRREA enables the FDIC to sell the assets of failed financial institutions.  The statute puts in place a framework through which the FDIC can transfer either or both of

the assets *and* liabilities of failed financial institutions, and puts in place a claims process to resolve claims against the failed financial institution that remain with the FDIC. Claims against the failed institution that are expressly assumed by the purchaser become liabilities of the purchaser because, by contract, the purchaser has agreed to be held accountable for those liabilities, lessening the claims burden on the FDIC (and achieving a lower purchase price for the purchaser).  Here, AloStar is the purchasing institution.

The relevant statute is 12 U.S.C. § 1821(d)(2)(G)(i)(II), which provides:

> (G) Merger; transfer of assets and liabilities
>
>  (i) In general
>
>  The Corporation may, as conservator or receiver –
>
> * * *
>
>  (II) subject to [Federal banking agency approval], transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer.

12 U.S.C. § 1821(d)(2)(G).

In *Caires v. JPMorgan Chase Bank*, 745 F. Supp. 2d 40 (D. Conn. 2010), the court noted that under section 1821(d)(2)(G)(i)(II), "the FDIC is empowered to determine which assets and liabilities of a failed bank are to be sold and transferred, and which assets it should keep." *Id*. at 48.  The court considered the interplay between (i) section 1821(d)(2)(G)(i)(II), (ii) the terms of the contract through which assets and liabilities can be transferred to a purchasing institution, and (iii) the administrative claims process established by the statute.  The court stated:

> It is this intermediate step, the FDIC's ability to designate specific assets and liabilities for purchase and assumption that reflects a distinction between the FDIC and a subsequent purchaser, and why a subsequent purchaser *does not necessarily* benefit from the FDIC's claim exhaustion

17

> process.  Instead a Court *should look to the purchase and assumption agreement governing the transfer of assets* between the FDIC and a subsequent purchaser of assets of a failed bank to *determine which assets and corresponding liabilities are being assumed*.  Absent a transfer of liability by the FDIC and assumption of liability by a subsequent purchaser, such as Chase, the liability remains with the FDIC and subject to the claim exhaustion process.

*Id.* at 48-9 (emphasis supplied).  In other words, when a purchasing institution assumes liabilities of the underlying failed bank, those claims are not routed to the FDIC claims process as AloStar contends.

The court used the same analytical framework in *Front St. Constr., LLC v. Col. Bank, N.A.*, Case No. 10 CVS 15759, 2012 WL 1669721 (Sup. Ct. N.C., May 11, 2012).  In *Front St.*, the court reviewed a number of decisions from other courts that involved analysis of the FDIC claims process and the specific terms of the purchase and assumption agreement between the purchasing institution and the FDIC.  *Id.* at *6-9.  Citing *Caires* and other decisions, the court concluded:

> Here, the court is persuaded to follow the rationale of those cases in which other courts reviewed the purchase and assumption agreement between the FDIC and the successor bank to determine which assets and corresponding liabilities were assumed.  Those assets and liabilities that have been expressly assumed shall not be subject to FIRREA or its exhaustion requirements, and the court will have subject matter jurisdiction over those claims relating to those assets and liabilities.  However, the FDIC retains all liability for those assets and liabilities not assumed.  Any claim relating [to] the retained assets and liabilities must be brought before the FDIC, subject to the exhaustion requirements of FIRREA.

*Id.* at *8.

A number of other courts have utilized the same analytical framework in assessing whether the FDIC claims process is applicable.  *See Rockwell v. Chase Bank*, Case No. C 10-1602, 2011 WL 2292353, at *4 (W.D. Wash. June 7, 2011) ("FIRREA's

18

exhaustion of remedies requirement applies unless plaintiff can demonstrate that the FDIC expressly transferred liability for pre-receivership borrower claims to the subsequent purchaser.  Here, no such transfer took place.  Under Article 2.5 of the September 2008 P&A, defendant expressly did *not* assume any liability for claims 'related in any way to any loan or commitment to lend by [WaMu] prior to failure.'") (internal citation omitted); *Rundgren v. Wash. Mut. Bank*, Case No. 09-00495, 2010 WL 4960513, at *1, 4-5 (D. Haw. Nov. 30, 2010) (analyzing purchase agreement); *Federici v. Monroy*, Case No. 09-4025, 2010 WL 1345276, at *2-3 (N.C. Ca. April 6, 2010) (dismissing claims after reviewing purchase agreement and finding that liability "was explicitly not assumed by [purchaser]"); *Moldenhauer v. FDIC*, Case No. 2:09-CV-00756, 2010 WL 1064422, at *1-2 (D. Ut. March 18, 2010) (claims process applied only after analyzing contract and concluding that the purchasing institution "expressly did not assume" the liabilities at issue); *see generally*, *Wachovia Mortg. v. JPMorgan Chase Bank, N.A.*, Case No. CV116020437S, 2012 WL 898816, at *4 (Conn. Sup. Ct., Feb 27, 2012) (discussing *Caires* and analysis of agreement).

The analytical framework set out in *Caires* makes sense in the context of the statutory framework put in place through FIRREA.  AloStar argues that by operation of several subsections of 12 U.S.C. 1821(d), *all* claims relating to liabilities of AloStar's failed bank predecessors are barred.  *See* Motion at pp. 8-9.  Yet, in 12 U.S.C. §1821(d)(2)(G)(i)(II), the very same statute expressly permits the FDIC to "transfer any . . . liability of the institution in default" to a purchaser such as AloStar.  It makes no sense to read these statutes as providing that liabilities *can* be transferred, and expressly

*authorizing* the FDIC to *affirmatively transfer* those liabilities, but at the same time providing that *claims* based on those liabilities are nonetheless barred, even if they *were*, in fact, transferred.  If that were the case, there would be no "liability" to be transferred. In effect, AloStar's argument renders 12 U.S.C. §1821(d)(2)(G)(i)(II) superfluous and writes portions of the statute out of existence.  The analysis set out in *Caires* and the cases cited above reads the statutes in harmony, whereas AloStar's arguments violate several fundamental rules of statutory construction.  *See*, *e.g.*, *Corley v. United States*, 556 U.S. 303, 314-15 (2009) ("one of the most basic interpretive canons [is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'").  AloStar's arguments, which read the administrative claims provisions in isolation and to the exclusion of the "transfer of liability" provisions in FIRREA, rendering those provisions superfluous and without meaning, must be rejected.

Close analysis reveals that the cases cited by AloStar are not to the contrary.  In *Grady v. Bank of Elmwood*, Case No. CV11-2060, 2012 WL 3228834, at *2 (D. Ariz. Aug. 6, 2012), the court noted at the outset of its decision that the purchasing institution "did not explicitly assume in the Purchase and Asset Agreement with the FDIC" any liability for the claims at issue.  The entire decision is premised on that finding.  *See id.* at *4 ("[the purchasing institution] assumed only the liabilities explicitly listed in Article 2 of the P&A Agreement.").  *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207 (9th Cir. 2012), did not even involve the analysis of a purchase and assumption agreement.  In *Benson*, the arguments were based upon common law successor-in-interest theories

alone.  There is not a single mention, let alone discussion, of a contract-based assumption of liability or disclaimer or liability.  *Grady* and *Benson* are inapplicable here.

*Aber-Shukofsky v. JPMorgan Chase & Co*., 755 F. Supp. 2d 441, 446-49 (E.D.N.Y. 2010), also cited by AloStar, relies upon *Benson*, *supra*, and did not involve a contractual assumption of liability provision.  *Aber-Shukofsky,* too, addressed common law "successor-in- interest" theories alone, separate and apart from contract-based transfers of liability as are expressly contemplated and authorized by 12 U.S.C. § 1821(d)(2)(G)(i)(II).[8]   Indeed, in *Front Street*, *supra*, the Court distinguished *Aber-Shukofsky* based upon the fact that in *Aber-Shukofsky*, "[t]he plaintiff did not contend that the successor bank had expressly assumed the liabilities at issue in the case."  *Front Street*, 2012 WL 1669721, at *6.  The primary case cited by AloStar, *Stearns Bank, N.A. v. Burnes-Leverenz*, Case No. A11-1868, 2012 WL 3023405, at *5 (Ct. App. Minn. July 23, 2012), is inapplicable here for the same reason.  *Stearns* relies upon *Aber-Shukofsky. Id*. at *5.  *Stearns* contains no analysis or even mention of an express contract-based assumption of liability provision.  Rather, *Stearns* addresses the same generic, common law successor-in-interest theories that were addressed by the court in *Aber-Shukofsky*. *Stearns*, like *Aber-Shukofsky*, is inapplicable here.

Merits-based discovery is underway.  This Defendant has sought discovery from AloStar regarding the purchase and assumption agreement through which AloStar admits,

---

[8] The claims in *Aber-Shukofsky* were by former bank employees for "alleged violations of the Fair Labor Standards Act . . . and related state wage and labor laws[,]" 755 F. Supp. 2d at 443, and were based upon common law successor in interest theories that are entirely different from the asset-based contractual assumption of liability at issue here.

in its Amended Complaint [Docket No. 125] at ¶ 40, AloStar purchased the loan at issue here.  AloStar has not yet responded to this Defendant's requests for production.

Through the FDIC's website, the sale document is available, with redactions.  *See http://www.fdic.gov/bank/individual/failed/nexity_p_and_a.pdf*.   The document is entitled:  "PURCHASE AND ASSUMPTION AGREEMENT WHOLE BANK ALL DEPOSITS".  *See id*. at p. 1.  Article II of the Purchase and Assumption Agreement is entitled "Assumption Of Liabilities" and section 2.1 of Article II details how AloStar "agree[d] to pay, perform and discharge, all of [certain listed] liabilities of the Failed Bank" (i.e., Nexity Bank), and section 2.1(n) states that the liabilities for which AloStar is expressly liable include "*all* asset-related *offensive litigation liabilities* and *all* asset-related *defensive litigation liabilities*," to the extent those liabilities "relate to assets subject to a Shared-Loss Agreement".  *See id*. at pp. 9, 10 (emphasis supplied).[9]  The loan and guaranties at issue in this lawsuit are assets purchased by AloStar and which are subject to a shared-loss agreement, and AloStar expressly assumed liability for the counterclaims asserted by this Defendant.  In the context of this pleadings-based Motion, this Defendant submits that the arguments in Point V of the Motion should be rejected.

## V.   AloStar's "No Oral Modification" and Statute of Frauds Arguments Fail

AloStar argues that this Defendant's eighth counterclaim for breach of contract must be dismissed for two reasons.  Both arguments effectively ignore the allegations set out in the Amended Answer and should be rejected.

---

[9] Notably, the AloStar agreement does *not* contain the *disclaimer* of assumption of liabilities addressed in the cases cited above.  *See, e.g., Caires*, 745 F. Supp. 2d at 49 (quoting Article 2.5); and compare *id*. with *http://www.fdic.gov/bank/individual/failed/ nexity_p_and_a.pdf* at pp. 9-11 (*does not contain* an Article 2.5).

First, AloStar argues that the terms of a 2009 Modification agreement required that "any further modification was required to be in writing."  *See* Motion at p. 15.  This Defendant has alleged that the terms of a contract were agreed upon, identifies the specific terms, and alleges that those terms "were memorialized in electronic communications and writings."  *See* Amended Answer ¶ 209; *see also id*. at ¶ 213.  This Defendant does *not* allege that prior agreements such as the 2009 Modification were "modified"; to the contrary, a new and separate agreement is alleged.   AloStar's arguments are based on a clear distortion of the allegations contained in the Amended Complaint.  AloStar's arguments cannot withstand scrutiny.

Second, AloStar's statute of frauds argument fails for the same reason.  Sufficient detail alleging the terms of agreement are alleged.  *See* Amended Answer ¶ 214.  Whether a valid and enforceable agreement was achieved is a question that can only be determined on the merits after discovery has been undertaken.  AloStar and possibly individual defendants in this action (other than this Defendant) are in exclusive control of the documents and information necessary to resolve these claims on the merits.

For each of the foregoing reasons, AloStar's arguments in Point VII of the Motion should be rejected.

## VI.   AloStar's Argument That Jurisdiction is not Present Over This Defendant's Declaratory Judgment Counts Fails

In *Medimmune, Inc. v. Genentech, Inc*., 549 U.S. 118 (2007), the Supreme Court described the case or controversy requirements under the Declaratory Judgment Act:

> [*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937)] and the cases following it do not draw the brightest of lines between those declaratory judgment actions that satisfy the case-or-

controversy requirement and those that do not. Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.*, at 240–241, 57 S. Ct. 461. In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L.Ed. 826 (1941), we summarized as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Id.* at 126-127. The threat of legal proceedings, in and of itself, can give rise to circumstances that satisfy the case or controversy requirement. *HIS IP, Inc. v. Champion Window Manuf. & Supply Co., Inc.*, 510 F. Supp.2d 948, 956 (M.D. Fl. 2007).

This Defendant's 3 declaratory judgment counterclaims are based on the *D'Oench* doctrine. Because there is a split in authority on the continued viability of the doctrine in cases such as this one, the FDIC requires AloStar to obtain FDIC approval before AloStar can rely on the doctrine. These counterclaims were prompted by AloStar's own statements in a motion to dismiss addressed to another defendant. On August 14, 2012, AloStar stated, without qualification or limitation, that the issues addressed by this Defendant's counterclaims for declaratory relief were, in fact, at issue in this case:

> AloStar believes it may properly assert certain specialized defenses, including the doctrine of *D'Oench, Duhme*, 315 U.S. 447 (1942), and 12 U.S.C. § 1823(e), resulting from AloStar's acquisition of the Indebtedness from the Federal Deposit Insurance Corporation, as receiver.
>
> AloStar has begun the process of obtaining the necessary regulatory approvals to invoke these principles in the instant litigation, and anticipates utilizing this and other grounds as bases for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

> AloStar believes judicial economy would best be served by filing a comprehensive motion to dismiss within forty-five days from the current due date for a responsive pleading . . . .
>
> Otherwise, AloStar must proceed in a piecemeal fashion by filing a motion to dismiss addressing less than all grounds, awaiting the Court's ruling, and then filing a subsequent Fed. R. Civ. P. 12(c) motion for judgment on the pleadings after all regulatory approvals are obtained.

Docket No. 97 at ¶¶ 2-5.   Based upon AloStar's prior pleadings, this Defendant anticipated that AloStar would be relying on the doctrine in this action.

However, through the instant Motion, AloStar now argues that issues relating to the *D'Oench* doctrine are premature.[10]  This implies that AloStar has either not sought or not yet obtained FDIC approval, or that it has not yet decided to assert the doctrine. Accordingly, in view of the current state of the record and its uncertainty, this Defendant will at this time withdraw these three (3) counterclaims [¶¶ 515-531], and their supporting allegations [¶¶ 182-206, 258-290, 299-305], without prejudice to his seeking leave to reassert them.

---

[10] This Defendant respectfully submits that AloStar's prior actions in this case reveal that there "is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality" to satisfy the case or controversy requirement.

**Conclusion**

WHEREFORE, for the reasons set forth above, this Defendant respectfully requests that the Court (i) deny AloStar's Motion, and (ii) grant such other and further relief as is necessary and just.

Dated: December 4, 2012                        Respectfully submitted,

                                               **/s/ Kevin E. Vance**
                                               Kevin E. Vance
                                               Florida Bar No. 0670464
                                               kevance@duanemorris.com
                                               DUANE MORRIS LLP
                                               Suite 3400
                                               200 South Biscayne Boulevard
                                               Miami, Florida  33131
                                               Tel: (305) 960-2200
                                               Fax: (305) 960-2201
                                               Counsel for Defendant, Peter McKenna
                                                        -and-
                                               John Dellaportas, Esquire
                                               New York Bar No. 2688976
                                               dellajo@duanemorris.com
                                               Kevin P. Potere, Esquire
                                               New York Bar No. 4729109
                                               kppotere@duanemorris.com
                                               DUANE MORRIS LLP
                                               1540 Broadway
                                               New York, New York  10036
                                               Tel: (212) 692-1000
                                               Fax: (212) 692-1020
                                               Counsel for Defendant, Peter McKenna

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of December, 2012, I electronically filed the foregoing document with the Clerk of the Court pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of this Court by using the CM/ECF System which will send notice of the electronic filing and complete service of the foregoing to:

George R. Mead, Esquire
Florida Bar No. 096490
emead@mhw-law.com
Yancey Frank Langston, Esquire
ylangston@mhw-law.com
Moore, Hill & Westmoreland PA
Ninth Floor, SunTrust Tower
220 West Garden Street
Post Office Box 13290
Pensacola, Florida  32591-3290
Tel: (850) 434-3541
Fax: (850) 435-7899
Counsel for Plaintiff

William K. Whitner, Esquire
Georgia Bar No. 756652
kwhitner@paulhastings.com
Eric D. Stolze, Esquire
Georgia Bar No. 425966
ericstolze@paulhastings.com
Paul Hastings LLP
Suite 2400
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2222
Tel: (404) 815-2400
Fax: (404) 815-2424
Counsel for Plaintiff

Sara Fitzpatrick Reynolds, Esquire
sreynolds@andersonreynolds.com
Anderson & Reynolds, PLC
Suite 225
3100 West End Avenue
Nashville, Tennessee  37203
Tel: (615) 942-1700
Fax: (615) 942-1701
Counsel for Defendant, Jason R. Flom

Lawrence Keefe, Esquire
lkeefe@kagmlaw.com
Ralph Hamilton Schofield, Jr., Esquire
rschofield@kagmlaw.com
Alfred Benjamin Gordon, III, Esquire
bgordon@kagmlaw.com
Keefe, Anchors, Gordon, etc.
Suite 100
2113 Lewis Turner Boulevard
Fort Walton Beach, Florida  32547
Tel: (850) 863-1974
Fax: (850) 863-1591
Counsel for Defendants,
Herbert L. Graham and Dwight P. Wiles

Jonathan T. Holloway, Esquire
Florida Bar No. 627763
jholloway@okaloosalaw.com
Holloway Law Firm, P.A.
369 N. Main Street
Crestview, Florida  32536
Tel: (850) 398-6808
Fax: (850) 398-6809
Counsel for Defendant, James C. Stroud

Cynthia McKenzie, Esquire
cmckenzie@mckenziejacksonlaw.com
McKenzie Jackson PLC
Suite 1130
201 Fourth Avenue North
Nashville, Tennessee  37219
Tel: (615) 873-5670
Fax: (615) 873-5671
Counsel for Defendants, Elliot H. Levine and GLS Florida Property 2, LLC

28

John A. Christy, Esquire
Georgia Bar No. 125518
jchristy@swfllp.com
Andrew J. Lavoie
Georgia Bar No. 108814
alavoie@swfllp.com
Schreeder, Wheeler & Flint, LLP
Suite 800
1100 Peachtree Street
Atlanta, Georgia  30309
Tel: (404) 681-3450
Fax: (404) 681-1046
Counsel for Defendant, Elizabeth Yates

Robert Anthony Emmanuel, Esquire
rae@esclaw.com
Emmanuel Sheppard & Condon
30 S. Spring Street
Pensacola, Florida  32502
Tel: (850) 433-6581
Fax: (850) 429-0492
Co-Counsel for Defendant, Elizabeth Yates

Edward M. Mullins, Esquire
emullins@astidavis.com
Florida Bar No. 863920
Astigarraga, David Mullins & Grossman, P.A.
16th Floor
701 Brickell Avenue
Miami, Florida  33131
Tel: (305) 372-8282
Fax: (305) 372-8202
Counsel for Defendants,
Earle Yaffa and Ronald J. Weiss, as Executors of the Will of Joseph Flom

Gregory D. Smith, Esquire
Florida Bar No. 366511
gdsmithlaw@aol.com
Gregory D. Smith, P.A.
Suite A
201 South Baylen Street
Post Office Box 12853
Pensacola, Florida  32501/32591
Additional Counsel for GLS Florida Property 2, LLC

29

Mark M. Heinish, Esquire
Florida Bar No. 987255
mark@shendellpollock.com
Shendell & Pollock, P.L.
Suite 150
2700 North Military Trail
Boca Raton, Florida  33487
Tel: (561) 241-2323
Fax: (561) 241-2330
Counsel for Elliot H. Levine