**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

| | |
|---|---|
| **ALOSTAR BANK OF COMMERCE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **GLS FLORIDA PROPERTY 2, LLC; JASON** ) | **CASE NO.** |
| **R. FLOM; HERBERT L. GRAHAM; GLENN** ) | |
| **W. JOHNSONB, III; ELLIOT H. LEVINE;** ) | **5-11-cv-00406-RS-GRJ** |
| **PETER MCKENNA; JAMES C. STROUD;** ) | |
| **DWIGHT P. WILES; ELIZABETH YATES;** ) | |
| **and ROGER S. AARON, EARLE YAFFA,** ) | |
| **and RONALD J. WEISS, as Executors of the** ) | |
| **Estate of Joseph Flom,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **JASON R. FLOM; HERBERT L. GRAHAM;** ) | |
| **GLENN W. JOHNSON, III; ELLIOT H.** ) | |
| **LEVINE; JAMES C. STROUD; DWIGHT P.** ) | |
| **WILES; and ELIZABETH YATES,** ) | |
| ) | |
| **Cross-Claim Defendants.** ) | |
| _____ ) | |
| **PETER MCKENNA,** ) | |
| ) | |
| **Third-Party Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **RONALD E. GILLEY; RONALD GILLEY** ) | |
| **PROPERTIES, LLC; and SUNSOUTH** ) | |
| **BANK,** ) | |
| ) | |
| **Third-Party Defendants.** ) | |
| _____ ) | |

1

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO SET ASIDE ENTRY OF DEFAULT

COMES NOW SunSouth Bank ("SunSouth"), one of the third-party defendants herein, for its Memorandum in Support of Its Motion to Set Aside Entry of Default against SunSouth, submits the following.

## FACTUAL BACKGROUND

1.      Based upon McKenna's Amended Answer, Counterclaim and Third Party Claim ("McKenna Claim") this action arises out of a series of transactions involving a loan to GLS Florida Property 2, LLC ("GLS") and an alleged fraudulent real estate investment scheme by Ronald E. Gilley ("Gilley"), Elliot Levine ("Levine") and Gary Smith, deceased ("Smith").   SunSouth had no involvement in the GLS transactions.

2.      Levine, Dwight P. Wiles ("Wiles"), Herbert L. Graham ("Graham"), James C. Stroud ("Stroud"), Jason R. Flom ("Flom"), Earle Yaffa and Ronald J. Weiss, as Executors of the Estate of Joseph Flom (the "Flom Estate") (Flom and the Flom Estate collectively referred to as the "Floms") and Elizabeth Yates ("Yates"), co-guarantors of the AloStar loan and defendants herein, are also parties to related litigation in which these defendants claim that Gilley, Levine and Smith perpetrated the same fraud in connection with a real estate investment involving

2

NashYork, LLC ("NashYork").  The two related actions (the "NashYork Actions")
are styled:

      a.    <u>Earle Yaffa and Ronald J. Weiss, as Executors of the Estate of Joseph Flom, Jason Flom, Elizabeth Yates and Herbert L. Graham vs. SunSouth Bank, Ronald E. Gilley and Ronnie Gilley Properties, LLC</u>, Case No. 3:12-cv-288-MCR-CJK pending in the United States District Court for the Northern District of Florida, Pensacola Division; and

      b.    <u>SunSouth Bank vs. NashYork, LLC, Dwight P. Wiles, James C. Stroud, Herbert L. Graham and Elliot Levine</u>, Case No. 5:13-cv-00046-RS-EMT pending in the United States District Court for the Northern District of Florida, Panama City Division

3.    This collection action was commenced by AloStar on December 16, 2011.  On September 28, 2012, McKenna filed an Answer, Counterclaim and Third Party Claim in which he purported to join Ronnie Gilley ("Gilley") and Ronnie Gilley Properties, LLC ("RGP") as alleged co-conspirators in the GLS scheme.  (Doc. #132).  The Docket shows that McKenna withheld service on Gilley and RGP until February of 2013.

4.    On October 19, 2012, McKenna filed an Amended Answer, Counterclaim and Third Party Claim in which he purported to join SunSouth Bank as alleged co-conspirator in the GLS scheme in which SunSouth was not involved. (Doc. #167).

5.     The Docket shows that rather than serve the McKenna Claim upon Gilley, RGP and SunSouth, McKenna again held service for another two and one half months on SunSouth and for another four months on Gilley and RGP.

6.     On December 11, 2012, while McKenna was holding service, this Court entered a Mediation Order at the request of McKenna.  (Doc. #205).  This Court required McKenna to mail the Mediation Order to all third party defendants "immediately."   (See Doc. #205).   The parties were required to contact the mediator by December 14, 2012.

7.     McKenna did not give SunSouth immediate notice of the Mediation Order.   Over a week later, on December 19, 2012, McKenna emailed to SunSouth's counsel the Mediation Order and the McKenna Claim.  See Exhibit B attached hereto.

8.     McKenna's email falsely claimed that SunSouth had been served on December 18, 2012.  See Exhibit B.  SunSouth's counsel checked and there had been no service upon SunSouth.

9.     Shortly after December 19, 2012, SunSouth's counsel spoke with McKenna's counsel about the McKenna Claim, the lack of service and the mediation.  Counsel discussed the background of the Gilley, Levine and Smith

fraudulent scheme alleged by McKenna and the false allegations concerning the following:

a.   The owners of SunSouth did not control Bank of Bonifay when it made the loan to GLS in late 2005.  (Doc. #167, McKenna Claim, ¶¶ 220-221.

b.   SunSouth had no involvement in the Gilley, Levine and Smith scheme related to GLS and to NashYork that was consummated in late 2005 and February of 2006 and financed by Bank of Bonifay and by SunTrust Bank in Nashville.  SunSouth did not loan money to NashYork until December of 2006, ten months after the scheme had been consummated.

c.   McKenna alleges that part of the scheme was to obtain 100% financing for GLS in 2005 apparently by representing to the Bank of Bonifay that the investors had invested substantial equity ($6,000,000) in GLS.  (Doc. #167, McKenna Claim, ¶¶ 100-102).  SunSouth was not aware of and apparently was also a victim of the fraudulent scheme when it made a development loan to NashYork in December of 2006 based in part upon the $5,000,000 in equity in NashYork that was represented to SunSouth.

d.   McKenna claims to have invested $200,000 in GLS and that he was an investor with Levine, Yates, the Floms, Graham, Stroud, CRT

(Smith), Wiles and Johnson.  (Doc. #167, McKenna Claim, ¶¶ 113, 115 and 118).  GLS then used a fraudulent $25,000,000 sales contract to obtain a 75% loan to value loan of $18,750,000 from Bank of Bonifay.  (Doc. #167, McKenna Claim, ¶¶ 100-102).  As an investor McKenna must have known that there was no $6,000,000 in equity in GLS, which means McKenna actually was a participant in the fraudulent scheme he alleges.

e.    SunSouth had no knowledge of the Levine and Gilley scheme and did not acquire any such knowledge from its unrelated loans to Gilley. (See Declaration of Michael McCann (Doc. #37-15) in Case No. 3:12-cv-288-MCR-CJK).   In fact, co-guarantors, Yates, Flom, Smith, Graham, Levine, Stroud and Wiles had a several year relationship with Gilley that was far more substantial than SunSouth's loans to Gilley in which:

i.    Stroud, Wiles, Smith and Graham invested in real estate deals with Gilley;

ii.    Yates loaned Gilley or RGP over $5,000,000;

iii.    Graham, Flom and Yates loaned Gilley substantial sums for Country Crossings;

iv.      Graham's company managed Country Crossings and was owed over $300,000 when Country Crossings filed for bankruptcy; and

v.      Levine was also involved in Country Crossings and set up Bama Jam to continue its business operations.

10.    McKenna's counsel listened to SunSouth's position and indicated that the parties might be able to share information for the respective cases. McKenna's counsel never indicated he would be pursuing the claim against SunSouth and he did not ask that SunSouth accept service of the McKenna Claim which SunSouth would have done. SunSouth's counsel offered to provide documentation, to attend the mediation and to present SunSouth's position. McKenna's counsel mentioned dates for the mediation and said he would advise SunSouth's counsel of the final plans for mediation. SunSouth's counsel was left with the impression that McKenna did not want SunSouth at the mediation because SunSouth would be aligned with AloStar and would reveal the lack of merit of McKenna's claims against AloStar.

11.    On January 2, 2013, McKenna's counsel left a message for SunSouth's counsel. McKenna's counsel and SunSouth's counsel spoke and discussed the mediation location and whether or not SunSouth should attend the

mediation since SunSouth was not involved in the GLS transaction, had not been served and had not participated in the litigation and may not need to participate in the litigation if the case with AloStar could be settled.  SunSouth's counsel was left with the impression that SunSouth would not be joined as a party to this action if the mediation were successful.  McKenna's counsel did not advise SunSouth's counsel that after the prior conversation with SunSouth's counsel McKenna had delivered the McKenna Claim to SunSouth on December 27, 2012.  SunSouth's counsel was not aware of the service of the McKenna Claim until he received the Application for Entry of Default on March 20, 2013.

12.     Prior to the mediation, SunSouth's counsel was contacted by the mediator and counsel and the mediator discussed the fact that SunSouth had not been served and had had no involvement or interest or involvement in this case or the underlying GLS transaction.  It was agreed that there was no reason for SunSouth to attend the mediation.  SunSouth offered to be available by phone if the parties had any questions.

13.     The mediation occurred on January 21 and 22, 2013 and SunSouth heard indirectly that the case had been settled.

14.     Rather than inform SunSouth's counsel that all claims were not settled in mediation and rather than email the Application for Entry of Default to

8

SunSouth's counsel at the email address previously used for sending the Mediation Order, McKenna's counsel mailed the Application so that the default was entered on March 20, 2013 before SunSouth could file an appearance.

15.     Upon receipt of the Application, SunSouth's counsel immediately contacted SunSouth and requested that SunSouth look for the summons and McKenna Claim.  The return on service states that the summons and McKenna Claim were delivered to Henry Quintero, a SunSouth employee, on December 27, 2012, during the Christmas holidays. SunSouth has a procedure for the handling of process served upon SunSouth.   Contrary to the procedure, the summons and McKenna Claim were not scanned into SunSouth's records.    After a diligent search, SunSouth cannot locate the summons and McKenna Claim.   It was inadvertently misplaced during the Christmas holiday.  See Exhibit A, Declaration of Annette Lovrich attached hereto.

16.     McKenna knew that SunSouth's counsel was defending SunSouth in the NashYork Actions and that SunSouth's counsel thought that no claim would be pursued against SunSouth.  McKenna's counsel could have contacted SunSouth's counsel at which point an appearance would have been made.  McKenna held service for months and then waited sixty days after the January 2013 appearance

date to seek an entry of default.  It appears that McKenna did not want SunSouth to participate in the mediation.

17.    Upon learning of the Application, SunSouth immediately filed an appearance.   SunSouth is filing a Motion to Dismiss and an Answer to the McKenna claim.

18.    The Mediation Report (Doc. #230) states that all parties attended mediation because SunSouth was not a party.  The mediator recommended that all motions be stayed pending completion of the final settlement.  SunSouth's counsel was unaware of the Mediation Report.

19.    McKenna's Status Report (Doc. #231) states that there are remaining claims, some of which are in settlement negotiation.   SunSouth's counsel was unaware of the McKenna Status Report.

20.    McKenna has not been prejudiced by the failure of SunSouth to file its response that was due in late January 2013.  In the NashYork Actions SunSouth has already produced over 12,000 documents and there will be no delay in discovery.

21.    This case and the NashYork Actions involve common questions of law and fact and they are due to be consolidated.

22.    SunSouth possesses a meritorious defense to the McKenna Claim.

## ARGUMENT

SunSouth should be allowed an opportunity to appear and present its defenses and counterclaims to the McKenna Claim.

## I.     THE APPLICABLE STANDARD

Federal Rules of Civil Procedure (FRCP) 55(a) and 60(b) grant the courts discretion in setting aside an entry of default or default judgment.   Woodbury v. Sears, Roebuck & Co., 152 F.R.D. 229, 236 (M.D. Fla. 1993).  Courts will set aside an entry of default upon a showing of good cause or excusable neglect.  Id . "In order to establish mistake, inadvertence, or excusable neglect, the defaulting party must show that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint."  *In re Olympia Holding Corp.*, 226 B.R. 705, 707 (Bankr. M.D. Fla. 1998).

## II.    THE ENTRY OF DEFAULT IS DUE TO BE SET ASIDE.

### A.    SunSouth's Failure to Respond to the McKenna Claim Was Not Intentional, But Was Due to Excusable Neglect.

The McKenna Claim was delivered to SunSouth on December 27, 2012, during the Christmas holidays.  SunSouth has a procedure for handling legal process.  The McKenna Claim was not scanned into the system and did not get

delivered to the person responsible for the NashYork loan.  SunSouth cannot locate the original of the McKenna Claim.  The failure of SunSouth to respond to the McKenna Claim was the result of inadvertence.  See Exhibit A, Declaration of Annette Lovrich.

### B.   Plaintiff Will Not Be Prejudiced If the Default Is Set Aside.

McKenna filed his claim in September of 2012 against Gilley and RGP, but did not serve Gilley and RGP until February 14, 2013.  McKenna amended his claim in October 2012, but did not serve SunSouth until December 27, 2012. Upon learning of the Entry of Default, SunSouth immediately filed a notice of appearance and now is filing a Motion to Dismiss and Answer to the McKenna Claim.

McKenna's counsel was speaking to SunSouth's counsel and knew SunSouth's counsel was either not aware of the service of the McKenna Claim or was waiting on McKenna to advise whether or not McKenna intended to pursue his claim.  McKenna determined not to include SunSouth in the mediation and did not advise SunSouth of any preservation of a claim against SunSouth before he applied for entry of default.  Had McKenna's counsel advised that the McKenna Claim had been served, SunSouth would have participated in the mediation with facts and law that would have supported AloStar, not McKenna.

Discovery was stayed but it appears document production is coming due. SunSouth has produced over 12,000 documents in the NashYork Actions and is prepared to engage in discovery as soon as McKenna is prepared to produce his documents. There will be no delay in discovery.

A Motion to Consolidate the NashYork Actions was filed by Graham and Levine on March 15, 2013. This case involves common questions of law and fact and is due to be consolidated with the NashYork Actions, one of which is before this Court.

Allowing SunSouth to defend this action on the merits will not prejudice McKenna. Had SunSouth filed its responses in late January 2013, this action would be no farther along toward resolution on its merits than it will be if the court sets aside the entry of default. In re Olympia Holding Corp., 226 B.R. 705, 709 (Bankr. M.D. Fla. 1998). Gilley was not served until February 2013. It has been shown that where the defendant acts promptly and moves to set aside default judgment without delay, courts freely grant such motions. *In re Olympia Holding Corp.*, 226 B.R. 705, 708 (Bankr. M.D. Fla. 1998).

### C.   <u>SunSouth Has a Meritorious Defense</u>.

McKenna's claim against SunSouth is without merit and when one ignores the legal conclusions in the McKenna Claim, it is clear that the McKenna Claim is due to be dismissed for failure to state a claim.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  SunSouth is already defending claims arising out of the Levine and Gilley scheme in the NashYork Actions and the pleadings, motions and briefs filed by SunSouth in the NashYork Actions prove a meritorious defense exists.

McKenna attempts, by information and belief, to connect SunSouth to the Levine and Gilley scheme which was consummated through GLS over a year before SunSouth had any involvement with NashYork.  It is undisputed that SunSouth had no involvement whatsoever with the GLS closing.  SunSouth's sole involvement in the alleged Levine and Gilley scheme was as a construction lender to NashYork, an affiliated entity, in December of 2006, over a year after the alleged GLS fraud was perpetrated upon McKenna.

The Levine and Gilley fraud involved in part representing to banks that McKenna and the other investors had invested substantial equity in GLS and NashYork to use as a downpayment when they had not.  McKenna knows whether or not he contributed substantial equity to GLS and therefore, he was actually a

participant in the fraud with the other investors.  McKenna claims that Bank of Bonifay (lender to GLS) should have discovered the fraud in 2005.  McKenna claims that SunSouth should have also known what Bank of Bonifay did not know because of business relationships with Gilley and Bank of Bonifay.  It is undisputed that SunSouth had no relationship with McKenna and made no representations to McKenna.  SunSouth owed no duty to McKenna to disclose what SunSouth did not know.  SunSouth derived no benefit from the GLS transaction.  In fact, it appears that SunSouth was the third bank to be a victim of Levine and Gilley scheme.

## **CONCLUSION**

Service was made on SunSouth on December 27, 2012, but was inadvertently misplaced and there was excusable neglect.  McKenna deliberately withheld service and did not advise SunSouth's counsel that service had  been made or that McKenna intended to pursue any claims against SunSouth.  McKenna waited until after the mediation was concluded without SunSouth's participation to seek an entry of default without contacting SunSouth's counsel first.

SunSouth promptly responded to the McKenna Claim.  McKenna has not been prejudiced.  SunSouth is prepared to produce documents and engage in

discovery.  The consolidation of this action with the NashYork Actions will also expedite the resolution of this matter.

As evidenced by the pleadings, motions and briefs filed by SunSouth in the NashYork Actions, SunSouth possesses a meritorious defense to the Levine and Gilley scheme.

The entry of default is due to be set aside.

Respectfully submitted,


/s/ David B. Anderson
David B. Anderson
Deanna L. Weidner
Attorneys for SunSouth Bank


OF COUNSEL:

**ANDERSON WEIDNER, LLC**
Financial Center, Suite 1450
505 North 20th Street
Birmingham, AL 35203
Telephone: 324-1230
dbanderson@andersonweidner.com
dlweidner@andersonweidner.com

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the above and foregoing has been served by the Court's electronic filing system and/or by United States mail, postage prepaid, on this the 27TH of March, 2013, upon the following:

| | |
|---|---|
| Yancey F. Langston<br>ylangston@mhw-law.com George Roderick Mead, II emead@mhw-law.com<br>MOORE, HILL & WESTMORELAND, P.A.<br>220 West Garden Street<br>(32502) Sun Trust Tower, 9th Floor<br>Post Office Box 13290<br>Pensacola, Florida 32591-3290<br>Telephone: (850) 434-3541<br>Facsimile: (850) 435-7899<br>*Counsel for Plaintiff* | Eric D. Stolze<br>ericstolze@paulhastings.com PAUL HASTINGS LLP<br>600 Peachtree Street, N.E., Suite 2400<br>Atlanta, Georgia 30308-2222<br>Telephone: (404) 815-2400<br>Facsimile: (404) 815-2424<br>*Counsel for Plaintiff* |
| John A. Christy<br>jchristy@swfllp.com Andrew J. Lavoie<br>alavoie@swfllp.com<br>SCHREEDER, WHEELER & FLINT, LLP<br>1100 Peachtree Street, Suite 800<br>Atlanta, Georgia 30309<br>Telephone: (404) 681-3450<br>Facsimile: (404) 681-1046<br>*Counsel for Defendant Yates* | Mark M. Heinish, Esquire<br>Florida Bar No. 987255<br>mark@shendellpollock.com<br>Shendell & Pollock, P.L.<br>2700 North Military Trail, Suite 150<br>Boca Raton, Florida  33487<br>Tel: (561) 241-2323<br>Fax: (561) 241-2330<br>*Counsel for Elliot H Levine* |

| | |
|---|---|
| Jonathan T. Holloway<br>jholloway@okaloosalaw.com<br>Holloway Law Firm, P.A.<br>369 North Main Street<br>Crestview, Florida 32536<br>Telephone: (850) 398-6808<br>Facsimile: 9850) 398-6809<br>*Counsel for James C. Stroud* | Alfred Benjamin Gordon,<br>Ill<br>bgordon@kaglawfirm.com<br>Lawrence Keefe<br>lkeefe@kagmlaw.com<br>Ralph Hamilton Schofield, Jr.<br>rschofield@kagmlaw.com<br>KEEFE, ANCHORS, GORDON<br>2113 Lewis Turner Boulevard, Suite 100<br>Fort Walton Beach, Florida 32547<br>Telephone: (850) 863-1974<br><br>*Counsel for Herbert L. Graham, and Dwight P. Wiles* |
| Sara F. Reynolds<br>sreynolds@andersonreynolds.com<br>ANDERSON & REYNOLDS PLC<br>3100 West End Avenue, Suite 225<br>Nashville, Tennessee 37203<br>Telephone: (615) 942-1700<br>Facsimile: (615) 942-1701<br>*Counsel for Defendant Flam* | Cynthia S. McKenzie<br>cmckenzie@mckenziejacksonlaw.co<br>m MCKENZIE JACKSON, PLC<br>201 4th Avenue North, Suite 1130<br>Nashville, Tennessee 37219<br>Telephone: (615) 873-5670<br>Facsimile: (615) 873-5671<br>*Counsel for Defendants Levine and GLS Florida Property 2, LLC* |
| Gregory D. Smith<br>gdsmithlaw@aol.com<br>Gregory D. Smith,<br>P.A.<br>201 South Baylen Street, Suite<br>P.O. Box 12853<br>Pensacola, Florida 32501<br>Telephone: (850) 434-1821<br>*Counsel for Defendant GLS Florida Property 2, LLC* | Robert A.<br>Emmanuel<br>rae@esclaw.com<br>EMMANUEL, SHEPPARD & CONDON<br>30 South Spring Street<br>(32502) Post Office Drawer<br>1271<br>Pensacola, Florida 32591-1271<br>Telephone: (850) 433-6581<br>Facsimile: (850) 429-0492<br>*Counsel for Defendant Yates* |

| Edward M. Mullins (Fla. Bar No. 863920) emullins@astidavis.com ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A. 701 Brickell Avenue, 16th Floor Miami, Florida 33131 Telephone: (305) 372-8282 Facsimile: (305) 372-8202 *Counsel for Defendants Earle Yaffa and Ronald J.Weiss, as Executors of the Will of Joseph Flam* | |

/s/ David B. Anderson
OF COUNSEL